# EXHIBIT A

## AMENDED AND RESTATED DEVELOPMENT SERVICES AGREEMENT

THIS AMENDED AND RESTATED DEVELOPMENT SERVICES AGREEMENT (this "**Restated Agreement**") is made effective as of December 29, 2016 (the "**Effective Date**"), by and between the WALL STREET MASTER LANDLORD, LLC, a Connecticut limited liability company (the "**Landlord**"), and LOCKWOOD & MEAD REAL ESTATE, LLC, a Connecticut limited liability company (the "**Developer**").

### BACKGROUND:

WHEREAS, Wall Street Theater Company Inc., a Connecticut non-stock corporation, (the "**Owner**") was formed for the purposes of acquiring certain real property located at 71 Wall Street, Norwalk, Connecticut, and the development, financing, construction, rehabilitation and operation thereon of a next-generation facility offering live shows, interactive entertainment, cinema, digit productions, art space, and community meeting area (collectively, the "**Project**");

WHEREAS, the Owner and the Developer have entered into a Development Services Agreement dated effective as of October, 2013 (the "**Original Agreement**") pursuant to which the Developer agreed to provide certain services with respect to overseeing the development of the Project for the Owner;

WHEREAS, the Owner and the Landlord have entered into, and the Developer has consented to, an Assignment and Assumption of Development Services Agreement dated as of the date hereof, wherein the Owner has assigned its rights, duties and obligations under the Original Agreement to Landlord, and Landlord has accepted the assignment thereof; and

WHEREAS, the Landlord and the Developer desire to amend and restate the Original Agreement in its entirety by entering into this Restated Agreement (the Original Agreement as so amended and restated by this Restated Agreement is referred to herein as this "**Agreement**").

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Development Services Appointment and Term</u>. The Landlord hereby appoints the Developer to render services in overseeing the development of the Project for the Landlord as herein contemplated. The term of this Agreement shall begin on the Effective Date and shall end on the date all obligations have been performed and all payments have been made hereunder.

2. <u>Development Services</u>.

(A) The Developer shall oversee the development and construction/rehabilitation of the Project, in its capacity as the developer thereof, and shall perform the services and carry out the responsibilities reasonably within the general scope of such development and construction/rehabilitation and as are designated from time to time by the Landlord.

(B) The Developer's services shall be performed in the name and on behalf of the Landlord and shall consist of the duties set forth in the following subparagraphs of this Section 2(B), and as provided elsewhere in this Agreement; provided, however, that if the performance of any duty of the Developer set forth in this Agreement is beyond the control of the Developer, the Developer shall nonetheless be obligated to (i) use best efforts to perform such duty, and (ii) promptly notify the Landlord that the performance of such duty is beyond its control. The Developer has performed or shall perform the following:

(i) Negotiate and cause to be executed in the name and on behalf of the Landlord agreements for testing or consulting services for the Project, and any agreements for the construction of any improvements or tenant improvements to be constructed or installed by the Landlord or the furnishing of any supplies, materials, machinery or equipment therefor, or any amendments thereof, provided that no agreement shall be executed nor binding commitment made until the terms and conditions thereof and the party with whom the agreement is to be made shall have been approved by the Landlord;

(ii) Assist the Landlord in dealing with neighborhood groups, local organizations, and other parties interested in the development of the Project in connection with such development;

(iii) Establish and implement appropriate administrative and financial procedures and controls for the construction of the Project, including but not limited to:

(a) coordination and administration of professionals and consultants employed in connection with the construction of the Project;

(b) administration of any construction contracts on behalf of the Landlord;

(c) participation in conferences and the rendering of such advice and assistance as will aid in developing economical, efficient and desirable design and construction procedures;

(d) the rendering of advice and recommendations as to the selection procedures for and selection of subcontractors and suppliers;

(e) the review and submission to the Landlord for approval of all requests for payments under any agreements providing funds for the benefit of the Landlord for the construction of any improvements;

(f) the submission of any suggestions or requests for changes which could in any reasonable manner improve the efficiency or cost of the construction of the Project;

(g) applying for and maintaining in full force and effect any and all governmental permits and approvals, if any, required for the lawful construction of the Project;

(h)  compliance with all terms and conditions applicable to the Landlord or the Project contained in any governmental permit or approval required or obtained for the lawful construction of the Project, or in any insurance policy affecting or covering the Project;

(i)  furnishing such consultation and advice relating to the construction and development of the Project as may be reasonably requested from time to time by the Landlord;

(j)  keeping the Landlord fully informed on a regular basis of the progress of the design and construction of the Project, including the preparation of such reports as may be requested by the Landlord, including without limitation, any reports that may be required by any agreements of any subsidiary entity of the Landlord; and

(k)  giving or making the Landlord's instructions, requirements, approvals and payments provided for in the agreements with, professionals and consultants retained for the Project;

(iv)  Inspect the progress of the course of construction of the Project, including verification of the materials and labor being furnished to the Project and on behalf of such construction so as to be fully competent to approve or disapprove requests for payment made by parties with respect to the construction of the Project, and in addition to verify that the same is being carried out substantially in accordance with the scope of work approved by the Landlord or, in the event that the same is not being so carried out, to promptly so notify the Landlord;

(v)  If requested to do so by the Landlord, perform on behalf of the Landlord all obligations of the Landlord with respect to the construction of the Project contained in any loan agreement or security agreement entered into in connection with any financing for the Project, or in any agreement(s) of any subsidiary entity of the Landlord, or in any agreement entered into with any governmental body or agency relating to the terms and conditions of such construction, provided that copies of such agreements have been provided by the Landlord to the Developer or the Landlord has otherwise notified the Developer in writing of such obligations; provided, however, the scope of such obligations is not substantially and materially different than the general scope of the services described herein;

(vi)  To the extent requested to do so by the Landlord, prepare and distribute to the Landlord a critical path schedule, and periodic updates thereto as necessary to reflect any material changes, but in any event not less frequently than quarterly, other construction cost estimates as required by the Landlord and financial accounting reports, including monthly progress reports on the quality, progress and cost of construction and recommendations as to the drawing of funds arranged by the Landlord to cover the cost of construction of the Project;

(vii)  Assist the Landlord in obtaining and maintaining insurance coverage for the Project, the Landlord and its agents during the construction phase of the Project,

Confidential    WS0015505

in accordance with any insurance schedule approved by the Landlord, which insurance shall include general public liability insurance covering claims for personal injury, including, but not limited to, bodily injury, or property damage, occurring in or upon the Project or the streets, passageways, curbs and vaults adjoining the Project. Such insurance shall be in a liability amount approved by the Landlord;

(viii) During the construction period of the Project, comply with all applicable present and future laws, ordinances, orders, rules, regulations and requirements (hereinafter called "laws") of all federal, state and municipal governments, courts, departments, commissions, boards and offices, any national or local board having jurisdiction in the City of Norwalk or State of Connecticut, or any insurance carriers providing any insurance coverage for the Landlord or the Project, which may be applicable to the Project or any part thereof. The Developer shall likewise ensure that all agreements between the Landlord and independent contractors comply with all such applicable laws;

(ix) Assemble and retain all contracts, agreements and other records and data as may be necessary to carry out the Developer's functions thereunder. Without limiting the foregoing, the Developer will prepare, accumulate and furnish to the Landlord and the appropriate governmental authorities, as necessary, data and information sufficient to identify the market value of improvements in place as of each real property tax lien date, and will make application for appropriate exclusions from the capital costs of the Project for purposes of real property ad valorem taxes;

(x) Use commercially reasonable efforts to accomplish the timely completion of the Project in accordance with the approved scope of work and the time schedules for such completion approved by the Landlord;

(xi) At the direction of the Landlord, implement any decisions of the Landlord made in connection with the construction of the Project or any policies and procedures relating thereto, exclusive of operating activities; and

(xii) Perform and administer any and all other services and responsibilities of the Developer which are set forth in any other provisions of this Agreement, or which are requested to be performed by the Landlord and are within the general scope of the services described herein.

3. Fees.

(A) For services performed and to be performed under this Agreement, the Landlord shall pay the Developer a development fee (the "**Development Fee**") in the aggregate amount of $1,042,019. The entire Development Fee shall be deemed to have been earned upon Placement in Service (as defined in that certain Amended and Restated Operating Agreement of the Landlord dated as of the date hereof (the "**Landlord Operating Agreement**") of the Project. The Development Fee shall be paid as follows:

(i) The entire amount of the Development Fee shall be deferred and shall be paid annually from the Landlord's Available Cash (as defined in Landlord Operating

Agreement). Notwithstanding the foregoing, the entire unpaid balance of the Development Fee shall be paid by the Landlord not later than eight (8) years after Placement in Service.

(B) Intentionally Omitted

(C) If the Landlord fails to pay the Development Fee when due, the Developer shall notify the Landlord in writing of such default, in which event the Landlord shall have thirty (30) days from receipt of the notice to cure the default. The Development Fee due under this Section 3 shall be the only amount payable to the Developer for services performed pursuant to this Agreement. The Developer shall be entitled to reimbursement for its reasonable, out of pocket costs and expenses; provided, however, any expense in excess of $500 requires prior approval of the Landlord.

(i) At the sole election of the Developer, any Development Fee which for any reason has been deferred for payment, may be converted into a loan. Such loan will carry an interest rate of 7.5% and a term of three years, and shall be due in equal monthly installments. If the Landlord shall fail to pay the loan, the Developer may defer the debt payments until the maturity of the loan. The Landlord shall permit Developer to file a lien on the land records of Norwalk for any loan obligation incurred by this Agreement.

(D) Notwithstanding anything else in this Agreement to the contrary, if the Developer fails to complete construction and receive a valid Certificate of Occupancy from the City of Norwalk, CT for a theater within four years of the execution of this agreement, the Landlord may terminate this agreement without cause, and no funds due to Developer shall be paid.

4. Severability of Provisions. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law now or hereinafter in effect which renders any provision hereof prohibited or unenforceable in any respect.

5. Applicable Law. This Agreement is governed by, and is to be construed in accordance with, the law of the State of Connecticut without reference to the conflict of laws principles thereof. It is the intention and agreement of the parties that any court or arbitration panel reviewing or interpreting this Agreement apply to such process the same law that such court would apply in reviewing or interpreting a contract entered into in the State of Connecticut by two residents of the State of Connecticut with the intention that the contract be fully performed in the State of Connecticut.

6. Indemnification. The Developer hereby agrees to indemnify, defend, protect and hold harmless the Landlord and its officers and directors, any subsidiary entity and its members and managers, and each of its constituents partners (collectively, the "indemnified party") from and against any loss, cost, liability, action, cause of action, suit, penalty, fine, damage or expense, including without limitation, reasonable attorneys' fees and court costs, incurred by the

*Amended and Restated Development Services Agreement Wall Street Theater*      5      SL 2167698.3

Confidential      WS0015507

indemnified party by reason of the gross negligence, fraud, breach of fiduciary duty or willful misconduct by the indemnifying party related to the provision of development services under this Agreement.

7. **Binding Agreement.** This Agreement shall be binding on the parties hereto, and their respective heirs, executors, personal representatives, successors and assigns. No modification or amendment to this Agreement shall be valid unless in it is writing and signed by both of the parties hereto.

8. **Future Actions.** Each party to this Agreement agrees to hereafter take all actions, including the execution of all documents that another party may reasonably request in order to give effect to the terms of this Agreement.

9. **Construction.** The headings and captions to the Sections of this Agreement are: (a) inserted for purposes of convenience only; (b) not part of this Agreement; and (c) to be given no force or effect in construing or interpreting this Agreement or any of its provisions. This Agreement may be executed in multiple counterparts, each of which is an original and all of which taken together constitute one and the same instrument. In this Agreement any use of a word of any gender includes the use of corresponding words of all other genders to the extent necessary to affect the intent of this Agreement, and the use of the singular or plural form of a word includes the other form to the extent necessary to affect the intent of this Agreement.

10. **Reliance.** No person other than the parties to this Agreement may directly or indirectly rely upon or enforce the provisions of this Agreement, whether as a third party beneficiary or otherwise.

11. **Relationship of Parties.** Nothing contained in this Agreement shall be deemed or construed by the parties or any third party to create the relationship of partners or joint venturers between the Developer and the Landlord.

12. **Prior Agreements.** This Agreement contains the entire agreement between the parties with respect to its subject matter, and it supersedes and replaces all agreements previously entered into between or among the parties or any of them, whether or not reduced to writing in whole or part, relating in any way to the subject matter of this Agreement, all of which are hereby revoked, terminated and declared to be of no further force or effect.

(Signature Page Follows)

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the date first written above.

**LANDLORD**

**WALL STREET MASTER LANDLORD, LLC**, a Connecticut limited liability company

By: WALL STREET MANAGER, LLC, a Connecticut limited liability company, its Manager

   By: Wall Street Managing Member, LLC, a Connecticut limited liability company, its Manager

      By: Wall Street Theater Company Inc., a Connecticut non-stock corporation, its Manager

By: *[signature]*
Name: SUZANNE CAHILL
Title: PRESIDENT

**DEVELOPER**

**LOCKWOOD & MEAD REAL ESTATE, LLC**, a Connecticut limited liability company

By: *[signature]*
Name: Frank A. Farricker
Title: Manager

*Amended and Restated Development Services Agreement Wall Street Theater*

Signature Page