## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

| | | |
|---|---|---|
| ------------------------------------------------------------X | | |
| | : | CHAPTER 11 |
| In re: | : | |
| | : | Case No. 18-50132 |
| WALL STREET THEATER COMPANY, INC. | : | Case No. 18-50133 |
| WALL STREET MASTER LANDLORD, LLC | : | Case No. 18-50134 |
| WALL STREET MANAGING MEMBER, LLC | : | |
| | : | |
| Debtor. | : | |
| | : | |
| ------------------------------------------------------------X | : | |
| | : | |
| THE MORGANTI GROUP, INC., | : | |
| | : | Contested Matter |
| Movant. | : | |
| | : | |
| v. | : | |
| | : | |
| WALL STREET THEATER COMPANY, INC. | : | |
| and WALL STREET MASTER LANDLORD, | : | |
| LLC, | : | February 21, 2018 |
| | : | |
| Respondents. | : | |
| _____X | | |

## MOTION OF THE MORGANTI GROUP, INC.
## FOR RELIEF FROM THE AUTOMATIC STAY FOR CAUSE AND TO ENFORCE
## ARBITRATION AGREEMENT PURSUANT TO FEDERAL ARBITRATION ACT

The Morganti Group, Inc. ("Morganti"), a secured creditor and party-in-interest, by

and through its undersigned counsel, McElroy, Deutsch, Mulvaney and Carpenter, LLP,

hereby moves this Court, pursuant to 11 U.S.C. § 362(d) and Federal Rules of Bankruptcy

Procedure 4001 and 9014, for an order terminating the automatic stay of Section 362 of the

Bankruptcy Code in order to allow the continued prosecution of a pre-petition arbitration action

between Morganti, on the one hand, and Wall Street Theater Company, Inc. ("WSTC") and

Wall Street Theater Master Landlord, LLC ("Master Landlord")(collectively, "Wall Street"),

on the other, involving a construction dispute.

## INTRODUCTION

Morganti, as general contractor, and Wall Street, as owner, have been engaged in

arbitration proceedings over the past ten (10) months concerning a dispute that arose over the

renovation and rehabilitation of a historic theater in the City of Norwalk. All pre-hearing

matters concerning the arbitration have been completed, including the selection of an arbitrator

with considerable construction experience, filing of pleadings, the exchange of discovery, and

the retention and disclosure of expert witnesses. Only the actual arbitration hearings remain.

Under applicable law, this Court must grant relief from the automatic stay to honor the

arbitration clause in the parties' construction contract, and permit the arbitration of these

prepetition, state law, breach of contract non-core claims.

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).

2.      This is a contested matter under Rule 9014 of the Federal Rules of Bankruptcy

Procedure and is a core proceeding properly heard by this Court pursuant to 28 U.S.C. §

157(b)(2)(G).

3.      Venue of this motion is proper before this Court pursuant to 28 U.S.C.

§1409(a).

## BACKGROUND

4.      In February, 2015, WSTC entered into a construction contract with GTL

Construction, LLC ("GTL") for the renovation of a historic theater (the "Project") located at

71 Wall Street, Norwalk, Connecticut (the "Property").

  5.  After performing work on the Project for approximately one year, a dispute arose between GTL and WSTC, which culminated in GTL's termination as contractor on the Project. GTL alleged that it had not been paid for its work, and recorded a mechanics' lien against the Project in the amount of $261,672.25.

  6.  Thereafter, WSTC sought a replacement contractor and entered into negotiations with Morganti for work on the Project. On or about June 29, 2016, Morganti, as general contractor, and WSTC, as owner, entered into a construction contract (the "Construction Contract") for the renovation of the Project, pursuant to which Morganti agreed to perform certain specified renovation work on the Project in exchange for the lump sum price of $5,682,632 (the "Contract Sum"), subject to addition or deletion in accordance with the terms and conditions of the Construction Contract. Attached hereto as Exhibit A is a true and correct copy of the Construction Contract.[1]

  7.  Morganti commenced its work on the Project on or about May 18, 2016 and at all times performed its work in strict and full accordance with the Construction Contract. Morganti's work on the Project was delayed by WSTC's actions and omissions on the Project, including (among other things) its failure to pay for a building permit and its failure to procure construction drawings, all of which led to multiple change orders for labor and materials above and beyond the scope of work contemplated by the Construction Contract.

  8.  Following the closing on its construction loan from Patriot Bank in or about December, 2016, which loan was wholly insufficient to pay Morganti's entire cost of

---

[1] It should be noted that the AIA 201 General Conditions are also included in the Contract Documents; however, due to their size, they have been omitted herein.

completion, WSTC issued payment to Morganti on its prior Applications for Payment Nos. 6 and 7 which payments, although late, covered Morganti's work on the Project through November 30, 2016. WSTC thereafter made a partial payment on Morganti's Application for Payment No. 8, covering work performed through December 31, 2016. These payments brought the total amount paid to Morganti to $4,724,142.85, and were the last payments Morganti would receive for its work on the Project.

9.      On or about December 29, 2016, the Construction Contract was assigned by WSTC to Master Landlord pursuant to that certain Assignment and Assumption of Contractor Agreement, with both WSTC and Master Landlord remaining liable to Morganti for payments.

10.     Morganti continued working on the Project during the months of January, February, and March, 2017. Unbeknownst to Morganti, and contrary to the representations made by WSTC, WSTC was wholly unable to pay for Morganti's work on the Project during the months of January, February and March, 2017. Despite the fact there were no funds available to pay Morganti, both WSTC and Patriot Bank induced Morganti's performance of the Construction Contract with promises of payment.

11.     Despite not being paid on its requisitions, on March 30, 2017, as a result of Morganti's work on the Project, the project architect issued a certificate of substantial completion, in which Morganti's work was certified as completed in accordance with the Construction Contract. Among other things, the architect certified that:

> The Work performed under this Contract has been reviewed and found, to the Architect's best knowledge, information and belief, to be substantially complete. Substantial Completion is the stage in progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract

Documents so that the Owner occupy or utilize the Work for its intended use.

12.     As a result, WSTC was able to utilize the Project for its intended purposes under a Conditional Certificate of Occupancy as evidenced by its "soft opening" on April 11, 2017 and "grand opening" on May 15, 2017.

13.     On April 11, 2017, Morganti notified WSTC that it was in material breach of the Construction Contract by failing to issue payment to Morganti based on Applications for Payment which were certified by the project architect.  Morganti further notified WSTC that, as a result of this material breach, Morganti and its subcontractors were relieved of any further obligations under the Construction Contract and that Morganti was permitted to suspend its performance of the Construction Contract, including any work required for a Final Certificate of Occupancy.

14.     Following Morganti's declaration of material breach, Morganti issued its final Applications for Payment to WSTC and the project architect in the respective of amounts of $860,263.32 and $864,851 for work performed on the Project through March 31, 2017, bringing the total amount still due and owing Morganti for work performed on the Project to $2,387,540.79, based on a final Contract Sum of $7,272,834.45.

15.     On April 29, 2017, in order to secure payment for the labor, materials and services furnished for the Project, Morganti recorded a Certificate of Mechanics' Lien against the Property in the amount of One Million Five Hundred Twenty-Two Thousand Six Hundred and Eighty-Nine and 26/100 dollars ($1,522,689.26) (which Morganti believed at the time was the sum due and owing to Morganti, plus interest, costs and attorney's fees).  The Certificate of Mechanics' Lien was duly signed and sworn to under oath, filed with the Town Clerk of

Norwalk and duly recorded in Volume 8518 at page 0296 of the Norwalk Land Records. A true and correct copy of the Certificate of Mechanics' Lien was served upon WSTC on or about May 10, 2017 and is attached hereto as Exhibit B.

16.    On May 17, 2017, Morganti filed an amended mechanics' lien against the Property (the "Mechanics' Lien") in the amount of Two Million Three Hundred Eighty Seven Thousand Five Hundred Forty and 79/100 dollars ($2,387,540.79), recorded in the Norwalk Land Records in Volume 8528 at Page 58. On May 26, 2017, Morganti served WSTC with a true and attested copy of the Mechanics' Lien, which set forth the date on which Morganti commenced providing labor, materials and rendering services on the Project and further expressed Morganti's intention to claim a lien for those materials and services. Attached hereto as Exhibit C is a true and correct copy of the Mechanics' Lien.

17.    On May 6, 2017, Morganti filed a Demand for Arbitration (the "Demand") with the American Arbitration Association ("AAA") against WSTC and Master Landlord in accordance with the Construction Contract (the "Arbitration"). Attached hereto as Exhibit D is a true and correct copy of the Demand.

18.    Pursuant to its Demand, Morganti alleges that WSTC and Master Landlord materially breached the Construction Contract and seeks an award of $2,387,540.79 plus interest, costs and attorneys' fees, all as provided under the Construction Contract.

19.    On or about August 28, 2017, the parties selected Gerard Brady, a construction attorney from White Plains, New York as the arbitrator in this matter. Attorney Brady has considerable experience in the area of construction law having practiced in that area for over thirty (30) years. In addition to being an attorney, Arbitrator Brady is also a licensed

professional engineer and a member of the American Society of Civil Engineers. A copy of Arbitrator Brady's resume is appended hereto as Exhibit E.

20.    Since May, 2017 through the Petition Date, Morganti, WSTC and Master Landlord have undertaken extensive discovery in connection with the Arbitration and have completed same. The only matters yet to be completed in the Arbitration are the arbitration hearings themselves. Arbitration is scheduled to commence on April 17, 2018 and continue through April 26, 2018.

21.    On October 26, 2017, Morganti commenced an action in the Superior Court of Connecticut styled as *The Morganti Group, Inc. v. Wall Street Theater Company, Inc., et al.,* Docket No. FST-CV-17-6033693 seeking to foreclose its Mechanics' Lien in accordance with state law (the "Foreclosure Action").

22.    On November 22, 2017, Defendants WSTC, Master Landlord and its affiliates moved to stay the Foreclosure Action pending resolution of the Arbitration. On January 9, 2018, Morganti filed an objection to the motion to stay. Defendants' motion to stay was scheduled to be adjudicated on February 5, 2018.

23.    On February 4, 2018 (the "Petition Date"), WSTC, Master Landlord and Wall Street Managing Member, LLC ("Managing Member") (collectively, the "Debtors") filed their voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court, thereby staying the Arbitration and the Foreclosure Action.

## RELIEF REQUESTED

24.    By this Motion, Morganti seeks relief from the automatic stay of Section 362 of the Bankruptcy Code for cause to permit the parties to resume the contractually-mandated pre-

petition arbitration of their dispute over the construction of the Project. As will be shown

below, the considerations favoring arbitration are consistent with applicable law, including in

matters in which one or more parties to the arbitration are debtors in bankruptcy proceedings.

### A. There is Clear Federal Policy Favoring Arbitration

25.     "The Federal Arbitration Act establishes a 'federal policy favoring arbitration

agreements' and mandates the enforcement of contractual arbitration provisions." *MBNA*

*America Bank, N.A. v. Hill*, 436 F.3d 104, 107 (2d Cir. 2006) *quoting Moses H. Cone Mem'l*

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "The Act provides that written

agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds

as exist at law or in equity for the revocation of any contract." *Id. quoting* 9 U.S.C. §2.

Moreover, "[a] court has a duty to stay its proceedings if it is satisfied that the issue before it

is arbitral, and "[t]his duty . . . is not diminished when a party bound by an agreement raises

a claim founded on statutory rights. *Id.* at 108 *quoting Shearson Am. Express, Inc. v.*

*McMahon*, 482 U.S. 220, 226 (1987).

26.     "However, as the Supreme Court acknowledged in *McMahon*, '[l]ike any

statutory directive, the Arbitration Act's mandate may be overridden by a contrary

congressional command.'" *Id.* "The party opposing arbitration has the burden of showing that

Congress intended to preclude arbitration of the statutory rights at issue." *Id.*

27.     "Disputes that involve both the Bankruptcy Code and the Arbitration Act often

present conflicts of 'near polar extremes: bankruptcy policy exerts an inexorable pull towards

centralization while arbitration policy advocates a decentralized approach toward dispute

resolution." *Id. citing In re U.S. Lines, Inc.*, 197 F.3d 631, 640 (2d Cir. 1999).

28.    "In resolving these conflicts, courts distinguish between claims over which bankruptcy judges have discretion to refuse arbitration and those that they must send directly to arbitration." *Id.* at 108.

### B. The Issues Involved in the Arbitration are Non-Core

29.    "It is generally accepted that a bankruptcy court has *no discretion* to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings . . . ." *In re Touchstone Home Health, LLC*, 572 B.R. 255, 274 (Bankr. D. Colo. 2017); *see also In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir. 2000)(bankruptcy courts generally do not have discretion to refuse to compel arbitration of "non-core" bankruptcy matters, or matters that are simply "related to" bankruptcy cases). "Put slightly differently, noncore claims in insolvency proceedings must be arbitrated if the requirements of the FAA are met." *Id.* at 274. "The reason is that 'noncore proceedings . . . are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration." *Id.; see also In re Jackson*, 560 B.R. 39, 45 (Bankr. D. Conn. 2016)("in the bankruptcy context, if a claim is non-core . . .the bankruptcy court must stay the adversary proceeding pending outcome of the arbitration proceeding").

30.    "Core proceedings implicate more pressing bankruptcy concerns but even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160 at 166.

31.    As this Court is well aware, bankruptcy courts have jurisdiction over all civil proceedings arising under Title 11, or arising in or related cases under Title 11. 28 U.S.C. § 1334(b). "This jurisdictional grant is divided into core and non-core proceedings." *In re*

*Jotan, Inc.*, 232 B.R. 503, 506 (Bankr. M.D.Fla. 1999). "Core proceedings have no

existence outside of bankruptcy while non-core proceedings do not depend on bankruptcy law

for their existence and are able to proceed in other courts." *Id.* at 506.

32.    28 U.S.C. Section 157(b), while not expressly limiting what constitute "core"

proceedings, nonetheless provides an extensive list of proceedings which are "core".

33.    Absent from that list are pre-petition, state law, breach of contract claims.

These claims are uniformly found to be "non-core" since, while they "relate to" a bankruptcy

proceeding, they do not arise in or under the Bankruptcy Code. *See generally In re*

*Northwestern Corp.*, 319 B.R. 68 (D. Del. 2005)(creditor's pre-petition, state law,

employment contract claim was non-core); *In re Gurga*, 176 B.R. 176 B.R. 196, 199 (9th Cir.

B.A.P. 1994) (reversing bankruptcy court's denial of motion for relief from stay to proceed

with arbitration based on, *inter alia*, the conclusion that breach of contract actions are noncore

claims); and *In re Zhejiany Topoint Photovoltaic Co. Ltd.*, Case No.: 14-24549, 2017 WL

6513433 (Bankr. D.N.J. Dec. 19, 2017)(because breach of contract claims exist outside of

bankruptcy and fall under the court's "related to" jurisdiction, they are subject to arbitration).

34.    The issues raised by Morganti in the Arbitration as well as the counterclaims

raised by WSTC and Master Landlord against Morganti are not issues that "arise under" or

"arise in" a case under Title 11. The dispute between these parties involves claims for breach

of contract arising from the construction of the Project, the non-payment of Morganti's

invoices, and the Debtors' assertion that Morganti breached the Construction Contract by, *inter*

*alia*, billing for defective work. These claims exist outside of the Bankruptcy Code and are

10

garden variety, breach of contract claims. The Arbitration does not deal with any issues involving rights created by federal bankruptcy law.

35.     As such, the Arbitration involves only "non-core" claims between the parties.

36.     Given that the Arbitration involves only "non-core" claims, the Bankruptcy Court must allow the Arbitration to proceed and lift the automatic stay for this very purpose.

37.     The many bankruptcy and appellate courts that have addressed this issue uniformly hold that relief from stay must be granted in favor of arbitration where the arbitration seeks to adjudicate non-core claims. *See generally, In re Jotan*, 232 B.R. 503 (automatic stay lifted to permit arbitration to proceed on non-core matters); *In re Weinstein*, 234 B.R. 862 (Bankr. E.D.N.Y. 1999)(court granted motion for relief from stay to permit arbitration to proceed in another forum); *In re Gurga*, 176 B.R. 196 (bankruptcy court had no discretion to refuse to enforce arbitration clause in chapter 11 debtor's prepetition agreement with creditor and should have granted creditor relief from stay to allow arbitration to proceed where claims which creditor sought to arbitrate were noncore claims based on creditor's alleged breach of contract and debtor's demand for accounting); *In re Crossroads Ford, Inc.*, 449 B.R. 366 (8th Cir. B.A.P. 2011)(district court affirmed bankruptcy court's order granting creditor relief from stay in order to proceed with arbitration); and *In re Durango Georgia Paper Co.*, 309 B.R. 394 (Bankr. S.D. Ga 2004)(bankruptcy court granted creditor's motion to stay adversary proceeding and compel debtor to arbitrate in accordance with arbitration clause in asset purchase agreement).

**C. The Debtor Cannot Satisfy Its Burden that Requiring It to Arbitrate Would
Conflict with the Purpose of the Bankruptcy Code**

38.     According to the Third Circuit, once a bankruptcy court determines that the

claim to be adjudicated through arbitration is non-core, the Court must determine "whether any

underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an

arbitration clause and  . . . enforce such a clause unless that effect would seriously jeopardize

the objectives of the Code." *Hays*, 885 F.2d at 1161.  The Second Circuit has endorsed the

*Hays'* approach.  *See In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir.

2000)("[t]he Third Circuit's *Hays* decision – holding that district courts *must* stay non-core

proceedings in favor of arbitration – is generally accepted.").

39.     Additionally, the bankruptcy court must determine "whether the debtor has

carried its burden of showing that the text, legislative history, or purpose of the Bankruptcy

Code conflicts with the enforcement of the arbitration clause in a case of this kind, that is, a

non-core proceeding." *Hays*, 885 F.2d at 1156.

40.     Concerns that the proposed arbitration will interfere with the debtors'

reorganization efforts are not sufficient to override the strong policy favoring arbitration.  *In re

Northwestern Corp.*, 319 B.R. at 75.

41.     Courts have held that arbitration of non-core claims actually furthers the goals

of the Bankruptcy Code by providing the parties with a quick and efficient resolution of

creditors' claims.  *Id.*

42.     In *In re Northwestern Corp.*, the District Court reversed the Bankruptcy Court's

denial of a motion for relief from stay filed by an employee of the debtor who sought court

approval to continue the arbitration of an employee contract dispute.  The District Court

concluded that the Bankruptcy Court incorrectly determined that the issue was core, and further held that arbitration was particularly appropriate where the parties had already selected an arbitrator and were prepared to proceed with the arbitration before the filing of the debtor's bankruptcy case in accordance with the arbitration provisions in the employment agreement. *Id.* at 75-76. The court stated, "[b]oth parties have incurred considerable expense and devoted considerable time toward the resolution of these claims, and the Court is persuaded that allowing the arbitrator, who is already familiar with these claims to complete the arbitration process, will conserve judicial resources." *Id.* at 76. The District Court therefore concluded that the employee had established "cause" justifying relief from the automatic stay. *Id.*

43.     As in *In re Northwestern*, the Debtors and Morganti have been actively engaged in the Arbitration proceedings for the past ten (10) months. The parties have filed their respective complaints, answering statement and counterclaim and other necessary pleadings. They have also exchanged discovery and retained experts. There is virtually nothing left to do in the Arbitration other than try the case itself which will resolve all claims Morganti has against the Debtors and any counterclaim Debtors have against Morganti. It is in the best interest of these Debtors, their estates, Morganti and all parties in interest, including the multitude of Morganti's subcontractors who have not been paid for over $1.5 million of work performed on the Project, for the Arbitration to proceed and liquidate this claim.

44.     Moreover, liquidation of claims through arbitration is well accepted and such liquidation supports the objectives of the bankruptcy system rather conflicting with them because it provides a mechanism for quick, economical, and fair dispute resolution. *See In re*

*Touchstone Home Health*, 572 B.R. 255, 277-78 (Bankr. D. Colo. 2017) *quoting, National Gypsum*, 118 F.3d at 1068 (citing a series of decisions allowing relief from stay for arbitration to liquidate claims).

45.    "It is indisputable that a goal of the Bankruptcy Code is to centralize disputes, but [the parties] would treat that goal as an exception that swallows the rule.  In every case, litigation would be simpler and the bankruptcy court could maintain greater control if it denied a motion to compel arbitration and kept all disputes to itself.  But the goal of centralizing disputes does not alone override the FAA." *Envisage Development Partners, LLC v. Patch of Land Lending*, Case No. 17-cv-03971-CRB, 2017 WL 4551575 at *7 (N.D. Calif. October 11, 2017).

46.    Moreover, the dispute between the parties is a construction dispute that is particularly susceptible to the arbitration process.  Both Morganti and the Debtors jointly selected the arbitrator who has more than 30 years' experience in the construction industry and who is also a licensed civil engineer.  It would be a tremendous waste of this Court's resources to familiarize itself and learn all of the intricacies involved in this construction dispute particularly where the arbitrator is well versed in the underlying facts, the issues and is prepared to hear the case.  It is in the Debtors' best interest to have this dispute adjudicated as quickly as possible and with finality in order to properly liquidate this substantial claim against the estate.

WHEREFORE, Morganti respectfully requests that this Court grant its motion for relief from stay to proceed with Arbitration and for such other and further relief as is necessary and just.

MOVANT,
THE MORGANTI GROUP, INC.

By:_____ /s/ Kristin B. Mayhew_____
    Kristin B. Mayhew – ct20896
    McElroy, Deutsch, Mulvaney & Carpenter, LLP
    30 Jelliff Lane
    Southport, CT  06890-1436
    Tel.:   (203) 319-4022
    Fax:   (203) 259-0251
    Email  kmayhew@mdmc-law.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

```
--------------------------------------------------------------X
                                             :   CHAPTER 11
In re:                                       :
                                             :   Case No. 18-50132
WALL STREET THEATER COMPANY, INC.            :   Case No. 18-50133
WALL STREET MASTER LANDLORD, LLC             :   Case No. 18-50134
WALL STREET MANAGING MEMBER, LLC             :
                                             :
                      Debtor.                :
                                             :
--------------------------------------------------------------X
                                             :
THE MORGANTI GROUP, INC.,                    :
                                             :   Contested Matter
                      Movant.                :
                                             :
         v.                                  :
                                             :
WALL STREET THEATER COMPANY, INC.            :
and WALL STREET MASTER LANDLORD,             :
LLC,                                         :
                                             :
                      Respondents.           :
_____X
```

## ORDER GRANTING MOTION OF THE MORGANTI GROUP, INC.
## FOR RELIEF FROM THE AUTOMATIC STAY FOR CAUSE AND
## TO ENFORCE ARBITRATION AGREEMENT PURSUANT TO
## FEDERAL ARBITRATION ACT

AND NOW, upon consideration of the Motion of the Morganti Group, Inc. for Relief

from the Automatic Stay for Cause and to Enforce Arbitration Agreement Pursuant to Federal

Arbitration Act (the "Motion"), and good cause appearing therefore,

IT IS HEREBY ORDERED that the Motion is GRANTED; and it is further

ORDERED that the automatic stay of Section 362(a) is modified in order to permit The

Morganti Group, Inc. to proceed with that certain arbitration styled as *The Morganti Group,*

*Inc. v. Wall Street Theater Company, Inc.*, Case No. 01-17-0002-8468, that is currently

pending before the American Arbitration Association.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

| | |
|---|---|
| ------------------------------------------------------------X | |
| | CHAPTER 11 |
| In re: | |
| | Case No. 18-50132 |
| WALL STREET THEATER COMPANY, INC. | Case No. 18-50133 |
| WALL STREET MASTER LANDLORD, LLC | Case No. 18-50134 |
| WALL STREET MANAGING MEMBER, LLC | |
| | |
| Debtor. | |
| | |
| ------------------------------------------------------------X | |
| | |
| THE MORGANTI GROUP, INC., | |
| | Contested Matter |
| Movant. | |
| | |
| v. | |
| | |
| WALL STREET THEATER COMPANY, INC. | |
| and WALL STREET MASTER LANDLORD, | |
| LLC, | February 21, 2018 |
| | |
| Respondents. | |
| ------------------------------------------------------------X | |

## NOTICE OF CONTESTED MATTER RESPONSE DATE

The Morganti Group, Inc. (the "Movant") has filed a Motion for Relief from the

Automatic Stay for Cause and to Enforce Arbitration Agreement Pursuant to Federal

Arbitration Act with the United States Bankruptcy Court for the District of Connecticut.

Notice is hereby given that any response to the Contested Matter must be filed with the Court

no later than March 7, 2018, in accordance with Federal Rules of Bankruptcy Procedure

2002(a) and 9014.*   In the absence of a timely filed response, the proposed order in the

Contested Matter *may* enter without further notice and hearing, see 11 U.S.C. § 102(1).

> MOVANT,
> THE MORGANTI GROUP, INC.
>
> By:/s/ Kristin B. Mayhew
> Kristin B. Mayhew – ct20896
> McElroy, Deutsch, Mulvaney & Carpenter, LLP
> 30 Jelliff Lane
> Southport, CT  06890-1436
> Tel.:   (203) 319-4022
> Fax:   (203) 259-0251
> Email  kmayhew@mdmc-law.com

*Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail, three days are added after the response date set in this notice.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

---------------------------------------------------------------X

| | |
|---|---|
| In re: | : CHAPTER 11 |
| | : |
| | : Case No. 18-50132 |
| WALL STREET THEATER COMPANY, INC. : | Case No. 18-50133 |
| WALL STREET MASTER LANDLORD, LLC : | Case No. 18-50134 |
| WALL STREET MANAGING MEMBER, LLC : | |
| | : |
| Debtor. | : |
| | : |

---------------------------------------------------------------X

| | |
|---|---|
| | : |
| THE MORGANTI GROUP, INC., | : |
| | : Contested Matter |
| Movant. | : |
| | : |
| v. | : |
| | : |
| WALL STREET THEATER COMPANY, INC. : | |
| and WALL STREET MASTER LANDLORD, : | |
| LLC, | : February 21, 2018 |
| | : |
| Respondents. | : |

_____X

## CERTIFICATE OF SERVICE

In accordance with the applicable provisions of the Federal Rules of Bankruptcy

Procedure 2002 and 7004, the undersigned certifies that on the 21st day of February, 2018, the

following documents were served on the U.S. Trustee and all appearing parties via the court's

electronic filing system and by first class U.S. mail on the parties listed below:

1. **Documents Served:**

   **a.** Motion of the Morganti Group, Inc. for Relief from the Automatic Stay for Cause and to Enforce Arbitration Agreement Pursuant to Federal Arbitration Act (without exhibits which are available upon request).

   **b.** Proposed Order

   **c.** Notice of Contested Matter/Notice of Hearing

2. **Parties Served Via First Class Mail:**

   **a.** See attached.

MOVANT,
THE MORGANTI GROUP, INC.

By:/s/ Kristin B. Mayhew
   Kristin B. Mayhew – ct20896
   McElroy, Deutsch, Mulvaney & Carpenter, LLP
   30 Jelliff Lane
   Southport, CT  06890-1436
   Tel.:   (203) 319-4022
   Fax:    (203) 259-0251
   Email  kmayhew@mdmc-law.com

U. S. Internal Revenue Service
Dept. of Treasury
135 High Street, Stop 155
Hartford, CT 06103

Securities & Exchange Commission
Northeast Regional Office
The Woolworth Building
233 Broadway
New York, NY 10279-0001

Securities & Exchange Commission
New York Regional Office
7 World Trade Center
13th Floor
New York, NY 10048

State of CT Dept. of Revenue Services
Collections and Enforcement Div.
25 Sigourney Street
Hartford, CT 06106

Wall Street Manager, LLC
71 Wall Street
Norwalk, CT 06850-3411

Wall Street Managing Member, LLC
71 Wall Street
Norwalk, CT 06840-3411

Wall Street Master Landlord, LLC
71 Wall Street
Norwalk, CT 06850-3411

Wall Street Theater Company, Inc.
71 Wall Street
Norwalk, CT 06850-3411

Wall Street Master Tenant, LLC
71 Wall Street
Norwalk, CT 06850-3411

ARC Sound Stage Lighting
Attn: Gene Morrell
5 Pettom Rd.
Norwalk, CT 06850-3116

Alliance Consulting Group, LLC
Attn. Pres., Sec., or Mng. Agent
P.O. Box 261
Southington, CT 06489-0261

Christie Weber
7819 Rancho Fanita Drive #A
Santee, CA 92071-3374

City Carting
Attn: Pres., Sec., or Mng. Agent
221 Old Gate Lane
Milford, CT 06460-3614

Ciulla & Donofrio, LLP
Attn: Jeff Donofrio
127 Washington Avenue
PO Box 219
North Haven, CT 06473-0219

Classic Wines, Inc.
Attn: Pres., Sec., or Mng. Agent
52 Poplar St.
Stamford, CT 06907-2705

Clinton Brown Company Architecture
PC
Attn: Pres, Sec, or Mng Agent
617 Main Street, m303
Buffalo, NY 1420-1400

Connecticut Education Network
Attn: Pres., Sec., or Mng. Agent
55 Farmington Ave.
Hartford, CT 06105-3725

Connecticut Office of the State
Treasure
55 Elm St. #2
Hartford, CT 06106-1752

Design Development Architects
Attn: Pres., Sec., or Mng. Agent
165 Mamaroneck Ave., Fl 2
White Plains, NY 10601-5302

Dichello Distributors Inc.
Attn: Pres., Sec., or Mng. Agent
55 Marsh Hill Rd.
Orange, CT 06477-3648

Digital Back Office
Attn: Pres., Sec., or Mng. Agent
192 Naugatuck Ave.
Milford, CT 06460-6062

Dina Fleischmann
9 Marion Road
Westport, CT 06880-2921

Eder Brothers
Attn: Pres., Sec., or Mng. Agent
11 Eder Road
West Haven, CT 06516-4162

First District Water Department
12 New Canaan Ave.
Norwalk, CT 06851-6135

Gas 4 Drinks
Attn: Pres., Sec., or Mng. Agent
45 Columbia Avenue
Thornwood, NY 10594-1401

GTL Construction, LLC
Attn: Pres., Sec., or Mng. Agent
1230 Mamaroneck Ave.
White Plains, NY 10605-5229

Hearst CT Media Group
Attn: Pres., Sec., or Mng. Agent
100 Gando Drive
New Haven, CT 06513-1049

Historic Equity Inc.
Attn: Pres., Sec., or Mng. Agent
1034 S. Brentwood Blvd #678
Saint Louis, MO 63117-1206

Isaiah D. Cooper, Esq.
Cooper Law LLC
79 Bedford Avenue
Hamden, CT 06517-1309

JaffeHolden Acoustics, Inc.
Attn: Pres., Sec., or Mng. Agent
114A Washington St.
Norwalk, CT 06854-3066

Jason Maus
Stinson Leonard Street LLP
1299 Farnam Street, Suite 1500
Omaha, NE 68102-1818

Jonathan Burckin
Enhanced Capital
201 St. Charles St., Suite 3400
New Orleans, LA 70170-1026

Justin J. Garcia, Esq.
Garcia & Milas, P.C.
44 Trumbull Street
New Haven, CT 06510-1061

Kolins Productions, LLC
Attn: Pres., Sec., or Mng. Agent
110 Hoyt Street
Brooklyn, NY 11217-2215

Lamar
Attn: Pres., Sec., or Mng. Agent
32 Midland Street
Windsor, CT 06095-4334

Lockwood and Mead Development LLC
Attn: Pres., Sec., or Mng. Agent
30 Wildwood Drive
Greenwich, CT 06830-6728

Lockwood and Mead Real Estate LLC
Attn: Pres., Sec., or Mng. Agent
126 Milbank Ave.
Greenwich, CT 06830-5741

Lyric-Hall, LLC
Attn: Pres., Sec., or Mng. Agent
827 Whalley Ave.
New Haven, CT 06515-1716

MacKenzie Company, LLC
Attn: Pres., Sec., or Mng. Agent
60 Mead Street
Stratford, CT 06615-6716

MaxEx Public Relations, LLC
Attn: Pres., Sec., or Mng. Agent
102 Alton Road
Stamford, CT 06906-1103

Michael H. Clinton, Esq.
Law Offices of Michael H. Clinton,
LLC
212A New London Tpk.
Glastonbury, CT 06033-4202

Milazzo & Associates, LLC
41 Trumbull St.
New Haven, CT 06510-1034

Norwalk Chamber of Commerce
101 East Ave.
Norwalk, CT 06851-5076

Norwalk Police Department
1 Monroe Street
Norwalk, CT 06854-3103

Patriot Bank, N.A.
Attn: Pres., Sec., or Mng. Agent
900 Bedford Street
Stamford, CT  06901-1109

Queen City Carting, Inc.
Attn: Pres., Sec., or Mng. Agent
19 Cliff Street
New Rochelle, NY 10801-6803

R&B Ceramic Tile & Floor Covering
Attn: Pres., Sec., or Mng. Agent
10 Pickett Ave.
Wallingford, CT 06492-5125

Redniss & Mead, Inc.
Attn: Pres., Sec., or Mng. Agent
22 First Street

RubinBrown LLP
Attn: Pres., Sec., or Mng. Agent
1 North Brentwood Blvd., Ste. 1100
Saint Louis, MO 63105-3900

Standard Demolition
Attn: Pres., Sec., or Mng. Agent
30 Nutmeg Drive
Trumbull, CT 06611-5453

Supertech, Inc
Attn: Pres., Sec., or Mng.
22 North Plains Road, Suite 4
Wallingford, CT 06492-2341

Suzanne Cahill
162 Bridgeport Ave.
Milford, CT 06460-3935

Szewczak Associates
Attn: Pres., Sec., or Mng. Agent
200 Fisher Dr. #2
Avon, CT 06001-3792

U. S. Trustee
Office of the U.S. Trustee
Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510-2022

United Alarm Services, Inc.
Attn: Pres., Sec., or Mng. Agent
1087 Federal Road, Unit #5
Brookfield, CT 06804-1145

Ury & Moskow, LLC
883 Black Rock Turnpike
Fairfield, CT 06825-4718

WPKN Inc.
Attn: Pres., Sec., or Mng. Agent
244 University Ave.
Bridgeport, CT 06604-5700

Westfair Communications, Inc.
Attn: Pres., Sec., or Mng. Agent
3 Gannett Dr. G7
West Harrison, NY 10604-3407

XTX Associates, LLC
Attn: Pres., Sec., or Mng. Agent
703 Hebron Ave.
Glastonbury, CT 06033-5002

# EXHIBIT A

# ▓AIA® Document A101™ – 2007

## Standard Form of Agreement Between Owner and Contractor *where the basis of payment is a Stipulated Sum*

**AGREEMENT** made as of the 29 day of June in the year 2016
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

Wall Street Theater Company, LLC
~~6 West Putnam Avenue~~
~~Greenwich, CT 06830~~

and the Contractor:
*(Name, legal status, address and other information)*

The Morganti Group, Inc.
100 Mill Plain Road
Danbury, CT 06811

for the following Project:
*(Name, location and detailed description)*

Wall Street Theater
71 Wall Street
Norwalk, CT

The Architect:
*(Name, legal status, address and other information)*

Design Development Architects, PLLC
237 Mamaroneck Avenue
Suite 400
White Plains, NY 10601

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
User Notes:                                                                                                                            (894263604)

**1**

## TABLE OF ARTICLES

1    THE CONTRACT DOCUMENTS

2    THE WORK OF THIS CONTRACT

3    DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

4    CONTRACT SUM

5    PAYMENTS

6    DISPUTE RESOLUTION

7    TERMINATION OR SUSPENSION

8    MISCELLANEOUS PROVISIONS

9    ENUMERATION OF CONTRACT DOCUMENTS

10   INSURANCE AND BONDS

### ARTICLE 1    THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than a Modification, appears in Article 9.

### ARTICLE 2    THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.

### ARTICLE 3    DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 3.1 The date of commencement of the Work shall be fixed in a notice to proceed issued by the Owner, but in no event later than May 18, 2016.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

If, prior to the commencement of the Work, the Owner requires time to file mortgages and other security interests, the Owner's time requirement shall be as follows:

Not Applicable

§ 3.2 The Contract Time shall be measured from the date of commencement.

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than December 31, 2016.
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. If appropriate, insert requirements for earlier Substantial Completion of certain portions of the Work.)*

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
User Notes:                                                                                               (894263604)

Init.

/

2

| **Portion of Work** | **Substantial Completion Date** |
|---|---|
| 71 Wall Street, Renovations | December 31, 2016 |

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time or for bonus payments for early completion of the Work.)*

**ARTICLE 4   CONTRACT SUM**   $5,682,632

§ **4.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be   ($   ), subject to additions and deductions as provided in the Contract Documents and does not include temporary power, which will be provided by the Owner.

§ **4.2** The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If the bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires.)*

§ **4.3** Unit prices, if any:
*(Identify and state the unit price; state quantity limitations, if any, to which the unit price will be applicable.)*

| **Item** | **Units and Limitations** | **Price Per Unit ($0.00)** |
|---|---|---|

§ **4.4** Allowances included in the Contract Sum include all costs for labor, material and installation and are as follows:

*(Identify allowance and state exclusions, if any, from the allowance price.)*

| **Item** | **Price** | |
|---|---|---|
| Allowances – Exterior Fire Stair Repairs | | $40,000.00 |
| Allowances-Sidewalk Repairs | | not included or applicable |
| Allowances-Scaffolding/Lifts | | $61,750.00 |
| Allowances-Testing, Inspection, Commissioning | | $10,000.00 |
| Allowances-Site Safety, Fencing, Signs | | $5,000.00 |
| Allowances-Miscellaneous City Requirements | | $15,000.00 |
| Allowances-Temporary Heating/Power | | $20,000.00 |
| Allowances-Dumpsters | | $15,000.00 |
| Allowances-Temporary Roofing | | $7,500.00 |
| Allowances-Rodent and Pest Control | | $2,500.00 |
| Allowances-Raise Existing Rafters | | $7,500.00 |
| Allowance-Repair/Replace TG Wood Roof Deck | | $10,000.00 |
| Allowance-Scope Coordination/LEED | | $75,000.00 |

The allowances above take precedence over those set forth in Exhibit C (Assumptions and Clarifications) if there is any conflict.

**ARTICLE 5   PAYMENTS**
§ **5.1 PROGRESS PAYMENTS**
§ **5.1.1** Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ **5.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
User Notes:                                                                                                                            (894263604)

**§ 5.1.3** Provided that an Application for Payment is received by the Architect and Owner's Lender Bank not later than the 22nd day of a month, the Owner shall make payment of the certified amount to the Contractor not later than fifteen (15) calendar days following receipt from the Architect of its Certificate for Payment, which shall be issued no later than the seven (7) calendar days after receipt of the Contractor's Application for Payment.
*(Federal, state or local laws may require payment within a certain period of time.)*

**§ 5.1.4** Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**§ 5.1.5** Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

**§ 5.1.6** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

   .1   Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of five percent ( 5 %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201™–2007, General Conditions of the Contract for Construction;

   .2   Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of five percent ( 5 %);

   .3   Subtract the aggregate of previous payments made by the Owner; and

   .4   Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

**§ 5.1.7** The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

   .1   Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
        *(Section 9.8.5 of AIA Document A201–2007 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

   .2   Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201–2007.

**§ 5.1.8** Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*

Not Applicable

**§ 5.1.9** Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

**§ 5.2 FINAL PAYMENT**
**§ 5.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
User Notes:                                                                                                      (894263604)

**4**

.1   the Contractor has fully performed the Contract except for the Contractor's responsibility to correct
Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if
any, which extend beyond final payment; and

.2   a final Certificate for Payment has been issued by the Architect.

§ **5.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the
Architect's final Certificate for Payment, or as follows:

**ARTICLE 6    DISPUTE RESOLUTION**

**§ 6.1 BINDING DISPUTE RESOLUTION**
For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201–2007, the
method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below,
or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be
resolved by litigation in a court of competent jurisdiction.)*

[ X ]    Arbitration pursuant to Section 15.4 of AIA Document A201–2007

*(Paragraphs deleted)*
**ARTICLE 7    TERMINATION OR SUSPENSION**
§ **7.1** The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document
A201–2007.

§ **7.2** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007.

**ARTICLE 8    MISCELLANEOUS PROVISIONS**
§ **8.1** Where reference is made in this Agreement to a provision of AIA Document A201–2007 or another Contract
Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract
Documents.

§ **8.2** Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated
below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

10 % Ten Percent Per Annum

§ **8.3** The Owner's representative:
*(Name, address and other information)*

Frank Farricker
Wall Street Theater Company Inc.
6 West Putnam Avenue

**Init.**

**/**

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American
Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the
maximum extent possible under the law.** This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires
on 05/26/2017, and is not for resale.
**User Notes:**                                                                                                                    (894263604)

**5**

Greenwich, CT 06830

**§ 8.4** The Contractor's representative:
*(Name, address and other information)*

Nabil Takla, President and CEO (or his designee)
The Morganti Group, Inc.
100 Mill Plain Road
Danbury, CT 06811
**§ 8.5** Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

**§ 8.6** Other provisions:

**Previously Completed Work.** The Contractor shall not be responsible for defects or deficiencies arising from the work of prior contractors in connection with this Project. The Project site shall be delivered to Contractor free from any liens or other encumbrances that would in any way interfere with Owner's ability to obtain necessary funding to meet its obligations to pay Contractor the Contract Sum as proposed herein.

**ARTICLE 9   ENUMERATION OF CONTRACT DOCUMENTS**
**§ 9.1** The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

**§ 9.1.1** The Agreement is this executed AIA Document A101–2007, Standard Form of Agreement Between Owner and Contractor.

**§ 9.1.2** The General Conditions are AIA Document A201–2007, General Conditions of the Contract for Construction.

**§ 9.1.3** The Supplementary and other Conditions of the Contract:

| Document | Title | Date | Pages |
|---|---|---|---|
| See attached Exhibits | | | |

**§ 9.1.4** The Specifications:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Section | Title | Date | Pages |
|---|---|---|---|
| N/A there is no specification manual | | | |

**§ 9.1.5** The Drawings:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Number | Title | Date |
|---|---|---|
| See attached Exhibits | | |

**§ 9.1.6** The Addenda, if any:

| Number | Date | Pages |
|---|---|---|
| None N/A | | |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 9.

**AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it. may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
**User Notes:**                                                                                                                    (894263604)

Init.

/

6

**§ 9.1.7** Additional documents, if any, forming part of the Contract Documents:

.1　AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

.2　Other documents, if any, listed below:
*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

Morganti Exhibit A-List of Contract Documents
Morganti Exhibit B-Scope of Work Task Matrix
Morganti Exhibit C-Assumptions and Clarifications
Morganti Exhibit D-Letter Agreement

## ARTICLE 10   INSURANCE AND BONDS
The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201–2007.
*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

**Type of insurance or bond**　　　　**Limit of liability or bond amount ($0.00)**

Performance and Payment Bond equal to 100% of the Stipulated Sum
This Agreement entered into effective as of the day and year first written above.

| OWNER *(Signature)* | CONTRACTOR *(Signature)* |
|---|---|
| Frank Farricker | Nabil M. Takla |
| President | President and CEO |
| Duly Authorized | Duly Authorized  7/18/16 |
| *(Printed name and title)* | *(Printed name and title)* |

SUZANNE CAHILL
PRESIDENT
7/14/16

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
**User Notes:**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(894263604)

**7**

## *Additions and Deletions Report for*

*AIA® Document A101™ – 2007*

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note: This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 09:07:45 on 06/27/2016.

**PAGE** 1

**AGREEMENT** made as of the 29 day of June in the year 2016

...

Wall Street Theater Company, LLC
6 West Putnam Avenue
Greenwich, CT  06830

...

The Morganti Group, Inc.
100 Mill Plain Road
Danbury, CT  06811

...

Wall Street Theater
71 Wall Street
Norwalk, CT

...

Design Development Architects, PLLC
237 Mamaroneck Avenue
Suite 400
White Plains, NY  10601

**PAGE 2**

**§ 3.1** The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.Owner, but in no event later than May 18, 2016.

...

Not Applicable

...

**§ 3.3** The Contractor shall achieve Substantial Completion of the entire Work not later than ( ) days from the date of commencement, or as follows:December 31, 2016.

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
User Notes:                                                                                                          (894263604)

1

**PAGE 3**

71 Wall Street, Renovations            December 31, 2016

...

§ **4.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be    ($   ), subject to additions and deductions as provided in the Contract ~~Documents.~~Documents and does not include temporary power, which will be provided by the Owner.

...

§ **4.4** Allowances included in the Contract ~~Sum, if any:~~Sum include all costs for labor, material and installation and are as follows:

...

| | |
|---|---|
| Allowances – Exterior Fire Stair Repairs | $40,000.00 |
| Allowances-Sidewalk Repairs | not included or applicable |
| Allowances-Scaffolding/Lifts | $61,750.00 |
| Allowances-Testing, Inspection, Commissioning | $10,000.00 |
| Allowances-Site Safety, Fencing, Signs | $5,000.00 |
| Allowances-Miscellaneous City Requirements | $15,000.00 |
| Allowances-Temporary Heating/Power | $20,000.00 |
| Allowances-Dumpsters | $15,000.00 |
| Allowances-Temporary Roofing | $7,500.00 |
| Allowances-Rodent and Pest Control | $2,500.00 |
| Allowances-Raise Existing Rafters | $7,500.00 |
| Allowance-Repair/Replace TG Wood Roof Deck | $10,000.00 |
| Allowance-Scope Coordination/LEED | $75,000.00 |

The allowances above take precedence over those set forth in Exhibit C (Assumptions and Clarifications) if there is any conflict.

**PAGE 4**

§ **5.1.3** Provided that an Application for Payment is received by the Architect and Owner's Lender Bank not later than the 22nd day of a month, the Owner shall make payment of the certified amount to the Contractor not later than ~~the day of the   month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than   (   ) days after the Architect receives the~~ fifteen (15) calendar days following receipt from the Architect of its Certificate for Payment, which shall be issued no later than the seven (7) calendar days after receipt of the Contractor's Application for Payment.

...

    .1    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of five percent ( 5 %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201™–2007, General Conditions of the Contract for Construction;

    .2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of five percent ( 5 %);

...

Additions and Deletions Report for AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
User Notes:                                                                                                    (894263604)

Not Applicable

**PAGE 5**

### § 6.1 ~~INITIAL DECISION MAKER~~BINDING DISPUTE RESOLUTION

~~The Architect will serve as Initial Decision Maker pursuant to Section 15.2 of AIA Document A201 2007, unless the~~ ~~parties appoint below another individual, not a party to this Agreement, to serve as Initial Decision Maker.~~For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201–2007, the method of binding dispute resolution shall be as follows:

~~(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if~~ ~~other than the Architect.)~~*(Check the appropriate box. If the Owner and Contractor do not select a method of binding* *dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than* *litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

    [ **X** ]    Arbitration pursuant to Section 15.4 of AIA Document A201–2007

### § 6.2 ~~BINDING DISPUTE RESOLUTION~~

~~For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201 2007, the~~ ~~method of binding dispute resolution shall be as follows:~~
~~*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below,*~~ ~~*or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be*~~ ~~*resolved by litigation in a court of competent jurisdiction.)*~~

    ~~[ ]    Arbitration pursuant to Section 15.4 of AIA Document A201 2007~~

    ~~[ ]    Litigation in a court of competent jurisdiction~~

    ~~[ ]    Other *(Specify)*~~

...

10 % Ten Percent Per Annum

...

Frank Farricker
Wall Street Theater Company Inc.
~~6 West Putnam Avenue~~ 30 *willowed drive*
Greenwich, CT  06830

**PAGE 6**

Nabil Takla, President and CEO (or his designee)
The Morganti Group, Inc.
100 Mill Plain Road
Danbury, CT  06811

...

**Previously Completed Work.**  The Contractor shall not be responsible for defects or deficiencies arising from the work of prior contractors in connection with this Project.  The Project site shall be delivered to Contractor free from any liens or other encumbrances that would in any way interfere with Owner's ability to obtain necessary funding to meet its obligations to pay Contractor the Contract Sum as proposed herein.

**Additions and Deletions Report for AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:07:46 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
**User Notes:**          (894263604)

...

See attached Exhibits

...

N/A there is no
specification manual

...

See attached Exhibits

...

None N/A

**PAGE 7**

Morganti Exhibit A-List of Contract Documents
Morganti Exhibit B-Scope of Work Task Matrix
Morganti Exhibit C-Assumptions and Clarifications
Morganti Exhibit D-Letter Agreement

...

Performance and Payment Bond equal to 100% of the Stipulated Sum
This Agreement entered into effective as of the day and year first written above.

...

| Frank Farricker | SUZANNE CAHILL | Nabil M. Takla | |
|---|---|---|---|
| President | PRESIDENT | President and CEO | |
| Duly Authorized | 7/14/16 | Duly Authorized | 7/18/16 |

**Additions and Deletions Report for AIA Document A101™ – 2007.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
User Notes:                                                                                    (894263604)

**4**

## *Certification of Document's Authenticity*
*AIA® Document D401™ – 2003*

I, , hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 09:07:45 on 06/27/2016 under Order No. 7913415577_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A101™ – 2007, Standard Form of Agreement Between Owner and Contractor  where the basis of payment is a Stipulated Sum, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____

*(Signed)*

_____

*(Title)*

_____

*(Dated)*

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. **All rights reserved. WARNING: This AIA² Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA² Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
**User Notes:**                                                                                                                                    (694263604)

1


A SOLID FOUNDATION

*Construction Managers  •  General Contractors  •  Design Builders*

Exhibit A
The Wall Street Theater
71 Wall Street, Norwalk, CT                                          June 15, 2016

# Exhibit A-Project Documents

Mr. Frank Farricker
The Wall Street Theater Company, LLC
6 West Putnam Avenue
Greenwich, CT 06830

Re:  The Wall Street Theater
71 Wall Street
Norwalk, CT 06850

Dear Mr. Farricker:

Attached please find our list of Project Documents used in the development of our stipulated sum contract value..

Specifications:
None:

Drawing List:  Issued for Permit Set Dated 03/30/16:

| Architectural: | Dated: |
|---|---|
| G-000 Cover Sheet | 3-30-2016 |
| G-001 Code Study | 3-30-2016 |
| A-100 Basement Level Plan | 3-30-2016 |
| A-101 Ground Level Plan | 3-30-2016 |
| A-101.1 Ground Level Seating Plan | 3-30-2016 |
| A-102 Mezzanine Level Plan | 3-30-2016 |
| A-103 Balcony Level Plan | 3-30-2016 |
| A-104 Roof Plan | 3-30-2016 |
| A-110 Basement Rcp | 3-30-2016 |
| A-111 Ground Level Rcp | 3-30-2016 |
| A-112 Mezzanine Level Rcp | 3-30-2016 |
| A-113 Balcony Level  Rcp | 3-30-2016 |
| A-120 Basement Level Power & Data Plan | 3-30-2016 |
| A-121 Ground Level Power & Data Plan | 3-30-2016 |
| A-122 Mezzanine Level Power & Data Plan | 3-30-2016 |
| A-123 Balcony Level Power & Data Plan | 3-30-2016 |

Page **1** of **8**



*Construction Managers  •  General Contractors  •  Design Builders*

Exhibit A
The Wall Street Theater
71 Wall Street, Norwalk, CT                                June 15, 2016


| A-200 Building Elevations | 3-30-2016 |
|---|---|
| A-201 Building Elevations | 3-30-2016 |
| A-202 Building Elevations | 3-30-2016 |
| A-300 Building Sections | 3-30-2016 |
| A-301 Building Sections | 3-30-2016 |
| A-302 Building Sections | 3-30-2016 |
| A-303 Building Sections | 3-30-2016 |
| A-400 Interior Elevations | 3-30-2016 |
| A-401 Interior Elevations | 3-30-2016 |
| A-500 Wall Types & Details | 3-30-2016 |
| A-501 Enlarged Balcony Plan & Details | 3-30-2016 |
| A-502 Enlarged Balcony Section & Details | 3-30-2016 |
| A-600 Floor Finish & Schedule | 3-30-2016 |

MEP

| M-001 Mechanical Symbols, Abbreviations And Notes | 3-30-2016 |
|---|---|
| M-002 Mechanical Specifications | 3-30-2016 |
| M-003 Mechanical Specifications | 3-30-2016 |
| M-200 Mechanical Basement New Work | 3-30-2016 |
| M-201 Mechanical Ground Floor New Work | 3-30-2016 |
| M-202 Mechanical Mezzanine New Work | 3-30-2016 |
| M-203 Mechanical Balcony New Work | 3-30-2016 |
| M-204 Mechanical Roof New Work | 3-30-2016 |
| M-501 Mechanical Boiler Piping Schematic | 3-30-2016 |
| M-601 Mechanical Schedules | 3-30-2016 |
| M-701 Mechanical Details | 3-30-2016 |
| M-702 Mechanical Details | *In set not toc* |

**Electrical**

| E-001 Electrical Symbols, Abbreviations And Notes | 3-30-2016 |
|---|---|
| E-002 Electrical Specifications | 3-30-2016 |
| E-100 Electrical Site Plan | 3-30-2016 |
| E-201 Electrical Basement Lighting Plan | 3-30-2016 |
| E-202 Electrical Ground Level Lighting Plan | 3-30-2016 |
| E-203 Electrical Mezzanine Lighting Plan | 3-30-2016 |
| E-204 Electrical Balcony Lighting Plan | 3-30-2016 |
| E-212 Electrical Ground Level Aisle Lighting Plan | 3-30-2016 |
| E-213 Electrical Mezzanine Level Aisle Lighting Plan | 3-30-2016 |

**.:MORGANTI**
A SOLID FOUNDATION

*Construction Managers • General Contractors • Design Builders*

Exhibit A
The Wall Street Theater
71 Wall Street, Norwalk, CT                                June 15, 2016
E-214 Electrical Balcony Level Aisle Lighting Plan              3-30-2016


| | |
|---|---|
| E-301 Electrical Basement Power Plan | 3-30-2016 |
| E-302 Electrical Ground Level Power Plan | 3-30-2016 |
| E-303 Electrical Mezzanine Level Power Plan | 3-30-2016 |
| E-304 Electrical Balcony Level Power Plan | 3-30-2016 |
| E-305 Electrical Roof Level Power Plan | 3-30-2016 |

*For Reference (By Owner) (Note A/E to Review Cover Sheet and Coord.Dwg*
*List as drawing numbers & names don't match plan pages)*

| | |
|---|---|
| *E-310 Gen Arrangements: Index, Abbreviations, Symbols & Keys* | *3-30-2016* |
| *E-311 Gen Arrangements: Power System & Temp Cable Mgmt* | *3-30-2016* |
| *E-312 Gen Arrangements: Power System & Temp Cable Mgmt* | *3-30-2016* |
| *E-313 Gen Arrangements: Power System & Temp Cable Mgmt* | *3-30-2016* |
| *E-314 Gen Arrangements: Power System & Temp Cable Mgmt* | *3-30-2016* |
| *E-315 Gen Arrangements: Performance Ltg Positions* | *On toc not in set* |
| *E-316 Gen Arrangements: Performance Ltg Positions* | *On toc not in set* |
| *E-317 Gen Arrangements: Typical Details* | *On toc not in set* |
| *E-318 Gen Arrangements: Power System & Temp Cable Mgmt* | *On toc not in set* |
| *E-319 Gen Arrangements: Power System & Temp Cable Mgmt* | *On toc not in set* |
| *E-320 Gen Arrangements: Power System & Temp Cable Mgmt* | *On toc not in set* |
| *E-321 Gen Arrangements: Power System & Temp Cable Mgmt* | *On toc not in set* |
| *E-322 Gen Arrangements: Dimming & Control Systems* | *3-30-2016* |
| *E-323 Gen Arrangements: Dimming & Control Systems* | *3-30-2016* |
| *E-324 Gen Arrangements: Dimming & Control Systems* | *3-30-2016* |
| *E-325 Gen Arrangements: Performance Work Ltg System* | *On toc not in set* |
| *E-326 Gen Arrangements: Dimming & Control System* | *On toc not in set* |
| *E-327 Gen Arrangements: Dimming & Control System* | *On toc not in set* |
| *E-328 Gen Arrangements: Dimming & Control System* | *On toc not in set* |
| *E-330 AV System Schedules* | *3-30-2016* |
| *E-331 Basement Level Audio & Video Plan* | *3-30-2016* |
| *E-332 Ground Level Audio & Video Plan* | *3-30-2016* |
| *E-333 Mezzanine Level Audio & Video Plan* | *3-30-2016* |
| *E-334 Balcony Level Audio & Video Plan* | *3-30-2016* |

*End For Reference (By Owner)*

| | |
|---|---|
| E-401 Electrical Ground Level Power Plan | 3-30-2016 |
| E-402 Electrical Balcony Level Power Plan | On toc not in set |
| E-501 Electrical One Line Diagrams | 3-30-2016 |

Page **3** of **8**

**MORGANTI**
A SOLID FOUNDATION

*Construction Managers  •  General Contractors  •  Design Builders*

Exhibit A
The Wall Street Theater
71 Wall Street, Norwalk, CT                                  June 15, 2016

| | |
|---|---|
| E-502 Electrical Diagrams | 3-30-2016 |
| E-601 Electrical Schedules | 3-30-2016 |
| E-602 Electrical Schedules | *In set not toc* |
| E-701 Electrical Details | 3-30-2016 |
| FA-001 Fire Alarm Riser And Symbols | 3-30-2016 |
| FA-100 Electrical Basement Fire Alarm Plan | 3-30-2016 |
| FA-101 Electrical Ground Level Fire Alarm Plan | 3-30-2016 |
| FA-102 Electrical Mezzanine Level Fire Alarm Plan | 3-30-2016 |
| FA-103 Electrical Balcony Level Fire Alarm Plan | 3-30-2016 |
| FA-104 Electrical Roof Fire Alarm Plan | 3-30-2016 |

**Plumbing**

| | |
|---|---|
| P-001 Plumbing Symbols, Abbreviations And Notes | 3-30-2016 |
| P-002 Plumbing Specifications | 3-30-2016 |
| P-200 Plumbing Basement New Work | 3-30-2016 |
| P-201 Plumbing Ground Floor New Work | 3-30-2016 |
| P-202 Plumbing Mezzanine New Work | 3-30-2016 |
| P-203 Plumbing Balcony New Work | 3-30-2016 |
| P-204 Plumbing Roof New Work | 3-30-2016 |
| P-501 Plumbing Riser Diagrams | 3-30-2016 |
| P-502 Plumbing Riser Diagrams | *In set not toc* |
| P-601 Plumbing Schedules | 3-30-2016 |
| P-701 Plumbing Details | 3-30-2016 |

**Fire Sprinkler**

| | |
|---|---|
| SP-001 Sprinkler Symbols, Abbreviations And Notes | 3-30-2016 |
| SP-200 Sprinkler Basement New Work | 3-30-2016 |
| SP-201 Sprinkler Ground Level New Work | 3-30-2016 |
| SP-202 Sprinkler Mezzanine Level New Work | 3-30-2016 |
| SP-203 Sprinkler Balcony Level New Work | 3-30-2016 |
| SP-501 Sprinkler Riser Diagram | *On toc not in set* |
| SP-701 Sprinkler Details | 3-30-2016 |

**Structural**

| | |
|---|---|
| S-001 General Notes And Typical Details | 3-30-2016 |
| S-100 Foundation Plan | 3-30-2016 |
| S-200 Ground Floor Framing Plan | 3-30-2016 |
| S-201 Balcony Level Framing Plan | 3-30-2016 |
| S-202 Multi-Function Level Framing Plan | 3-30-2016 |
| S-203 Roof Framing Plan | 3-30-2016 |

Page **4** of **8**

**᳚MORGANTI**

A SOLID FOUNDATION

*Construction Managers* • *General Contractors* • *Design Builders*

Exhibit A
The Wall Street Theater
71 Wall Street, Norwalk, CT                                    June 15, 2016
  S-204 RTU Platform And Loft Roof Framing Plan          3-30-2016
  S-301 Structural Sections                              3-30-2016

*Demolition set Dated 5-23-2014 and not part of the Permit Set dated 3-30-2016*
**Demolition: For Reference as Majority of Demolition has been done**
G-100 Cover Sheet & General Information                        10-15-14
D-100 Selective Demolition Plans                              10-15-14
D-200 Roof And Exterior Elevation Selective Demolition        10-15-14

**(Jaffe Holden) Audio/Video Drawings--For Reference (By Owner)**
AV-000 Cover Sheet                                            Not dated
*AV-001 Notes And Schedule Of Termination*                   *On toc not in set*
*AV-100 Basement Level Audio Video Layt*                      *On toc not in set*
*AV-101*   *Ground Level Audio Video Layt*                    *On toc not in set*
*AV-102*   *Mezzanine Level Audio Video Layt*                 *On toc not in set*
*AV-103*   *Balcony Level Audio Video Layt*                   *On toc not in set*
*AV-104*   *Roof Level Audio Video Layt*                      *On toc not in set*
*AV-601*   *Signal Flow 1*                                    *On toc not in set*
*AV-602*   *Signal Flow 2*                                    *On toc not in set*
*AV-801*   *Panel Detail 1*                                   *On toc not in set*
*AV-802*   *Panel Detail 2*                                   *On toc not in set*
*AV-803*   *Panel Detail 3*                                   *On toc not in set*
*AV-851*   *Rack Details*                                     *On toc not in set*

(Theatre Projects) Theatrical Drawings--For Reference
       GENERAL ARRANGEMENTS: **For Reference (By Owner)**
GA0.00   Drawing Index, Typical Abbreviations, Symbols & Keys   3-18-2016
GA0.01   Gen Arrangements: Coordination Zones                  *In set not toc*
GA0.02   Gen Arrangements: Coordination Zones                  *In set not toc*
GA0.03   Gen Arrangements: Coordination Zones                  *In set not toc*
GA0.04   Gen Arrangements: Coordination Zones                  *In set not toc*
GA0.05   Gen Arrangements: Performance Lighting Positions      *In set not toc*
GA0.06   Gen Arrangements: Performance Lighting Positions      *In set not toc*
GA0.10   Gen Arrangements: Typical Details                     *In set not toc*

GA1.11   Performance Power Systems & Temporary Cable Management   3-18-2016
GA1.12   Performance Power Systems & Temporary Cable Management   3-18-2016
GA1.13   Performance Power Systems & Temporary Cable Management   3-18-2016
GA1.14   Performance Power Systems & Temporary Cable Management   3-18-2016
*GA1.15*   *Performance Power Systems & Temporary Cable Management*   *On toc not in set*

.:**MORGANTI**
A SOLID FOUNDATION

*Construction Managers* • *General Contractors* • *Design Builders*

Exhibit A
The Wall Street Theater
71 Wall Street, Norwalk, CT                                        June 15, 2016

GEN ACCOMMODATION: **For Reference (By Owner)**

| | | |
|---|---|---|
| GA1.21 | Performance Work Light System | 3-18-2016 |
| GA1.22 | Performance Work Light System | 3-18-2016 |
| GA1.23 | Performance Work Light System | 3-18-2016 |
| GA1.24 | Performance Work Light System | 3-18-2016 |
| GA1.31 | Performance Dimming & Control System | 3-18-2016 |
| GA1.32 | Performance Dimming & Control System | 3-18-2016 |
| GA1.33 | Performance Dimming & Control System | 3-18-2016 |

THEATRE EQUIPMENT: **For Reference (By Owner)**

| | | |
|---|---|---|
| TE1.11 | Stage Level Plan | 3-18-2016 |
| TE1.12 | Balcony Level Plan | 3-18-2016 |
| TE1.13 | Catwalk Level Plan | 3-18-2016 |
| TE1.14 | Grid Level Plan | 3-18-2016 |
| TE1.21 | Centerline Section | 3-18-2016 |
| TE1.22 | Centerline Section With Masking | 3-18-2016 |
| TE1.23 | Transverse Section Typical Rigging | 3-18-2016 |
| TE1.24 | Transverse Section House Curtain And Valence Rigging | 3-18-2016 |
| TE1.25 | Transverse Section Fire Safety Curtain And Traveler Rigging | 3-18-2016 |
| TE1.41 | Details And Schedules | 3-18-2016 |
| TE1.42 | Details And Schedules | 3-18-2016 |
| TE1.43 | Details And Schedules | *In set not toc* |

| | | |
|---|---|---|
| TL1.00 | Performance Lighting Positions Key | 3-18-2016 |
| TL1.01 | Performance Lighting Positions Key | 3-18-2016 |
| TL1.11 | Performance Dimming And Control Box and House/Work Light Zone Schedule | 3-18-2016 |
| TL1.21 | Performance Dimming & Control-Control Riser | *In set not toc* |
| TL1.31 | Performance Dimming & Control: Face Plate Details | 3-18-2016 |
| TL1.32 | Performance Dimming & Control: Face Plate Details | 3-18-2016 |
| TL1.51 | Performance Lighting Arch Lighting Zone Diagram-Basement Level | *In set not toc* |
| TL1.52 | Performance Lighting Arch Lighting Zone Diagram-Stage Level | *In set not toc* |
| TL1.53 | Performance Lighting Arch Lighting Zone Diagram-Mezzanine Level | *In set not toc* |
| TL1.52 | Performance Lighting Arch Lighting Zone Diagram-Balcony Level | *In set not toc* |

| | | |
|---|---|---|
| TS1.01 | Theatre Seating First Floor Plan | 3-18-2016 |

# .ꞏꞏMORGANTI

A SOLID FOUNDATION

*Construction Managers • General Contractors • Design Builders*

Exhibit A
The Wall Street Theater
71 Wall Street, Norwalk, CT                                          June 15, 2016

| | | |
|---|---|---|
| TS1.02 | Theatre Seating Balcony Floor Plan | 3-18-2016 |
| TS1.03 | Theatre Seating Centerline Section And Details | 3-18-2016 |
| TS1.04 | Theatre Seating Configurations 1 | 3-18-2016 |
| TS1.05 | Theatre Seating Configurations 2 | 3-18-2016 |

**(TRIMARK) FOOD SERVICE EQUIPMENT For Reference (By Owner)**

| | | |
|---|---|---|
| *QF100* | *Food Service Equipment Plan - Main Level* | *On toc not in set* |
| *QF100.1* | *Food Service Equipment Plan - Mezzanine Level* | *On toc not in set* |
| *QF101* | *Food Service Equipment Schedules* | *On toc not in set* |

| | |
|---|---|
| 11 X 17   Color Rendering: Color Elevations Marble Scheme A-402 | 2-3-2016 |
| Color Rendering: Color Elevations Marble Scheme A-402 | 2-3-2016 |
| Color Rendering: Color Elevations Marble Scheme A-403 | 2-3-2016 |
| Color Rendering: Color Elevations Marble Scheme A-404 | 2-3-2016 |
| Color Rendering: Color Elevations Marble Scheme A-405 | 2-3-2016 |
| Color Rendering: Color Elevations Marble Scheme A-406 | 2-3-2016 |
| Color Rendering: Color Elevations Marble Scheme A-407 | 2-3-2016 |
| Color Rendering: Color Elevations Marble Scheme A-408 | 2-3-2016 |
| Color Rendering: Color Elevations Marble Scheme A-409 | 2-3-2016 |
| Color Rendering: Color Elevations Marble Scheme A-410 | 2-3-2016 |
| Color Rendering: Color Plan Flooring A-412 | 2-3-2016 |

Please note: All work shown on drawings listed for Reference (By Owner) are
the responsibility of the Owners Theatrical, AV, Food Service and other
subcontractors and consultants.

.Attachments
-   None
Addendums
-   None

Sincerely

Edward Barrett
Director of Preconstruction
The Morganti Group, Inc.

Page **7** of **8**



A SOLID FOUNDATION

*Construction Managers  •  General Contractors  •  Design Builders*

Exhibit A
The Wall Street Theater
71 Wall Street, Norwalk, CT

June 15, 2016

# EXHIBIT B – CONSTRUCTION MANAGER TASK MATRIX
## WALL STREET THEATRE, NORWALK, CT

Note: The intent of this form is to describe the scope of the work the Morganti Group, Inc. has figured in their stipulated sum since the plans are not 100% completed and issued as a Permit Set dated 3/30/2016 and do not define all work and there have not been any specifications issued.

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| **Pre-Construction Services** | | | | |
| | | | | |
| Cost Estimating | X | | | |
| Value Engineering | X | | | |
| Constructability Reviews | X | | | |
| Schedule, with updates | X | | | |
| Safety Plan | X | | | |
| Purchasing/Buyout | X | | | |
| | | | | |
| **Construction Services Staff & Field GC's** | | | | |
| Project Executive | X | | | |
| Project Manager | X | | | |
| Project Superintendent | X | | | |
| Project Engineer | X | | | |

1

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| Safety Officer | X | | | |
| Administration Support | X | | | |
| | | | | |
| Trav. & Out of Pocket expenses | X | | | |
| Office mobilization | X | | | |
| Field office rental | | X | | Owner to provide Office including utilities, bathroom adjacent to the construction site. 83 Wall Street.2nd Floor |
| Field office installation / removal | X | | | |
| Field office furniture | X | | | |
| Field office cleaning | X | | | |
| Owner workspace in field office | | X | | |
| Shed &/or storage trailer | X | | | Not required site limits |
| Furniture (other) | X | | | |
| Stationary & supplies | X | | | |
| Postage & Shipping | X | | | |
| Office equipment | X | | | |
| Jobsite copy machine | X | | | |
| Computers | X | | | |
| Internet Connection | X | | | |
| Computer Software | X | | | |
| Licensing Fees | X | | | |

2

| Item Description | Construction Manager- Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| On Site IT Support | X | | | . |
| Telephones | X | | | |
| Fax lines | X | | | |
| Comm. equipment / radios | X | | | |
| Photocopying | X | | | |
| Office utilities | X | | | |
| Drinking water / coffee | X | | | |
| Data processing / IT | X | | | |
| First Aid supplies | X | | | |
| Project vehicle | X | | | |
| Project vehicle fuel | X | | | |
| Project vehicle maintenance | X | | | |
| Survey, layout equipment & supplies | w/trade packages | | X | For construction layout only. |
| Project signage | X | | | |
| Records storage | X | | | |
| Reproduction costs for CM use | X | | | |
| Progress photos | X | | | |
| Safety Compliance material & labor | X | | | |
| Staff Training | X | | | |
| Building Perimeter Protection | | | X | Under emergency order to fence- national fence-only extent-needs quick resolution. Morganti to pick up fence cost. |

3

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| Site fencing & gates | | | X | |
| Construction fencing & gates | | | X | |
| Ladders, ramps, & stairs | | | X | |
| Building enclosures | | | X | |
| Finish work protection | | | X | |
| Dust partitions | | | X | |
| Hygiene plan requirements | | | X | |
| Water consumption | X | | X | Morganti to pay usage, subs to install. |
| Electrical - Install & maintain | | | X | |
| Electrical - consumption | | X | | Owner to pay consumption cost |
| Heat/Cooling - install & maintain | X | | X | MGI to carry in Allowance |
| Heat/Cooling - fuel consumption | X | | X | MGI to carry in Allowance |
| Fire protection | | | X | |
| Watchmen / Security services | | | | N/A not included |
| Roads - install & maintain | | | | N/A not included |
| Permanent Power | | | | Need to prepare for power by others: Eversource (MGI to 5' outside) |
| Barricades | | | X | |
| Traffic control | | | X | |
| Mud & dust control | | | X | |
| Mud pads @ exits | | | X | |
| Wheel wash stations | | | X | |
| Parking | | | X | |

4                    Wall Street Theatre Contract Exhibit-B, June 15, 2016

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| Temporary elevator service | | | X | |
| Personnel, material hoisting & stage | | | X | |
| Building Permit fee | | X | | Morganti to Obtain, Owner to pay Building Permit Fee and MEP Trades Permit Fees. |
| General & excess liability insurance | X | | | Per Bank Requirements |
| Builder's Risk insurance | | X | | |
| Contract Document printing | X | | | |
| Shop Drawing printing | | | X | |
| Legal Surveys | | X | | by owner if required |
| Field Engineering services | | | X | |
| Pest control | X | | X | |
| Special Inspection services | | X | | We have included an allowance for testing and inspection costs. |
| Advertising expenses | X | | | For bidding purposes only |
| Trash dumpster rental & removal | X | | X | |
| Trash dumpster tipping fee | X | | X | |
| Trash chutes & hoppers | | | | N/A not included |
| Final clean-up & window wash | | | X | |
| Winter protection | | | | N/A not included |
| General weather protection | | | X | |
| Snow Removal | | | | N/A not included |
| Maintenance of Silt Barriers | | | X | |
| Web Site start up | | | | N/A not included |

5

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| Web Site maintenance | | | | N/A not included |
| Payment & Performance Bond | X | | X | For Morganti & their Trades over $250k to pay for their own. |
| **Select Demolition and Abatement:** | | | | Note: Select demolition is limited to items contained herein as the Owner has previously performed demolition work and the current documents do not reflect the exact scope of work remaining. |
| Labor, equipment and materials to: Demo and remove one (1) fire escape structure. | | | X | Not include Architect has stated (2) two are required to remain. |
| Demolition and removal of existing interior concrete slabs on grade as shown on the plans. | | | X | All slabs on grade to be removed and replaced. |
| Demolition of the existing roofing system. | | | X | |
| Demolition of the existing wood stage structure. | | | X | |
| Demolition of (1) one roll up door, miscellaneous exterior louvers, and electrical panels | | | X | |
| Abatement of approximately (100) one hundred linear feet of asbestos pipe insulation. | | | X | Note: All other hazardous material abatement will be considered extra beyond (100) one hundred linear feet |
| Select cutting and patching of existing for construction. | | | X | |

6

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| **Earthwork (interior/exterior):** | | | | This is for work within the existing building only as the plans do not show any exterior work |
| | | | | Note: suitable bearing on soils is based on a maximum depth of 3'-6" to 4'-0" to reach sound undisturbed soils. |
| Excavate/backfill/compact for new cast-in-place foundations | | | X | Excavations beyond this depth to reach suitable bearing will be extra. |
| Excavate/backfill/compact for new slabs on grade | | | X | |
| Dress and supplement existing sub base under new slabs on grade | | | X | |
| | Based on all utilities within building-pick up gas at new meter. | | X | Note: Owners subcontractors to provide their layout for any under slab underground work. Morganti will excavate and backfill only. Any piping or conduits will be by the Owners subcontractor. |
| Excavate/bedding/backfill/compact for new interior underground utilities | | | | |
| | | | X | All excavated soils are assumed free of debris or hazardous materials that would require special disposal requirements. |
| Dispose of excess soils as required | | | | |
| Provide and install bollards at new gas meter. Patch existing pavement. | | | X | |
| Provide and install sono tube foundation supports for new exterior stairs. Patch existing pavement | | | X | |
| Utility Connections (electrical) | | X | X | By Others to building we will connect in |

7

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| Utility Connections (water,sanitary,gas) Grease or Oil Separators | | | X | the building. Connect to existing services in the building. N/A none shown |
| **Cast-in Place Concrete (interior):** | | | | This is for work within the existing building only as the plans do not show any exterior work The 3/30/16 permit set drawing show a concrete pipe tunnel foundation structure.  This was deleted as a cost savings measure. |
| Labor, material and equipment for new concrete footings, piers, walls, slabs on grade and slabs on deck. Labor, material and equipment for all new cast-in-place concrete work | | | X | No underpinning included, if required. |
| New slabs on grade. | | | X | Full demolition of all existing sog required. With demolition. |
| Floor Sealer | | | X | Standard concrete floor sealer at new slabs in mechanical spaces. |
| **Masonry:** | | | | |
| New masonry walls, partitions, infill's, patching as shown on the plans | | | X | |
| Re-pointing of the exterior brick masonry facade. | | | X | Note: Wall street elevation masonry cleaning, repairs, re-pointing to continue with GL Capasso.  Morganti may use another contractor for other pointing and masonry work. |
| Beam pocket construction | | | X | General note:  Existing masonry is |

8

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| | | | | assumed structurally sound to accept the work shown on the plans and no repair work, shoring or stabilizing has been included but not limited to construction of, beam pockets, masonry anchors or bond beam. |
| New Bond beams-detail R1, R2 S204. | | | X | |
| Restore or Replace existing copings. | | | X | |
| Clean, parge exterior cement base. | | | X | Cosmetic only no structural work. |
| **Metals: Structural & Miscellaneous** | | | | |
| Labor, material, hoisting and equipment for all new structural steel and miscellaneous metals. | | | X | General Note: Exclude any structural shore/brace required to stabilize building. |
| Labor, material, hoisting and equipment for the new mechanical platform located on the roof. | | | X | |
| Re-Design of RTU platform | | | X | N/A Design to stay as shown on 3/30/16 permit set. |
| Labor, material, hoisting and equipment for metal decking, gratings and checked plate. | | | X | |
| Miscellaneous angles, plates, anchors, lintels, braces for all new structural/misc. work. | | | X | |

9

| Item Description | Construction Manager- Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| Steel railings, stairs, platforms as applicable to the design. | | | X | |
| Anchoring of structural members into existing masonry typical of details S2 S301. | | | X | |
| Exterior fire egress stair structures | | | X | Both Fire escapes to remain and be repaired in place. Existing metal roofing to be re-used/repaired. |
| Drawing A302, outrigger pipe racks, performance lighting cable racks, supports, ladder batten, index rail and kick plate | | X | | Note: By Owners Theatrical contractors and are not included. |
| **Division 6 Rough Carpentry** | | | | |
| Labor, equipment and materials to perform all interior/exterior framing (wood or metal) for partitions, ceilings, soffits, platforms and opera boxes | | | X | |
| Labor, equipment, materials for all plywood sheathing or subflooring. | | | X | |
| In-wall blocking for wall mounted equipment. | | | X | Note: Owner will need to provide locations/layout of any in-wall blocking for his equipment. |
| Framing for details such as R1 and R2 S203. | | | X | |
| Wood stair framing | | | X | The existing main stairs at the entry, one |

Wall Street Theatre Contract Exhibit-B, June 15, 2016

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| Raise existing wood rafters (see note on A300) | | | X | side has been demolished. The other remains and is poor condition and does not meet code for tread/riser dimensions. We will Rebuild stairs to match existing one that remains. Note: Insufficient information and we Have an allowance included for this item pending engineers details. See allowance for cost and extent of |
| Wood roof deck repairs: | | | X | potential repairs to the existing wood roof deck. |

## Division 6 Finish Carpentry and Casework

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| **General:** | | | | |
| Labor, materials and equipment for all new standing and running trim, moldings, wood base, wall caps. | | | X | As specifically detailed on the 3/30/16 permit set. |
| Interior brass guard and hand railings. | | | X | |
| **Basement:** | | | | |
| Dressing Rm B07, B09, B13, B14 counters (labor/material-L&M) | | | X | |
| Managers B03 counter (L&M) | | | X | |
| Shower Rm B08 and Toilet Rm B10 counter (L&M) | | | X | |

11

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| Green Rm B02 counters and cabinets (L&M) | | | X | |
| **Ground Level:** Toilet Rm 108 and Toilet Rm 112 counter (L&M) | | | X | |
| Column base trim at detail 2G A500. | | | X | |
| Labor only to install items: | | | | Owner to provide complete fabricated/finished unit for installation only by Morganti trade contractor. |
| Stage Bar 110 | | X | X | |
| Display Cases | | X | X | " |
| Serving Bar 106 | | X | X | " |
| Multifunction 107 | | X | X | " |
| Ticket 103 | | X | X | " |
| **Mezzanine Level:** Toilet Rm 204 and Toilet Rm 205 counter (L&M) | | | X | |
| Control Rm 207 counter (L&M) | | | X | |
| Column base trim at detail 2G A500. | | | X | |
| **Balcony Level:** Serving Bar 303 | | X | X | Owner to provide complete fabricated/finished unit for installation |

12

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| | | | | only by Morganti trade contractor. |
| Toilet Rm 304 counter (L&M) | | | X | |
| Closet at VIP 302 shelving (L&M) | | | X | No specific details allow for (1) one full length shelf and coat rod. |
| Trim Wood: | | | X | Limit to 1000 l.f. standard shapes no custom molding profiles. |
| **Division 7 Thermal & Moisture Protection** | | | | |
| Labor, materials and equipment to install a new roof system. | | | X | See demolition section for roof demo and carpentry section for allowance to replace any damaged wood roof decking. We have not included any new blocking or nailers for the new roof system and assume the existing will be adequate for the new roofing work. |
| Existing wood blocking and nailers: Gutters, downspouts, scuppers are included with the roof system as shown on the drawings. | | | X | |
| Waterproofing of foundation systems Insulation as noted on the plans for roofing and partitions. | | | X | We have not included any waterproofing systems for the new foundation work as none is shown on the plans. |

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| **Division 8 Windows and Doors** | | | | |
| Wall Street Elevation: | | | X | Have included cost for this elevation. Restoration of front facade important. The historic renovation does not have to use period correct material, match what is existing. |
| Labor, materials and equipment for all new doors, frames and hardware. | | | X | |
| New doors, frames, hardware: | | | X | General note: Although a door schedule has been provided on the plans a specification section for the doors, frames or hardware requirements has not. We have based our proposal on standard commercial builders grade materials. |
| Folding panel at Stage Bar 110 | | | X | Note: there are no specific details to this item and we have included an allowance for the furnishing and installation. See elev. 6/A400. |
| Floor access door at Water Service/ Boiler access. | | | X | Note: there are no specific details to this item and we have included an allowance for the furnishing and installation. |
| (L&M) to replace (2) 5'-4x3'-0 Wood double hung windows. | | | X | Note: replacements windows will be "commercial grade" and not a direct match or historical reproduction. |

14

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| Interior windows, borrowed lights at VIP Rm 302 and Waiting 201 | | | X | Note: there are no specific details or specifications to this item and we have included standard quality aluminum framed windows with clear tempered glass in our estimate. Tinting, colored frames, fire or sound rated glass is not included. All hardware for interior/exterior doors will be standard locking. We have not included any provisions for key cards, electronic locking, monitoring or other |
| General note: | | | | special access control systems. |
| **Division 9 Interior Finishes** | | | | |
| Plaster, new, repairs or restoration | | X | | We do not include any plaster work or restoration. |
| Drywall, partitions and ceilings (L&M) | | | X | See division 6 for framing of same. Level 4 finish to all drywall. Drywall finishes in mechanical spaces to be level 3. Bathrooms and wet areas to have moisture resistant drywall. |
| Tile finishes (L&M) | | | X | Ceramic at Bathrooms only: Quarry or Faux Marble tile used where shown on color renderings which will become part of the contract documents. (No Terrazzo) |

15

| Item Description | Construction Manager- Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| Acoustical ceilings (L&M) | | | X | |
| Wood Floor (Stage 119) | | | X | We do not include a hardwood flooring Stage floor will be a painted plywood product on sleepers over the concrete slab on deck. |
| Resilient Flooring and Base (L&M) | | | X | Limited to standard commercial grade VCT and LVT flooring. |
| Carpeting | | | X | Limited to standard commercial grade carpeting, one color (manufactures standard not premium) no patterns. |
| Stained and Sealed Concrete Floors: | | | X | One color no patterns |
| Sealed Concrete Floors: | | | X | Clear |
| Coco Mats: | | | X | One color |
| Terrazzo Flooring: | | | | Not included. See tile will use a faux marble product have allowed $25 sf for furnish and install price. |
| Quarry Tile Flooring: | | | X | As noted on color plans |
| Wall covering: | | | | N/A not included |
| Special Wall Surfacing: Acoustical wall panels | | | X | |
| Painting: General interior painting (L&M) | | | X | All interior walls, drywall ceilings, doors, frames, wainscot panels, trim. No painting of exposed structure, structural steel or any mechanical or electrical components. Interior metal railings, hand rails, guard rails assumed pre-finished. |

16

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| Art, murals and stenciling | | X | | All casework and counters assumed pre-finished. By Owner |
| Painting: General exterior painting | | X | | Where required at Wall Street Elevation, doors and door frames. |
| **Division 10 Specialties** | | | | |
| Folding Panel at Bar 110 (Allowance) Furnish and Install | | | X | Allowance of $3,600.00 no specifications or details. |
| Interior Signage: | | | X | Allowance of $5,000.00 for materials, installation with carpentry/drywall |
| Exterior Signage: | | X | | |
| Toilets Accessories: (F&I) | | | X | |
| Toilet Partitions: (F&I) | | | X | |
| **Division 11 Equipment** | | | | |
| E-401 Bar Equipment Schedule | | X | X | By Owner (F&I) rough-ins for water/drains will be by Morganti MEP trades, Owners contractor to make connections. |
| Food Service Equipment | | X | X | By Owner (F&I) rough-ins for water/drains will be by Morganti MEP trades, Owners contractor to make connections. |

17

Wall Street Theatre Contract Exhibit-B, June 15, 2016

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| Refrigerators/Coolers | | X | X | By Owner (F&I) rough-ins for water/drains will be by Morganti MEP trades, Owners contractor to make connections. |
| Appliances | | X | X | By Owner (F&I) rough-ins for water/drains will be by Morganti MEP trades, Owners contractor to make connections. |
| Ticket Booth Pass-Through (F&I) | | | X | |
| Theater and Stage Equipment | | X | | By Owner (F&I) furnished and installed Owners contractor to make all MEP connections. |
| Rigging Systems and Controls | | X | | By Owner |
| **Division 12 Furnishings** | | | | |
| Stage Curtains, Balcony Curtains | | X | | By Owner |
| Audience Seating | | | X | Owner to confirm quantity we currently have 317 fixed, 340 portable chairs and 8 stool height. |
| Roller Shades/drapes window treatment | | X | | By Owner |
| **Division 14 Conveying** | | | | |

18

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| **Systems** | | | | |
| Machine Room based Elevator | | | X | LULA type |
| **Division 15 Fire Protection** | | | | |
| Wet style fire sprinkler system: | | | X | Taken from water supply inside of building, no fire pump, no flow testing. |
| **Division 15 Plumbing/HVAC** | | | | |
| Plumbing system per design intent: | | | X | PVC to be used underground |
| HVAC system per design intent: | | | X | |
| **Division 16 Electrical** | | | | |
| Drawing E-100 Site Utilities | | X | | By Owner not included. Pending Owner issue with Builder who cut off Service. |
| Electrical system per design intent: | | | X | The Electrical System provided by the Morganti Group, Inc. will be limited to: |
| | | | X | General interior lighting: |
| | | | X | General interior power and switching: |
| | | | X | General Main Electrical service and distribution system: |
| | | | X | Power for mechanical equipment and |

19

| Item Description | Construction Manager-Morganti | By Owner | By Morganti Trade Bidders | Comments / Qualifications |
|---|---|---|---|---|
| | | | X | elevator.<br>Fire Alarm System |
| Electrical by Owner: | | X<br>X<br>X<br>X<br>X<br>X<br>X | | Theatrical and stage lighting<br>Lighting controls/dimming.<br>Control systems general, lighting, sound, stage.<br>Lightning Protection<br>Sound system, amplification.<br>Telecommunication systems<br>Security and Access control. |
| Add in HVAC Service contract and what are warranties. | | | X | Standard offerings from equipment manufacturers as nothing was specified in the 3/30/16 permit set. |

Note: The intent of this form is to describe the scope of the work the Morganti Group, Inc. has figured in their proposal since the plans are not 100% completed and issued as a Permit Set and do not define all work and there have not been any specifications issued.

20



A SOLID FOUNDATION

*Construction Managers  •  General Contractors  •  Design Builders*

Exhibit C
The Wall Street Theater
71 Wall Street, Norwalk, CT                                            June 15, 2016

# EXHIBIT C
## Assumptions and Clarifications Made in Preparing the Stipulated Sum Contract

Mr. Frank Farricker
The Wall Street Theater Company, LLC
6 West Putnam Avenue
Greenwich, CT 06830

Re:  The Wall Street Theater
71 Wall Street
Norwalk, CT 06850

Dear Mr. Farricker:

Please see our assumptions and clarifications to our Stipulated Sum Contract as listed below.

1. The documents as listed in Exhibit A are from the March 30, 2016 Permit Set and are not fully developed. They consist of plans only and no formal specifications. The Owner should be aware that the limitations of the documents have required us to include with our Stipulated Sum proposal Trade Scopes of Work to delineate our interpretation of the scope of the work along with the following clarifications. Please see Exhibit B Scope of Work Understanding, Construction Manager Task Matrix attached.

2.. We have included in our Stipulated Sum Proposal a 100% Performance and Payment Bond along with our standard policy General Liability Insurance in accordance with the Patriot National Bank Construction Loan Agreement dated April 10, 2015. We do not include a Builders Risk Policy. We do not include any liquidated damages. The formal bonds and insurance will be provided after signing of the contract.

3. The Morganti Group, Inc. shall have no liability for any defects or deficiencies for any work previously performed on this project by the Owner or its previous contractor GTL Construction.

4. The Stipulated Sum Proposal does not include any of the following work:
a. FF&E (Furniture, Fixtures or Equipment)  except the audience seating.
b. Artwork, Murals, Stenciling, New, Restoration or Repair.

Page **1** of **8**

**.⸫MORGANTI**

A SOLID FOUNDATION

*Construction Managers • General Contractors • Design Builders*

Exhibit C
The Wall Street Theater
71 Wall Street, Norwalk, CT

June 15, 2016

c. Casework, specifically Stage Bar 110, Multi Function 107, Serving Bar 106, Display Cases, Serving Bar 303 Owner to provide contractor will unload, distribute and install. All this casework is to be prefinished.

d. Plaster, new, restoration or repair.

e. Exterior Signage.

f. Food Service Equipment, Refrigeration, Coolers, Appliances and associated installations.

g. Theater and Stage Equipment, Rigging equipment, Curtains, Lighting, Controls, Sound System and associated supports and installations.

h. Balcony Curtains or Rigging, supports and installation.

i. Window Treatments, Blinds, Shades or Draperies.

j. Audio Visual, Tele/Data, Security Access or Amplifier Systems and associated supports or installation.

5. The Stipulated Sum Proposal does not include any rock excavation in any form.

6. The Stipulated Sum Proposal does not include any costs if design clarifications or changes not incorporated into the bid documents or addenda create a condition which has a financial consequence.

7. The Stipulated Sum Proposal includes the following allowances and contingencies. Please be advised that allowance items are all inclusive of labor, materials, shipping, unloading, hoisting, overhead and profit, bonds and insurance.

| | |
|---|---|
| a. CMAR Construction Contingency: | $207,208.00 |
| b. Allowance: Scaffolding/Lifts: | $ 61,750.00 |
| c. Allowance: Testing/Inspection: | $ 10,000.00 |
| d. Allowance: Site Safety, Fence, Signage: | $  5,000.00 |
| e. Allowance: Misc.City Requirements | $ 15,000.00 |
| f. Allowance: Temporary Heating: | $ 15,000.00 |
| g. Allowance: Temporary Power: | $  5,000.00 |
| h. Allowance: Dumpsters: | $ 15,000.00 |
| i. Allowance: Temporary Roofing: | $  7,500.00 |
| j. Allowance: Rodent/Pest Control: | $  2,500.00 |
| k. Allowance: Raise Existing Rafters: | $  7,500.00 |
| l. Allowance: 500 s.f. Roof Deck Repairs: | $ 10,000.00 |
| m. Allowance: Scope Coordination with Owners Subs/Consultants | $ 75,000.00 |

Page **2** of **8**



A SOLID FOUNDATION

*Construction Managers • General Contractors • Design Builders*

Exhibit C
The Wall Street Theater
71 Wall Street, Norwalk, CT                                      June 15, 2016
8. The Stipulated Sum Proposal does not include any unit prices or alternates at this time.

9. The Stipulated Sum Proposal is based on the Owner providing suitable office space adjacent to the project site at no cost to the Morganti Group, Inc. for its Field Operations Staff. Heating, cooling, electrical and sanitary facility costs for this space to be borne by the Owner and are not included in our proposal.

10. Abatement of Hazardous materials is limited to the allowance specified and is based on the removal of approximately 100 lineal feet of pipe insulation.

11. We do not include any landscaping, plantings or lawns in our proposal as the documents do not show any work.

12. On drawing S100 Foundation Plan dated 11/30/2015 Issue for Bid there is a cast-in-place concrete service tunnel shown from the Water Service/Boiler Room B14 to the Under Stage Storage area. This utility tunnel will not be constructed and utility lines will be direct bury as a result of Value Engineering.

13. The existing Balcony will be re-framed to provide a new tiered platform as shown on detail 1 on A502. We trust the Designer has taken into consideration the additional loading on the existing structure and we have not included any additional structural support unless specifically noted.

14. Our proposal is based on the existing structure being structurally sound and details such as but not limited to R1/S-204, S1/S-301 and S2/S-301 that require attachment into the existing structure can be performed without remedial structural work outside of the detail area, shoring or bracing systems.

15. We have included approximately 500 square feet for the potential repairs of the existing roof deck. Existing wood roof blocking will be re-used as there are no details showing any new blocking requirements.

16. On drawing A300 of the 3/30/2016 Permit Set at the VIP room level it appears to show a new concrete slab on deck and possible supporting structure. There is an existing slab there now. The structural drawings do not show any work of this kind and we have not included any work of this type in this area. Drawing A-104 shows new roof over concrete planks, the structural drawings, sections do not show this item and we do not include and will roof over the existing structure.

Page **3** of **8**



A SOLID FOUNDATION

*Construction Managers • General Contractors • Design Builders*

Exhibit C
The Wall Street Theater
71 Wall Street, Norwalk, CT                                    June 15, 2016
17. The existing wood framed structure whether interior floor, wall, ceiling or roof framing
shows signs of possible rot or water damage. In addition the plans show limited framing work in
the floors at the mezzanine, balcony and or multi-function levels. We have based our proposal
on the structure being sound and adequate to support the imposed loads and do not include any
remedial work to the existing structure unless specifically noted.

18. We make no guarantees that the work will be completed by September 30, 2016 to obtain a
certificate of occupancy due to the lack of completed documents, permit delays, coordination
issues or other plans, specifications, reports not listed in the 3-30-16 permit set. Our work plan
will be devoted to aspects required to obtain a certificate of occupancy. Items of construction
not required for a CO such as, painting, flooring, or as approved by the Norwalk Building
Inspector will be done after the CO is issued for a substantial completion anticipated by
December 31, 2016.

19. The project is noted as "LEED Gold". We will work with the Owners LEED Consultant,
Steven Winter Associates to obtain the designated LEED requirements relevant to our
construction activities. LEED was not anticipated in our Stipulated Sum and costs for,
administrative management, waste management, labor, material and equipment for the (IAQ)
Indoor Air Quality program, bike racks, white EPDM roof, power washing exterior sidewalks,
Commissioning coordination, Certified Wood, Recycled content attributed to (GTL) on this list,
now The Morganti Group Inc. under the LEED-NC Version 3.0 Registered Product Checklist
dated 2/10/2016 will be deducted from our item "M" Allowance line item, waste management
requirements will be coordinated through our item "H" Allowance line item.

We trust other LEED design items attributed to DD (Design Development, LLC), OLA
Consulting Engineers, Owner, SWA (Steven Winter Associates) have been incorporated into the
documents and management or work attributed to these categories is by others and not The
Morganti Group, Inc.

20. Currently the Owner is finalizing full funding for this project. Although the contract will be
issued for the total Stipulated Sum value of $ 5,682,632.00 the Morganti Group will, to limit
exposure contract with a limited number of key subcontractors in order to start the work. A
demolition permit is in place. A Letter of Agreement dated May 12, 2016 was entered into to
allow this work to proceed.
We also understand that a lien of approximately $250,000.00 has been placed on the project by
the previous contractor. The Owner will provide confirmation to The Morganti Group, Inc. that
this lien has been removed and will not affect funding or delay payments to the Morganti Group.

21. The Owner will have a number of contractors under his control performing specific
Theatrical work as noted herein. The Morganti Group, Inc. will coordinate with the Owner's
Page 4 of 8



A SOLID FOUNDATION

*Construction Managers • General Contractors • Design Builders*

Exhibit C
The Wall Street Theater
71 Wall Street, Norwalk, CT                                          June 15, 2016
contractors and our schedule. We will not assume any responsibility for the performance of the
Owners subcontractors or the accuracy of their bids.

22. On drawing G-000, Cover Sheet note 20 states that "All fire ratings of individual
components and/or assemblies shall be in strict accordance with the latest edition of the
Underwriters Laboratories Fire Resistance Directory, Volumes 1 & 2. The Morganti Group has
based our price proposal and the Architect designing this requirement into the plans and details
and take no responsibility for determining the proper fire rating of any components or systems.

23.   On drawing G-000, Cover Sheet note 23 states that "All wood shall be fire retardant". We
have included fire retardant lumber for all new work. The existing wood structure that remains
is as-is and we have not included any special fire retardant treatment of the existing conditions.

24. On drawing A-111 it calls for tin ceilings in the Lobby area. The demolition drawings note
that the existing tin ceiling was to be salvaged and restored. We have included labor to re-install
and have based on the owner providing a complete restored system including all tin ceiling
panels, suspension system, trim and hardware.

25. The Owner (The Wall Street Theater Company, Inc.) will pay for electrical consumption use
for all construction related activities. If metered the Morganti Group, Inc. will pay for water
consumption used for construction activities.

26. On drawing A-100, Permit set, dated 3/30/16 under notes is a requirement for twelve inches
(12") of structural fill to be installed under new slabs on grade. We take exception to this
requirement and have reviewed with the structural engineer Szewczak Associates. The engineer
said the structural fill would not be required providing the existing material tested at 95%
compaction density. We have had the tests performed and they meet or exceed the 95%
requirements. The existing sub-grade will be leveled, dressed and compacted to receive the new
slabs on grade.

27. We do not include any Watchmen or Security services. The existing building will be locked
up at the end of each work day to prevent unauthorized access.

28. The Owner will pay for all Building and trade permits required for this project. The
Morganti Group, Inc. will assist in the permit process.

29. Legal surveys, A-2 surveys are not included. We will provide surveying and layout for
construction purposes only.

Page **5** of **8**

# ▪▪MORGANTI

A SOLID FOUNDATION

*Construction Managers • General Contractors • Design Builders*

Exhibit C
The Wall Street Theater
71 Wall Street, Norwalk, CT                                      June 15, 2016
30. Winter protection and snow removal is not included. We do include an allowance for
temporary heating operations between October and December when final finishes will be done.

32. The two (2) existing fire escapes will remain and be repaired in place. We have included an
allowance of $40,000.00 for this work as no specific repair details have not been provided. The
engineer of record will need to review the existing condition of the fire escapes and provide
design criteria for the repairs. The existing metal roof will be repaired only and not new.

33. Please refer to our Exhibit B Construction Task Matrix regarding selective demolition. The
majority of demolition work was previously performed by others prior to Morganti starting on
this project. The Morganti Group, Inc. scope of work consists of items specifically noted in our
matrix.

34. Please refer to our Exhibit B Construction Task Matrix regarding site and earthwork scope.
We exclude unsuitable soils if encountered. All excavations are based on adequate soil bearing
capacities achieved at the depths of excavations noted on the plans. Excavations and structural
fill beyond these depths to reach suitable bearing are not included.

35. The Owners theatrical subcontractors who require any underground utilities will provide
layout for their work. MGI will excavate, bed and backfill all of these excavations. Any
conduits or piping required by these subcontractors will be provided and installed by them.

36. Utility connections for sewer, water, fire protection are all within the building to existing
services. Utility connections for gas will be at the meter provided by the Gas Company. Utility
connections for the electrical, catv, telephone will be a maximum five feet (5') outside the
building.

37. We do not include any grease or oil separators.

38. We do not include any underpinning of the existing foundations.

39. We have included costs for renovation of the Wall Street elevation of the existing Building.
At the Wall Street Theater Company request we will contract with G.L. Capasso for completion
of Masonry restoration previously started for their previous contract sum of $117,792.00. G.L.
Capasso expects a payment of $53,002.80 to be provided at their contract signing for work
performed to date.

40. On plans A-200, 201 and 202 Building Elevations, permit set dated 3/30/2016, note 28 calls
for cleaning and repair to the cement base of the foundation. The key is not applied to the
foundation base on any elevations, nor is there any specific details as to what needs to be

Page **6** of **8**

**.∎MORGANTI**

A SOLID FOUNDATION

*Construction Managers  •  General Contractors  •  Design Builders*

Exhibit C
The Wall Street Theater
71 Wall Street, Norwalk, CT                                                   June 15, 2016
repaired but we have included a sum of $ 9,100.00 to clean and patch this base, no structural
repairs are included.

41. Drawing A-302, permit set dated 3/30/2016 shows some miscellaneous metal pipe racks,
performance lighting cable racks, supports, ladder battens, index rails, kick plates which are part
of the theatrical equipment and rigging systems and are not included.

42. To reconfirm we do not include any work, including but not limited to (labor, materials,
electrical, miscellaneous metals, equipment, testing, programming etc.) for complete and
functional systems in accordance with the Theater Projects GA, TE, TL, TS, E310-E334, series
drawings, Jaffee Holden AV series drawings, Trimark Food Service documents or any other
plans, consultants documents, revisions, specifications, reports or documents not specifically
referenced on our April 28, 2016 Exhibit I Project Document List, qualifications and task matrix.
The Owner will have separate contracts with Theatrical, Food Service, AV and other contractors
to perform this work.  We recommend that the Owners subcontractors review their electrical
requirements with Gunzy Electric, Inc. and have Gunzy Electric price and directly perform the
work required with them to eliminate having another electrical firm on the project which will be
difficult with the permitting and coordination process.  This also applies to miscellaneous metals
required by the Owners subcontractors.

43. The existing main stairs to the Balcony level are to remain although they do not meet code
requirements.  One stair was demolished by the former contractor and will be rebuilt to match
the stair remaining which will also be restored.

44. On drawing A-300 there is a note calling for the raising of some existing wood rafters.
There are no details as to the extent of this work noted on the permit set documents and we have
included an allowance to perform this work.

45. Finish carpentry, trim, millwork and casework will be provided and installed as detailed on
the architectural drawings included in the 3/30/16 permit set.

46. We do not include any waterproofing of existing or new foundations as none is shown or
specified in the 3/30/16 permit set.

47. Items such as doors, frames, hardware, toilet accessories, toilet stalls, signage, fire
extinguishers/cabinets, ticket booth pass-thru, access doors, acoustical wall panels will be
commercial quality, furnished and installed.  There are no schedules or specifications provided
for these items and we will review our selections with the architect and owner for approval
provided any changes in scope, finish, specification fall within our estimated values.

Page 7 of **8**



**MORGANTI**

A SOLID FOUNDATION

*Construction Managers • General Contractors • Design Builders*

Exhibit C
The Wall Street Theater
71 Wall Street, Norwalk, CT                                    June 15, 2016
48. The stage floor will be painted plywood on sleepers and not hardwood or other finish.

49. There is no finish schedule provided in the 3/30/16 permit set. We have based floor finishes on the items listed in our estimate.

50. We do include rough-ins for Owner supplied equipment as shown on the permit set documents. Final connections will be by the Owners subcontractors providing and installing the specific equipment.

51. We have included 317 fixed, 340 portable and 8 stools for audience seating and based on the costs contained in our estimate to furnish and install.

52. The new LULA (limited use, limited access) elevator is included in our stipulated sum. Any permits, City or State approvals required for this elevator are by the Owner or others and not included.

53. The roof system will have a 30 year warranty. All other equipment warranties will be based on the manufacturers standard offering as no specific information regarding warranties was provided with the 3/30/16 permit bid documents.

54. The Owner will coordinate electrical, catv and telephone service to the building with the City of Norwalk, Utility Company and others required due to their services being cut-off by the construction project behind the existing theater building. We do not include any costs for this work.

55. Underground plumbing piping will be pvc in lieu of pipe specified on the 3/30/16 permit set.

Sincerely,

Edward Barrett
Director of Preconstruction
The Morganti Group, Inc.

Page **8** of **8**



A SOLID FOUNDATION

*Construction Managers • General Contractors • Design Builders*

Exhibit D, Contract Rider
The Wall Street Theater
71 Wall Street, Norwalk, CT

July 14, 2016

# EXHIBIT D
### Rider to Contract between the Wall Street Theater Company Inc. and The Morganti Group, Inc.

Re: The Wall Street Theater
71 Wall Street
Norwalk, CT 06850

Dear Mr. Farricker:

The following, Exhibit D will become part of the A101-2007 and A201-2007 Standard Form of Agreement dated June 29, 2016 between Owner and Contractor where the basis of payment is a Stipulated Sum.

To be included as follows:

Address of Legal entity is Wall Street Theater 162 Bridgeport Avenue, Milford CT 06460

Owners Representative info:
Frank Farricker
30 Wildwood Drive
Greenwich CT 06830

Add to A201, §1.6.3 The representations and warranties contained in this Section 1.6 shall survive the complete performance of the Work or earlier termination of this Contract.

Add to A201, § 3.1.4 The Contractor warrants that its financial condition is sound and that the Contractor shall be capable of obtaining any bonds required by the Contract Documents. Contractor shall keep accounts, books, and other records of all its billable charges incurred in performing its services hereunder, and shall itemize and submit its billings in such a manner as the Owner may reasonably direct, in any event no less often than monthly. If no such direction is given, the Contractor shall maintain books and accounts of chargeable costs in accordance with generally accepted accounting principles consistently applied, and in such a manner as to permit verification of all entries made. For three (3) years from final payment under this Agreement, Contractor shall preserve all such books and records, and shall upon three (3) days' written notice make such records available to the Owner for purpose of verifying the costs chargeable under the Agreement. The Owner shall have the right to audit the account books and other records of Contractor related to the Work at any time during the period of this Agreement and for three (3)

Page **1** of **2**



A SOLID FOUNDATION

*Construction Managers  •  General Contractors  •  Design Builders*

Exhibit D, Contract Rider
The Wall Street Theater
71 Wall Street, Norwalk, CT

July 14, 2016

years after completion of the Work. Contractor shall refund to the Owner any charges determined by the audit to be inconsistent with this Agreement. Upon request by the Owner, the Contractor shall make available to the Owner such audited and unaudited financial statements of the Contractor as the Owner may reasonably request.  The Contractor shall promptly advise the Owner of any occurrence, event, fact, or other matter that has had, will have, or might reasonably be predicted to have a material adverse effect upon the financial condition of the Contractor. Provided that:

1- Subcontractors contract sums are lump Sums, and we will provide them with copies:  No audit.
2- Subcontractors Change Orders approved by Owner: Auditable
3- Change Orders, due to design or scope change,  requested by Morganti and approved by Owner: Auditable
4- Extension of Time and corresponding Morganti GC and Overheads: Auditable.
5- Morganti's General Conditions, including Insurance and Bonding costs: Not Auditable.

Add to A201 §11.4.4  All insurance coverage procured by the Contractor shall be provided by insurance companies having policyholder ratings no lower than "A" and financial ratings not lower than "XII" in the Best's Insurance Guide, latest edition in effect as of the date of the Contract, and subsequently in effect at the time of renewal of any policies required by the Contract Documents.

Add to A201 §11.4.5  If the Owner is damaged by the failure of the Contractor to purchase or maintain insurance required under Article 11, then the Contractor shall bear all reasonable costs (including attorneys' fees and court and settlement expenses) properly attributable thereto.

Add to TASK MATRIX- General Exterior painting should be covered in the Facade work. By Morganti Trade Bidders

**Owner** (Signature)

SUZANNE CAHILL   PRESIDENT

(Printed name and title)

7/14/16

Date

**Contractor** (Signature)

President

(Printed name and title)

7/8/16

Date

Page **2** of 2

# EXHIBIT B

INSTR # 2017005051
VOL 8518 PG 296
RECORDED 04/28/2017 08:42:37 AM
RICHARD A. MCQUAID
TOWN CLERK  NORWALK CT

Please Return to:
Louis R. Pepe
McElroy, Deutsch, Mulvaney & Carpenter, LLP
One State Street, 14ᵗʰ Floor
Harford, CT 06103

## CERTIFICATE OF MECHANIC'S LIEN

THIS IS TO CERTIFY THAT **THE MORGANTI GROUP, INC.,** a Connecticut corporation having a business address at 100 Mill Plain Road, 4ᵗʰ Floor, Danbury, Connecticut 06811, in accordance with a certain contract for furnishing labor, materials, and services between it and **WALL STREET THEATER COMPANY, INC.,** with a business address of 71 Wall Street, Norwalk, Connecticut 06850 by virtue of an agreement with or by consent of the owner of the premises described herein and known as 71 Wall Street in the City of Norwalk, County of Fairfield, and State of Connecticut, or of some person having authority from or rightfully acting for the owner, has a Lien under the statues in such cases made and provided on the premises and the improvements thereon (the "Premises"), in an amount, which is justly due, of **ONE MILLION FIVE HUNDRED TWENTY TWO THOUSAND SIX HUNDRED AND EIGHTY-NINE AND 26 /100 DOLLARS ($1,522,689.26)** as nearly as the same can be ascertained, plus interest, costs and attorneys' fees.

This Lien is filed against **WALL STREET THEATER COMPANY, INC,** the fee owner of record of the Premises, **WALL STREET MASTER LANDLORD LLC,** the leasehold owner of the Premises, and **WALL STREET MASTER TENANT LLC,** the sublease owner of the Premises.

THIS LIEN is for labor, materials and services furnished in connection with construction, additions and alterations work on the Premises. The furnishing of the labor, materials and services commenced on the 18th day of May, 2016 and continued to within 90 days of the filing of this lien.

THE PREMISES and improvements thereon the property situated at 71 Wall Street in the City of Norwalk, County of Fairfield, and State of Connecticut, and are more fully identified in **Schedule A** attached hereto.

THIS CERTIFICATE is made and filed within ninety (90) days from the time of ceasing to render services and furnish materials as aforesaid.

RMF/13626/140/1433115v1
04/14/17-HRT/RMF

IN WITNESS WHEREOF, the undersigned, _Nabil M. Takla_ the _President & CEO_ of **THE MORGANTI GROUP, INC.** duly authorized, does solemnly and formally declare and make oath, that the facts set forth herein are true and has set his hand this 27 day of April, 2017.

Witness:

Print: Ed BARRETT

Print: Maria Woods

**LIENOR: THE MORGANTI GROUP, INC.**

By _Nabil M. Takla_

Print: Nabil M. Takla

Its President & CEO, Duly Authorized

STATE OF CONNECTICUT)
                     ) ss:  Danbury
COUNTY OF FAIRFIELD  )                          April 27th, 2017

Personally appeared __Nabil M. Takla__ signer of the foregoing Certificate, and made solemn oath to the truth of this instrument and that the amount above-named therein is justly due to **THE MORGANTI GROUP, INC.** as nearly as the same can be ascertained.

Print: Judith G. Annunziata

Notary Public
My Commission Expires:

**JUDITH E. ANNUNZIATA**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES OCT. 31, 2021

RMF/13626/140/1433115v1
04/14/17-HRT/RMF

## SCHEDULE A

### Property Description
### 71 Wall Street, Norwalk, Connecticut

**First Tract:**

All that certain parcel of land, together with the buildings and other improvements thereon, situated in the City of Norwalk, County of Fairfield and State of Connecticut, shown on a certain map entitled, "Map of Property Prepared for Nutmeg Theatre Circuit Norwalk Connecticut Scale: 1 in. = 10 ft, April 8, 1971" by Leonard Surveyors Norwalk, Connecticut Certified 'Substantially Correct' by Leo Leonard," which map is on file in the Norwalk Town Clerk's Office numbered 7490. Said premises are more particularly bounded and described as follows:

| | |
|---|---|
| NORTHWESTERLY: | 65 feet by Wall Street; |
| NORTHEASTERLY: | 150.50 feet by land now or formerly of the Fairfield County Savings Bank and Nutmeg Theatre Circuit, and by land now or formerly of the Norwalk Parking Authority; each in part; |
| SOUTHEASTERLY: | 22.88 feet by land now or formerly of the Norwalk Parking Authority; |
| NORTHEASTERLY AGAIN: | 2.00 feet by land now or formerly of the Norwalk Parking Authority; |
| SOUTHEASTERLY AGAIN: | 36.31 feet by land now or formerly of the Norwalk Parking Authority; |
| SOUTHWESTERLY: | 10.10 feet by a four foot easement; |
| SOUTHEASTERLY AGAIN: | 7.60 feet by a four foot easement and by land now or formerly of Paul B. and Mildred Marsvnick |
| SOUTHWESTERLY AGAIN: | 140.71 feet by land now or formerly of the Fairfield County National Bank. |

Together with a right of ingress and egress set forth in Volume 177, Page 190 to Isaacs Street Extension over a strip of land about 4 feet in width running from the southwest corner of the above-described premises to Isaacs Street and bounded:

| | |
|---|---|
| NORTHERLY: | by land now or formerly of Nutmeg Theatre Circuit; |
| EASTERLY: | by land now or formerly of the Norwalk Parking Authority; |
| SOUTHERLY: | by Isaacs Street Extension; and |
| WESTERLY: | by land now or formerly of Paul B. and Mildred Maravnick; |

Together also with rights reserved in common with others over land now or formerly of James C. Cunningham as contained in a deed from Samuel Kantor to James C. Cunningham dated May 4, 1926 and recorded on September 4, 1926 in Volume 201, Page 11 of the Norwalk Land Records.

**Second Tract:**

An undivided one-half interest recited by instrument Volume 143, Page 634 in and to a certain tract of land situated in the City of Norwalk, County of Fairfield and State of Connecticut, and bound and described as follows:

| | |
|---|---|
| NORTHERLY: | 14.77 feet by Wall Street; |
| EASTERLY: | 100.00 feet by land now or formerly of Fairfield County Savings Bank; |
| SOUTHERLY: | 14.80 feet by land now or formerly of the Norwalk Parking Authority; and |
| WESTERLY: | 100.00 feet by land now or formerly of Nutmeg Theatre Circuit. |

STATE OF CONNECTICUT}

                  } SS: HARTFORD,      MAY 10, 2017

COUNTY OF HARTFORD   }

**RE: The Morganti Group, Inc., vs. Wall Street Theater Company, Inc.**

Then and by virtue hereof, on the 10th day of May, 2017, I made due and legal service on the within named, **WALL STREET THEATER COMPANY, INC.,** by leaving a true and attested certified copy of the original **Certificate Of Mechanic's Lien and Schedule A,** with and in the hands of Eric Henzy, Esq., who is duly authorized to accept service for Reid and Riege, P.C., Agent For Service for the within named at, One Financial Plaza, in the City of Hartford.

Also on the 10th day of May, 2017, I made due and legal service on the within named, **WALL STREET MASTER LANDLORD LLC,** by leaving a true and attested certified copy of the original **Certificate Of Mechanic's Lien and Schedule A,** with and in the hands of Eric Henzy, Esq., who is duly authorized to accept service for Reid and Riege, P.C., Agent For Service for the within named at, One Financial Plaza, in the City of Hartford.

Also on the 10th day of May, 2017, I made due and legal service on the within named, **WALL STREET MASTER TENANT LLC,** by leaving a true and attested certified copy of the original **Certificate Of Mechanic's Lien and Schedule A,** with and in the hands of Eric Henzy, Esq., who is duly authorized to accept service for Reid and Riege, P.C., Agent For Service for the within named at, One Financial Plaza, in the City of Hartford.

The within is a certified copy of the original **Certificate Of Mechanic's Lien and Schedule A,** with my doings hereon endorsed.

FEES:

ATTEST:

| | | |
|---|---|---|
| Pages | $ 9.00 | |
| Endorsements | 1.60 | JOSEPH MUSUMECI |
| Service | 80.00 | STATE MARSHAL |
| Travel | 5.00 | HARTFORD COUNTY |
| | | |
| Total | $ 95.60 | |

# EXHIBIT C

INSTR # 2017005775
VOL  8528  PG  58
RECORDED 05/17/2017  09:07:53 AM
RICHARD A. MCQUAID
TOWN CLERK  NORWALK CT

Please Return to:
Louis R. Pepe
McElroy, Deutsch, Mulvaney & Carpenter, LLP
One State Street, 14th Floor
Harford, CT 06103

## AMENDMENT TO MECHANIC'S LIEN

THIS IS TO CERTIFY THAT **THE MORGANTI GROUP, INC.,** a Connecticut corporation having a business address at 100 Mill Plain Road, 4th Floor, Danbury, Connecticut 06811, in accordance with a certain contract for furnishing labor, materials, and services between it and **WALL STREET THEATER COMPANY, INC.,** with a business address of 71 Wall Street, Norwalk, Connecticut 06850 by virtue of an agreement with or by consent of the owner of the premises described herein and known as 71 Wall Street in the City of Norwalk, County of Fairfield, and State of Connecticut, or of some person having authority from or rightfully acting for the owner, has a Lien under the statues in such cases made and provided on the premises and the improvements thereon (the "Premises"), in an amount, which is justly due, of **TWO MILLION THREE HUNDRED EIGHTY SEVEN THOUSAND FIVE HUNDRED AND FORTY AND 79 /100 DOLLARS ($2,387,540.79)** as nearly as the same can be ascertained, plus interest, costs and attorneys' fees.

This certificate is an amendment and supplement to the Certificate of Mechanic's Lien dated April 27, 2017 and filed on April 28, 2017 in Volume 8518 at Page 0296 of the City of Norwalk Land Records. The purpose of the filing of this Amendment is to increase the amount of the lien recorded in Volume 8518 at Page 0296. Said lien otherwise remains in full force and effect.

This Lien is filed against **WALL STREET THEATER COMPANY, INC,** the fee owner of record of the Premises, **WALL STREET MASTER LANDLORD LLC,** the leasehold owner of the Premises, and **WALL STREET MASTER TENANT LLC,** the sublease owner of the Premises.

THIS LIEN is for labor, materials and services furnished in connection with construction, additions and alterations work on the Premises. The furnishing of the labor, materials and services commenced on the 18th day of May, 2016 and continued to within 90 days of the filing of this lien.

THE PREMISES and improvements thereon the property situated at 71 Wall Street in the City of Norwalk, County of Fairfield, and State of Connecticut, and are more fully identified in **Schedule A** attached hereto.

THIS CERTIFICATE is made and filed within ninety (90) days from the time of ceasing to render services and furnish materials as aforesaid.

RMF/213626/0140/1439484v1
05/16/17-HRT/RMF

## SCHEDULE A

### Property Description
### 71 Wall Street, Norwalk, Connecticut

**First Tract:**

All that certain parcel of land, together with the buildings and other improvements thereon, situated in the City of Norwalk, County of Fairfield and State of Connecticut, shown on a certain map entitled, "Map of Property Prepared for Nutmeg Theatre Circuit Norwalk Connecticut Scale: 1 in. = 10 ft. April 8, 1971" by Leonard Surveyors Norwalk, Connecticut Certified 'Substantially Correct' by Leo Leonard," which map is on file in the Norwalk Town Clerk's Office numbered 7490. Said premises are more particularly bounded and described as follows:

| | |
|---|---|
| NORTHWESTERLY: | 65 feet by Wall Street; |
| NORTHEASTERLY: | 150.50 feet by land now or formerly of the Fairfield County Savings Bank and Nutmeg Theatre Circuit, and by land now or formerly of the Norwalk Parking Authority; each in part; |
| SOUTHEASTERLY: | 22.88 feet by land now or formerly of the Norwalk Parking Authority; |
| NORTHEASTERLY AGAIN: | 2.00 feet by land now or formerly of the Norwalk Parking Authority; |
| SOUTHEASTERLY AGAIN: | 36.31 feet by land now or formerly of the Norwalk Parking Authority; |
| SOUTHWESTERLY: | 10.10 feet by a four foot easement; |
| SOUTHEASTERLY AGAIN: | 7.60 feet by a four foot easement and by land now or formerly of Paul B. and Mildred Maravnick |
| SOUTHWESTERLY AGAIN: | 140.71 feet by land now or formerly of the Fairfield County National Bank. |

Together with a right of ingress and egress set forth in Volume 177, Page 190 to Isaacs Street Extension over a strip of land about 4 feet in width running from the southwest corner of the above-described premises to Isaacs Street and bounded:

| | |
|---|---|
| NORTHERLY: | by land now or formerly of Nutmeg Theatre Circuit; |
| EASTERLY: | by land now or formerly of the Norwalk Parking Authority; |
| SOUTHERLY: | by Isaacs Street Extension; and |
| WESTERLY: | by land now or formerly of Paul B. and Mildred Maravnick; |

Together also with rights reserved in common with others over land now or formerly of James C. Cunningham as contained in a deed from Samuel Kantor to James C. Cunningham dated May 4, 1926 and recorded on September 4, 1926 in Volume 201, Page 11 of the Norwalk Land Records.

**Second Tract:**

An undivided one-half interest recited by instrument Volume 143, Page 634 in and to a certain tract of land situated in the City of Norwalk, County of Fairfield and State of Connecticut, and bound and described as follows:

| | |
|---|---|
| NORTHERLY: | 14.77 feet by Wall Street; |
| EASTERLY: | 100.00 feet by land now or formerly of Fairfield County Savings Bank; |
| SOUTHERLY: | 14.80 feet by land now or formerly of the Norwalk Parking Authority; and |
| WESTERLY: | 100.00 feet by land now or formerly of Nutmeg Theatre Circuit. |

STATE OF CONNECTICUT}
                    } SS: HARTFORD,        MAY 26, 2017
COUNTY OF HARTFORD  }


**RE: The Morganti Group, Inc., vs. Wall Street Theater Company, Inc.**


Then and by virtue hereof, on the 26th day of May, 2017, I made due and legal service on the within named, **WALL STREET THEATER COMPANY, INC.,** by leaving a true and attested certified copy of the original **Amendment To Mechanic's Lien and Schedule A,** with and in the hands of Eric Henzy, Esq., who is duly authorized to accept service for Reid and Riege, P.C., Agent For Service for the within named at, One Financial Plaza, in the City of Hartford.

Also on the 26th day of May, 2017, I made due and legal service on the within named, **WALL STREET MASTER LANDLORD LLC,** by leaving a true and attested certified copy of the original **Amendment To Mechanic's Lien and Schedule A,** with and in the hands of Eric Henzy, Esq., who is duly authorized to accept service for Reid and Riege, P.C., Agent For Service for the within named at, One Financial Plaza, in the City of Hartford.

Also on the 26th day of May, 2017, I made due and legal service on the within named, **WALL STREET MASTER TENANT LLC,** by leaving a true and attested certified copy of the original **Amendment To Mechanic's Lien and Schedule A,** with and in the hands of Eric Henzy, Esq., who is duly authorized to accept service for Reid and Riege, P.C., Agent For Service for the within named at, One Financial Plaza, in the City of Hartford.

The within is a certified copy of the original **Amendment To Mechanic's Lien and Schedule A,** with my doings hereon endorsed.


FEES:                               ATTEST:

Pages          $ 9.00
Endorsements     1.60               JOSEPH MUSUMECI
Service         80.00               STATE MARSHAL
Travel           5.00               HARTFORD COUNTY

Total          $ 95.60

# EXHIBIT D

 **AMERICAN ARBITRATION ASSOCIATION®**

**CONSTRUCTION ARBITRATION RULES
DEMAND FOR ARBITRATION**

**Mediation:** If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box ☑.
There is no additional administrative fee for this service.

| Name of Respondent: Wall Street Theater Company, Inc. | Name of Representative (if known): Peter J. Martin |
|---|---|
| Address:<br>c/o Hinckley Allen & Snyder LLP, 20 Church Street, 18th Floor | Name of Firm (if applicable): Hinckley Allen & Snyder LLP<br><br>Representative's Address: 20 Church Street, 18th Floor |

| City: Hartford | State: CT | Zip Code: 06103 | City: Hartford | State: CT | Zip Code: 06103 |
|---|---|---|---|---|---|
| Phone No.: 860-331-2726 | Fax No.: | | Phone No.: 860-331-2726 | Fax No.: | |
| Email Address: pmartin@hinckleyallen.com | | | Email Address: pmartin@hinckleyallen.com | | |

The named claimant, a party to an arbitration agreement dated  June 29, 2016     , which provides for arbitration under the Construction Industry
Rules of the American Arbitration Association, hereby demands arbitration.

**Arbitration Clause:** Please indicate whether the contract containing the dispute resolution clause governing this dispute is a standard industry form
contract (such as AIA, ConsensusDOCS or AGC) or a customized contract for the specific project.

Contract Form: AIA 101-2007/AIA 201-2007. See Exhibit A

The Nature of the Dispute:

See Exhibit B.

| Dollar Amount of Claim: $  2,387,540.99 | Other Relief Sought:<br>☑ Attorneys Fees ☑ Interest ☑ Arbitration Costs<br>☐ Punitive/ Exemplary ☐ Other |
|---|---|
| Amount Enclosed: $  3,500 | In Accordance with Fee Schedule: ☑ Flexible Fee Schedule ☐ Standard Fee Schedule |

Please describe appropriate qualifications for arbitrator(s) to be appointed to hear this dispute:

Experienced construction lawyers with significant arbitration experience.

| Hearing Locale Requested:  Hartford, CT | Project Site:  Norwalk, CT |
|---|---|
| Estimated Time Needed for Hearings Overall:<br>          hours or          3   days | Specify Type of Business:<br>Claimant  General Contractor/Construction Manager<br>Respondent  Owner/Developer |

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a
request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative): *[signature]* | Date:  1 5  MAY  2017 |
|---|---|
| Name of Claimant: The Morganti Group, Inc. | Name of Representative: Louis R. Pepe |
| Address (to be used in connection with this case):<br>c/o McElroy, Deutsch, Mulvaney & Carpenter, LLP, One State Street, 14th Floor | Name of Firm (if applicable): McElroy, Deutsch, Mulvaney & Carpenter LLP<br><br>Representative's Address: One State Street, 14th Floor |

| City: Hartford | State: CT | Zip Code: 06103 | City: Hartford | State: CT | Zip Code: 06103 |
|---|---|---|---|---|---|
| Phone No.: 860-522-5175 | Fax No.: 860-522-2796 | | Phone No.: 860-522-5175 | Fax No.: 860-522-2796 | |
| Email Address: lpepe@mdmc-law.com | | | Email Address: lpepe@mdmc-law.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to:
American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. Send the original Demand to the Respondent.

*Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.*

# EXHIBIT A

## (ARBITRATION CLAUSE)

 **AIA** Document A101™ – 2007

## Standard Form of Agreement Between Owner and Contractor *where the basis of payment is a Stipulated Sum*

AGREEMENT made as of the 29 day of June in the year 2016
*(In words, indicate day, month and year.)*

BETWEEN the Owner:
*(Name, legal status, address and other information)*

Wall Street Theater Company, LLC
6 West Putnam Avenue
Greenwich, CT 06830

and the Contractor:
*(Name, legal status, address and other information)*

The Morganti Group, Inc.
100 Mill Plain Road
Danbury, CT 06811

for the following Project:
*(Name, location and detailed description)*

Wall Street Theater
71 Wall Street
Norwalk, CT

The Architect:
*(Name, legal status, address and other information)*

Design Development Architects, PLLC
237 Mamaroneck Avenue
Suite 400
White Plains, NY 10601

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

Init.

/

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires on 06/26/2017, and is not for resale.
User Notes:                                                                (894263804)

1

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct
Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if
any, which extend beyond final payment; and
.2    a final Certificate for Payment has been issued by the Architect.

§ 5.2.2 The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the
Architect's final Certificate for Payment, or as follows:

**ARTICLE 6    DISPUTE RESOLUTION**

**§ 6.1 BINDING DISPUTE RESOLUTION**
For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201–2007, the
method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below,
or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be
resolved by litigation in a court of competent jurisdiction.)*

[ X ]    Arbitration pursuant to Section 15.4 of AIA Document A201–2007

*(Paragraphs deleted)*
**ARTICLE 7    TERMINATION OR SUSPENSION**
§ 7.1 The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document
A201–2007.

§ 7.2 The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007.

**ARTICLE 8    MISCELLANEOUS PROVISIONS**
§ 8.1 Where reference is made in this Agreement to a provision of AIA Document A201–2007 or another Contract
Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract
Documents.

§ 8.2 Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated
below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

10 %  Ten Percent Per Annum

§ 8.3 The Owner's representative:
*(Name, address and other information)*

Frank Farricker
Wall Street Theater Company Inc.
6 West Putnam Avenue

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American
Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the
maximum extent possible under the law. This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires
on 05/26/2017, and is not for resale.
User Notes:                                                                                                          (804263604)

5

 **Document A201™ – 2007**

## General Conditions of the Contract for Construction

for the following PROJECT:
*(Name and location or address)*
Wall Street Theater
71 Wall Street
Norwalk, CT

**THE OWNER:**
*(Name, legal status and address)*
Wall Street Theater Company, Inc.
6 West Putnam Avenue
Greenwich, CT 06830

**THE ARCHITECT:**
*(Name, legal status and address)*
Design Development Architects, PLLC
237 Mamaroneck Avenue
Suite 400
White Plains, NY 10601

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

TABLE OF ARTICLES

1    GENERAL PROVISIONS

2    OWNER

3    CONTRACTOR

4    ARCHITECT

5    SUBCONTRACTORS

6    CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7    CHANGES IN THE WORK

8    TIME

9    PAYMENTS AND COMPLETION

10   PROTECTION OF PERSONS AND PROPERTY

11   INSURANCE AND BONDS

12   UNCOVERING AND CORRECTION OF WORK

13   MISCELLANEOUS PROVISIONS

14   TERMINATION OR SUSPENSION OF THE CONTRACT

15   CLAIMS AND DISPUTES

**Init.**

**/**

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:50:51 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
**User Notes:**                                                                                          (1330394220)

1

.1    damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons, or loss of tax credits related to this Project;

.2    damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, loss of business and reputation, and for loss of profit except anticipated profit arising directly from the Work: and

.3    Loss of Owner's tax credits related to this Project.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.6 shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

### § 15.2 MEDIATION

**§ 15.2.1** Claims, disputes, or other matters in controversy arising out of or related to the Contract except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution.

**§ 15.2.2** The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

**§ 15.2.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the county where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

*(Paragraphs deleted)*
### § 15.3 ARBITRATION

**§ 15.3.1** The parties hereby select and agree to arbitration as the method for binding dispute resolution of any Claim subject to, but not resolved by, mediation, which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

**§ 15.3.1.1** A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.

**§ 15.3.2** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

**§ 15.3.3** The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

*(Paragraphs deleted)*
### § 15.3.4 CONSOLIDATION OR JOINDER

**§ 15.3.4.1** Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration

**Init.**

*l*

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:50:51 on 06/27/2018 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
User Notes:                                (1330394220)

**41**

# **EXHIBIT B**

**Nature of Dispute:**

On or about June 29, 2016, the Wall Street Theater, Inc., as owner, and The Morganti Group, Inc., as general contractor, entered into a construction contract for the renovation of a theater located in Norwalk, Connecticut (the "Project").

Despite Morganti's strict performance of the construction contract, Wall Street Theater, Inc. materially breached the contract by its failure and refusal to issue progress payments in accordance with the contract and its failure to provide evidence of sufficient financing to satisfy its contractual payment obligations to Morganti.

As a result of Wall Street Theater's material breach of contract, Morganti is excused from further performance under the contract and is entitled to not less than $2,387,540.79 for work performed. Morganti also seeks interest on this amount and its attorney's fees.



**AMERICAN ARBITRATION ASSOCIATION®**

**CONSTRUCTION ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

**Mediation:** If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box ☑.
There is no additional administrative fee for this service.

| | |
|---|---|
| Name of Respondent: Wall Street Theater Company, Inc. | Name of Representative (if known): Peter J. Martin |
| Address: c/o Hinckley Allen & Snyder LLP, 20 Church Street, 18th Floor | Name of Firm (if applicable): Hinckley Allen & Snyder LLP |
| | Representative's Address: 20 Church Street, 18th Floor |

| City: Hartford | State: CT | Zip Code: 06103 | City: Hartford | State: CT | Zip Code: 06103 |
|---|---|---|---|---|---|
| Phone No.: 860-331-2726 | Fax No.: | | Phone No.: 860-331-2726 | Fax No.: | |
| Email Address: pmartin@hinckleyallen.com | | | Email Address: pmartin@hinckleyallen.com | | |

The named claimant, a party to an arbitration agreement dated June 29, 2016 , which provides for arbitration under the Construction Industry Rules of the American Arbitration Association, hereby demands arbitration.

**Arbitration Clause:** Please indicate whether the contract containing the dispute resolution clause governing this dispute is a standard industry form contract (such as AIA, ConsensusDOCS or AGC) or a customized contract for the specific project.

Contract Form: AIA 101-2007/AIA 201-2007. See Exhibit A

The Nature of the Dispute:

See Exhibit B.

| Dollar Amount of Claim: $ 2,387,540.99 | Other Relief Sought: ☑ Attorneys Fees ☑ Interest ☑ Arbitration Costs ☐ Punitive/ Exemplary ☐ Other |
|---|---|
| Amount Enclosed: $ 3,500 | In Accordance with Fee Schedule: ☑ Flexible Fee Schedule ☐ Standard Fee Schedule |

Please describe appropriate qualifications for arbitrator(s) to be appointed to hear this dispute:

Experienced construction lawyers with significant arbitration experience.

| Hearing Locale Requested: Hartford, CT | Project Site: Norwalk, CT |
|---|---|
| Estimated Time Needed for Hearings Overall: hours or 3 days | Specify Type of Business: Claimant General Contractor/Construction Manager Respondent Owner/Developer |

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative): *[signature]* | Date: 15 MAY 2017 |
|---|---|
| Name of Claimant: The Morganti Group, Inc. | Name of Representative: Louis R. Pepe |
| Address (to be used in connection with this case): c/o McElroy, Deutsch, Mulvaney & Carpenter, LLP, One State Street, 14th Floor | Name of Firm (if applicable): McElroy, Deutsch, Mulvaney & Carpenter LLP |
| | Representative's Address: One State Street, 14th Floor |

| City: Hartford | State: CT | Zip Code: 06103 | City: Hartford | State: CT | Zip Code: 06103 |
|---|---|---|---|---|---|
| Phone No.: 860-522-5175 | Fax No.: 860-522-2796 | | Phone No.: 860-522-5175 | Fax No.: 860-522-2796 | |
| Email Address: lpepe@mdmc-law.com | | | Email Address: lpepe@mdmc-law.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. Send the original Demand to the Respondent.

*Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.*

# EXHIBIT A

## (ARBITRATION CLAUSE)

# ░AIA® Document A101™ – 2007

## *Standard Form of Agreement Between Owner and Contractor where the basis of payment is a Stipulated Sum*

**AGREEMENT** made as of the 29  day of June in the year 2016
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

Wall Street Theater Company, LLC
~~6 West Putnam Avenue~~
~~Greenwich, CT 06830~~

and the Contractor:
*(Name, legal status, address and other information)*

The Morganti Group, Inc.
100 Mill Plain Road
Danbury, CT 06811

for the following Project:
*(Name, location and detailed description)*

Wall Street Theater
71 Wall Street
Norwalk, CT

The Architect:
*(Name, legal status, address and other information)*

Design Development Architects, PLLC
237 Mamaroneck Avenue
Suite 400
White Plains, NY  10601

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires on 06/26/2017, and is not for resale.
**User Notes:**                                                                                         (894263604)

1

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct
Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if
any, which extend beyond final payment; and

.2    a final Certificate for Payment has been issued by the Architect.

**§ 5.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the
Architect's final Certificate for Payment, or as follows:

### ARTICLE 6    DISPUTE RESOLUTION

**§ 6.1 BINDING DISPUTE RESOLUTION**
For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of AIA Document A201–2007, the
method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below,
or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be
resolved by litigation in a court of competent jurisdiction.)*

     [ X ]     Arbitration pursuant to Section 15.4 of AIA Document A201–2007

*(Paragraphs deleted)*
### ARTICLE 7    TERMINATION OR SUSPENSION
**§ 7.1** The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document
A201–2007.

**§ 7.2** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007.

### ARTICLE 8    MISCELLANEOUS PROVISIONS
**§ 8.1** Where reference is made in this Agreement to a provision of AIA Document A201–2007 or another Contract
Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract
Documents.

**§ 8.2** Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated
below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

10 %   Ten Percent Per Annum

**§ 8.3** The Owner's representative:
*(Name, address and other information)*

Frank Farricker
Wall Street Theater Company Inc.
6 West Putnam Avenue

**Init.**

**/**

AIA Document A101™ – 2007. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991, 1997 and 2007 by The American
Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized
reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the
maximum extent possible under the law. This document was produced by AIA software at 09:07:45 on 06/27/2016 under Order No.7913415577_1 which expires
on 05/26/2017, and is not for resale.
User Notes:                                                         (894263604)

# ▓AIA® Document A201™ – 2007

## General Conditions of the Contract for Construction

for the following PROJECT:
*(Name and location or address)*
Wall Street Theater
71 Wall Street
Norwalk, CT

THE OWNER:
*(Name, legal status and address)*
Wall Street Theater Company, Inc.
6 West Putnam Avenue
Greenwich, CT  06830

THE ARCHITECT:
*(Name, legal status and address)*
Design Development Architects, PLLC
237 Mamaroneck Avenue
Suite 400
White Plains, NY  10601

TABLE OF ARTICLES

1       GENERAL PROVISIONS

2       OWNER

3       CONTRACTOR

4       ARCHITECT

5       SUBCONTRACTORS

6       CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7       CHANGES IN THE WORK

8       TIME

9       PAYMENTS AND COMPLETION

10      PROTECTION OF PERSONS AND PROPERTY

11      INSURANCE AND BONDS

12      UNCOVERING AND CORRECTION OF WORK

13      MISCELLANEOUS PROVISIONS

14      TERMINATION OR SUSPENSION OF THE CONTRACT

15      CLAIMS AND DISPUTES

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:50:51 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
User Notes:                                                                                                      (1330394220)

Init.

/

1

.1   damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons, or loss of tax credits related to this Project;

.2   damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, loss of business and reputation, and for loss of profit except anticipated profit arising directly from the Work; and

.3   Loss of Owner's tax credits related to this Project.

This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Section 15.1.6 shall be deemed to preclude an award of liquidated damages, when applicable, in accordance with the requirements of the Contract Documents.

### § 15.2 MEDIATION

§ 15.2.1 Claims, disputes, or other matters in controversy arising out of or related to the Contract except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution.

§ 15.2.2 The parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 15.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

§ 15.2.3 The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the county where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

*(Paragraphs deleted)*
### § 15.3 ARBITRATION

§ 15.3.1 The parties hereby select and agree to arbitration as the method for binding dispute resolution of any Claim subject to, but not resolved by, mediation, which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement. A demand for arbitration shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the arbitration. The party filing a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded.

§ 15.3.1.1 A demand for arbitration shall be made no earlier than concurrently with the filing of a request for mediation, but in no event shall it be made after the date when the institution of legal or equitable proceedings based on the Claim would be barred by the applicable statute of limitations. For statute of limitations purposes, receipt of a written demand for arbitration by the person or entity administering the arbitration shall constitute the institution of legal or equitable proceedings based on the Claim.

§ 15.3.2 The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

§ 15.3.3 The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

*(Paragraphs deleted)*
### § 15.3.4 CONSOLIDATION OR JOINDER

§ 15.3.4.1 Either party, at its sole discretion, may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration

**Init.**

*I*

AIA Document A201™ – 2007. Copyright © 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1970, 1976, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:50:51 on 06/27/2016 under Order No.7913415577_1 which expires on 05/26/2017, and is not for resale.
User Notes:                                                                                                    (1330394220)

41

# **EXHIBIT B**

**Nature of Dispute:**

On or about June 29, 2016, the Wall Street Theater, Inc., as owner, and The Morganti Group, Inc., as general contractor, entered into a construction contract for the renovation of a theater located in Norwalk, Connecticut (the "Project").

Despite Morganti's strict performance of the construction contract, Wall Street Theater, Inc. materially breached the contract by its failure and refusal to issue progress payments in accordance with the contract and its failure to provide evidence of sufficient financing to satisfy its contractual payment obligations to Morganti.

As a result of Wall Street Theater's material breach of contract, Morganti is excused from further performance under the contract and is entitled to not less than $2,387,540.79 for work performed. Morganti also seeks interest on this amount and its attorney's fees.

# EXHIBIT E

AMERICAN
ARBITRATION
ASSOCIATION®

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION™

# Gerard P. Brady, Esq., P.E.
### Welby Brady & Greenblatt, LLP

| | |
|---|---|
| **Current Employer-Title** | Welby, Brady & Greenblatt, LLP - Partner |
| **Profession** | Attorney - Construction Law |
| **Work History** | Partner, Welby, Brady & Greenblatt, LLP, 1996-present; Attorney, Self-employed, 1991-95; Project Manager and General Counsel, North Star Contracting Corp., 1982-91; Civil Engineer, Mueser Rutledge Engineers, 1981-82; Field Engineer/Superintendent, E.B. Fitzpatrick Const. Corp., 1978-81; Estimator and Cost Engineer, Horn Construction Co., Inc., 1977-78. |
| **Experience** | Over 30 years of experience as an attorney representing contractors, subcontractors, businesses and individuals in disputes arising out of various types of construction projects including: highway and bridges, high rise and commercial buildings, mass transit, underground and overhead utilities, schools, airports, tunnels, HVAC, MEPS and residential. Received Preeminent AV Rating from Martindale-Hubbell (Highest Possible Rating in Both Legal Ability and Ethical Standards). Also recognized by Super Lawyers and Top Attorneys in New York. Prior to practicing law, employed as an estimator, field engineer, project manager, and geotechnical design engineer on major heavy construction projects including: the elimination of railroad grade crossings at the Georgia State University Station for MARTA (Atlanta Transit Authority); the reconstruction of the Brooklyn, Queens Expressway; the reconstruction of the Queensboro Bridge; the replacement of track and concrete invert on New York City Transit Authority's Sixth Avenue Subway Line; replacement of track, ballast, and associated infrastructure at New York City Transit Authority's Corona Railroad Yard; the erection of a new elevated subway structure between the New York City Transit Authority's existing Jamaica Avenue elevated subway structure at 128th Street and the new Archer Avenue line; and the design of portions of New York State Department of Transportation's proposed Westway project. Also experienced in estimating, managing and working on various industrial and commercial building projects such as Disney's Epcot Center and the Long Island Railroad's Hillside CarRepair Shop. |
| **Alternative Dispute Resolution Experience** | Has served as arbitrator and panel chairman in numerous construction cases for the American Arbitration Association since 1993, ranging in value from six to seven figures. The cases involved construction related disputes, between private and public owners, contractors, subcontractors, engineers and architects. Such disputes arose out of the design and construction of bridges, highways, commercial and residential buildings, schools, HVAC systems, fire suppression systems and solar panels. |
| **Alternative Dispute Resolution Training** | AAA Construction Conference: Navigating the Unique Aspects of Construction Arbitration, 2017; AAA-ICDR Council and Columbia Law School Conference: The Future of Arbitration, 2017; AAA Dealing with Difficult Attorneys in |

*Gerard P. Brady, Esq., P.E.*
*Neutral ID : 123364*

The AAA provides arbitrators to parties on cases administered by the AAA under its various Rules, which delegate authority to the AAA on various issues, including arbitrator appointment and challenges, general oversight, and billing. Arbitrations that proceed without AAA administration are not considered "AAA arbitrations," even if the parties were to select an arbitrator who is on the AAA's Roster.

Arbitration (ACE013), 2016; AAA eDiscovery: Arbitration in a Digital World (ACE 12), 2015; AAA Principled Deliberations: Decision-Making Skills for Arbitrators, ACE8, 2014; AAA Managing the Arbitration Process for Efficiency & Economy Following the Preliminary Hearing, 2013; AAA Construction Conference: Cutting Construction Arbitration Costs Without Compromise, 2012; AAA Maximizing Efficiency & Economy in Arbitration: Challenges at the Preliminary Hearing, 2011; AAA Webinar, Arbitrator Boundaries: What are the Limits of Arbitrator Authority?, 2011; AAA Dealing with Delay Tactics in Arbitration (ACE004), 2010, 2006; AAA Arbitration Awards: Safeguarding, Deciding & Writing Awards (ACE001), 2009; AAA Arbitrator Ethics & Disclosure (ACE003), 2008; AAA Chairing an Arbitration Panel: Managing Procedures, Process & Dynamics (ACE005), 2006; AAA Pro Se: Managing Cases Involving Self-Represented Parties (ACE002), 2004; AAA Arbitrator Update, 2001; AAA Construction Industry Arbitrator II Training:  Advanced Case Management Issues, 2001; AAA Construction Arbitrator Training, 1996.

| | |
|---|---|
| **Professional Licenses** | Admitted to the Bar:  New York, 1986; New Jersey, 1986; U.S. District Court: Southern, Eastern, and Northern Districts of New York; District of New Jersey. Registered Professional Engineer, New York, 1984. |
| **Professional Associations** | The Moles (General Counsel and Past Trustee); American Society of Civil Engineers (Past President of Lower Hudson Valley Branch); American Bar Association (Forum on the Construction Industry); New York State Bar Association; New Jersey State Bar Association; Rockland County Bar Association. |
| **Education** | Manhattan College (BCE, Civil Engineering-1977); New York Polytechnic Institute (MS, Civil Engineering-1981); Pace University School of Law (JD-1985). |
| **Publications and Speaking Engagements** | Speaker on Construction Law topics for General Contractors Association and the American Society of Civil Engineers, Lower Hudson Valley Branch. Articles: "Contracting for Public Works Projects," NYSBA's Municipal Lawyer, Vol. 15, No. 2, ( March/April, 2001); "The Perils of Doing Business With Disadvantaged Business Enterprises," ABA's The Construction Lawyer, Vol. 32, No. 3 Summer (2012). |
| **Citizenship** | United States of America |
| **Languages** | English |
| **Locale** | White Plains, New York, United States of America |

**Compensation**

| | |
|---|---|
| Hearing: | $2800.00/Day |
| Study: | $400.00/Hr |
| Travel: | $200.00/Hr |
| Cancellation: | $1600.00/Day |
| Cancellation Period: | 5 Days |
| Comment: | Conference calls and study time charged at hourly rate. |

*Gerard P. Brady, Esq., P.E.*
*Neutral ID : 123364*

The AAA provides arbitrators to parties on cases administered by the AAA under its various Rules, which delegate authority to the AAA on various issues, including arbitrator appointment and challenges, general oversight, and billing.  Arbitrations that proceed without AAA administration are not considered "AAA arbitrations," even if the parties were to select an arbitrator who is on the AAA's Roster.