### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

-----------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| | : | Case No. 18-50132 |
| WALL STREET THEATER COMPANY, INC. | : | Case No. 18-50133 |
| WALL STREET MASTER LANDLORD, LLC | : | Case No. 18-50134 |
| WALL STREET MANAGING MEMBER, LLC | : | |
| | : | |
| Debtor. | : | |
| | : | |

-----------------------------------------------------------X

| | | |
|---|---|---|
| | : | |
| THE MORGANTI GROUP, INC., | : | |
| | : | Contested Matter |
| Movant. | : | |
| | : | |
| v. | : | |
| | : | |
| WALL STREET THEATER COMPANY, INC. | : | |
| and WALL STREET MASTER LANDLORD, | : | |
| LLC, | : | March 29, 2018 |
| | : | |
| Respondents. | : | |

_____X

### THE MORGANTI GROUP, INC.'S REPLY
### TO THE OBJECTIONS FILED BY THE DEBTORS AND
### PATRIOT BANK, N.A. TO ITS MOTION FOR
### RELIEF FROM THE AUTOMATIC STAY FOR CAUSE AND
### TO ENFORCE ARBITRATION AGREEMENT PURSUANT
### TO FEDERAL ARBITRATION ACT

The Morganti Group, Inc., ("Morganti"), a secured creditor and party-in-interest, by

and through its undersigned counsel, McElroy, Deutsch, Mulvaney & Carpenter, LLP, hereby

files the within Reply to: (i) the Objection [ECF No. 84] filed by Wall Street Theater

Company, Inc. ("WSTC") and Wall Street Master Landlord, LLC ("Master Landlord")

(collectively, the "Debtors") to Morganti's Motion for Relief from the Automatic Stay for Cause and to Enforce Arbitration Agreement pursuant to Federal Arbitration Act (the "Motion for Relief") [ECF No. 54]; and (ii) the Objection filed by Patriot Bank, N.A. ("Patriot" or the "Bank") to the Motion [ECF No. 99] (collectively, the "Objections").  In support thereof, Morganti states as follows.

## INTRODUCTION

Morganti is entitled to relief from the automatic stay as the Bankruptcy Court does not have discretion to refuse to compel arbitration of its prepetition construction dispute with the Debtors.  Moreover, given that the arbitration involves only "non-core" matters, the Second Circuit's 12-factor balancing test set forth in *In re Sonnax* is inapplicable.  Even if the Court were to apply the *Sonnax* analysis, Morganti respectfully submits that stay relief is warranted as completion of the Arbitration will resolve all issues between the parties (except for a Section 506 determination), the Arbitration[1] will facilitate a speedy resolution of Morganti's claim necessary for these Chapter 11 proceedings, the Arbitrator is uniquely qualified to hear and adjudicate this complex construction matter, the Debtors' creditors may potentially benefit from the Debtors' successful prosecution of its counterclaims against Morganti, and the Arbitration is trial-ready.  Finally, Morganti would be severely prejudiced in the event stay relief were denied by having to defend the numerous claims of unpaid subcontractors on the Project without any assurance that its claim against the Debtors will be liquidated anytime soon.  As such, the *Sonnax* factors heavily weigh in favor of granting Morganti relief from stay to proceed with the Arbitration.

---

[1] Defined terms used herein shall have the meaning ascribed to them in Morganti's Motion for Relief.

Nor do any of the arguments made by the Debtor and Patriot (the "Objecting Parties") warrant denial of stay relief. The Objecting Parties' assertion that Morganti's claim is irrelevant and that it should stand in line with all other general unsecured credits hinges entirely upon its erroneous assumption that Morganti is "out of the money". Morganti strongly believes based on the information available to it that it is in the money. Given that their own appraisals value the Property at anywhere between $6.6 million and $11.3 million (including the tax credits) and that Patriot has an alleged security interest in tax credits and personal property totaling $5.3 million, Patriot's $8.8 million claim is likely over-secured perhaps by as much as $3-$4 million as set forth below. As such, liquidation of Morganti's claim must be determined now and not at some later date when it's more convenient for the Debtors. Finally, Debtors' claim that stay relief should be denied because they lack any money to pay for the cost of the Arbitration is simply false. The Debtors have repeatedly represented to the creditors and to this Court that they will be receiving $1.8 million in Tax Credits in a matter of weeks (and which was confirmed as recently as Monday by the Debtors' President, Suzanne Cahill, at the continued First Meeting of Creditors). The Debtors will have the funds necessary to litigate their dispute with Morganti. Whether Patriot chooses to allow the Debtors to spend $291,000 in litigation costs in order to potentially recover $1.3 million in claims against Morganti is an issue between Patriot and the Debtors – and serves as absolutely no justification to deny Morganti's rights under the Federal Arbitration Act.

## <u>ARGUMENT</u>

**I.    The Bankruptcy Court Does Not Have Discretion to Refuse to Compel Arbitration of Non-Core Bankruptcy Matters As A Matter of Law**

In briefs that virtually mirror one another, both the Debtors and Patriot object to Morganti's Motion for Relief seeking to compel the Debtors to proceed with Arbitration of the parties' construction dispute on the basis that: (1) it is premature to liquidate Morganti's claims because it is all but certain that Morganti is an unsecured creditor who will receive pennies on the dollar in these bankruptcy proceedings; (2) the Debtors do not have the financial wherewithal to mount a defense to the Arbitration; and (3) compelling Arbitration will lead to an unnecessary cash collateral dispute between the Debtors and Patriot as Patriot has not authorized the use of its cash collateral to pay for defense costs in the Arbitration.  As such, the Objecting Parties implore the Court to exercise its discretion and deny the Motion for Relief at this time.

Even assuming that the foregoing assertions proffered by the Objecting Parties are true (which, Morganti flatly rejects for the reasons set forth below), the Objecting Parties' entire argument hinges on their assertion that the Bankruptcy Court has discretion to deny stay relief and delay sending a matter to arbitration notwithstanding the Court's determination that the matter is non-core and subject to arbitration.  In support of this legal position, Patriot Bank states, "in *MBNA*, the Second Circuit held that bankruptcy courts may exercise their discretion to refuse to compel arbitration of non-core bankruptcy matters."  (Patriot's Objection at p. 9, ¶24).  Patriot Bank completely mischaracterizes *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006).  What the Second Circuit actually stated in *MBNA* was that, "[i]n resolving these conflicts [between the Bankruptcy Code and the Federal Arbitration Act], courts

distinguish between claims over which bankruptcy judges have discretion to refuse arbitration

and those that they must send directly to arbitration. *Bankruptcy courts generally do not have*

*discretion to refuse to compel arbitration of "non-core" bankruptcy matters, or matters that are*

*simply "related to" bankruptcy cases." Id.* at 108 (emphasis added). The Second Circuit

further stated, "[a]s to these matters, the presumption in favor of arbitration usually trumps the

lesser interest of bankruptcy courts in adjudicating non-core proceedings." *Id.*

As such, the entire legal framework that the Objecting Parties ask this Court to adopt in

analyzing whether Morganti is entitled to relief from stay to proceed with the Arbitration is

incorrect as a matter of law. The analysis, as set forth in Morganti's Motion for Relief and

further described below, in large part hinges upon whether the arbitration involves "core" or

"non-core" proceedings. If the matters are non-core, then the Bankruptcy Court must send the

matter directly to arbitration. Since both the Debtors and Patriot concede, as they must, that

the Arbitration involves non-core matters (Debtors' Objection at p.23; Patriot Objection at

p.9), this Court does not have discretion to refuse to compel arbitration of this construction

dispute and to deny Morganti's Motion for Relief.

## II.   The Second Circuit's *Sonnax* Factors Do Not Apply

The Objecting Parties correctly point out that Morganti does not cite to, or rely upon,

*Sonnax Industries, Inc. v. Tri Component Products Corp.* (*In re Sonnax Industries, Inc.*), 907

F.2d 1280 (2d Cir. 1990), in support of its Motion for Relief. The Objecting Parties further

maintain that *In re Sonnax* is controlling authority in this district on the issue of whether

Morganti is entitled to stay relief under the facts and circumstances of this case. As such, they

claim that Morganti's failure to cite to such authority is fatal to its Motion for Relief and

should be denied on this basis alone. (Debtor's Objection at p. 15; Patriot's Objection at p.5).

Morganti did not cite to *In re Sonnax* in its Motion for Relief because *In re Sonnax* does

not apply under these circumstances.  While it is generally true that "in determining whether to

lift the automatic stay, a bankruptcy court must, to the extent relevant, consider the twelve

*Sonnax* factors," *In re Salander-O'Reilly Galleries, LLC*, 475 B.R. 9, 20 (S.D.N.Y. 2012),

they do not apply when a party seeks stay relief to proceed with arbitration.   "Because of the

strong federal policy favoring arbitration, the traditional balancing test under *In re Sonnax*

*Indus.*, 907 F.2d 1280; 1286 (2d Cir. 1990), for seeking relief from the automatic stay does

not apply." *In re Cardali*, Bankruptcy No. 10–11185 (SHL), Adversary No. 10-3531 (SHL),

2010 WL 4791801, at * 4 (Bankr.S.D.N.Y. Nov. 18, 2010), *citing In re Hagerstown Fiber*

*Ltd. Ptnshp*, 277 B.R. 181, 204 (Bankr. S.D.N.Y. 2002)("*Sonnax* balancing does not apply,

and the strong federal policy favoring arbitration trumps the usual considerations of judicial

economy and efficiency which are important factors under *Sonnax*); *see also*, *In re Salander-*

*O'Reilly Galleries, LLC*, 475 B.R. at 20.

In *In re Cardali*, Judge Martin Glenn stated that instead of analyzing a motion for relief

from stay to compel arbitration under the traditional *Sonnax* factors, "a court must apply a four

part inquiry when faced with a motion to compel arbitration: (1) did the parties agree to

arbitrate; (2) does the dispute fall within their arbitration clause; (3) if federal statutory claims

are raised, did Congress intend those claims to be arbitrable; and (4) if the court concludes that

some but not all of the claims are arbitrable, should it stay the non-arbitrable claims pending

the conclusion of the arbitration?" *In re Cardali*, 2010 WL 4791801, at *5, citing *In re*

*Hagerstown Fiber Ltd. Ptnshp*, 277 B.R. at 198 (citing *Genesco, Inc. v. T. Kakiuschi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987); *Norcom Elec. Corp. v. CIM USA Inc.*, 104 F.Supp.2d 198, 202 (S.D.N.Y. 2000); *General Media, Inc. v. Shooker*, No. 97 Civ. 510(DAB), 1998 WL 401530, at *9 (S.D.N.Y. July 16, 1998). *Accord Oldroyd*, 134 F.3d 72, 75-76 (2d Cir. 1998)*; Brownstone*, 514 F.Supp. 2d 526, 549-50 (S.D.N.Y. 2007); *Togut v. RBC Dain Correspondent Servs.* (*In re S.W. Back & Co.*), 425 B.R. 78, 87 (Bankr. S.D.N.Y. 2010); *Bethlehem Steel Corp. v. Moran Towing Corp.* (*In re Bethlehem Steel Corp.*), 390 B.R. 784, 789 (Bankr. S.D.N.Y. 2009);   More recently, Judge Glenn applied the same 4-part test in determining whether a Chapter 11 Plan Administrator was required to proceed with arbitration in Bermuda pursuant to an arbitration clause in the Debtor's insurance policy. *See In re MF Global Holdings, Ltd.*, 571 B.R. 80, 89 (Bankr. S.D.N.Y. Aug. 24, 2017).

Application of the 4-part test makes it abundantly clear that Morganti is entitled to relief from the automatic stay and that the Debtors must be compelled to proceed with the Arbitration now.  First, it is undisputed that Morganti and the Debtors are bound by the Arbitration Clause.  Morganti made proper demand for arbitration in May, 2017, the Debtors consented to same and asserted their Counterclaims against Morganti, the parties selected an arbitrator and have been proceeding with the Arbitration in earnest since that time.  Ironically, the Debtors filed Motions to Stay both Morganti's foreclosure action and its action against Suzanne Cahill and Frank Farricker that are pending in state court so that the Arbitration could proceed.  The defendants argued that the parties had agreed to arbitrate their dispute and that prosecution of

the state court actions would frustrate the parties' arbitration proceedings.[2] There is simply no issue that the Debtors are bound by the Arbitration Clause in the Construction Contract.

Nor is there any dispute concerning the second prong of the 4-part test; namely, whether the dispute falls within the arbitration clause. The crux of the construction dispute between Morganti and the Debtors is whether the Debtors owe Morganti over $2 million for services and work it performed as the General Contractor for the renovation of the Project and whether the Debtors have any defenses or setoffs with respect thereto.[3] All of these issues are subject to the broad arbitration clause in the Construction Contract.

The third prong of the test also weighs in favor of granting stay relief in Morganti's favor. This inquiry asks the Court to determine whether any federal statutory claims raised were intended by Congress to be arbitrable. *In re Cardali*, 2010 WL 4791801, at * 7. "This third question is necessarily more complicated because it requires consideration of Congress' policy in favor of arbitration as weighed against the important federal interests embodied in the Bankruptcy Code." *Id.* at *7. "Like any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *Hagerstown*, 277 B.R. at 198. "The party opposing arbitration bears the burden of demonstrating that 'Congress intended to preclude a

---

[2] On November 1, 2017, Mr. Farricker and Ms. Cahill filed a Motion to Stay that certain litigation styled as *The Morganti Group, Inc. v. Frank Farricker*, Docket No. DBD-CV17-6023054-S pending in the Superior Court of the Judicial District of Danbury. On November 22, 2017, the Debtors filed a similar Motion to Stay Morganti's foreclosure action styled as *The Morganti Group, Inc., v. Wall Street Theater Co., Inc.*, Docket No. FST-CV-17-6033693-S pending in the Superior Court of the Judicial District of Stamford. In both cases, the Debtors, Farricker and Cahill argued that the arbitration was the better forum to adjudicate this construction dispute and urged the courts to stay the proceedings in the interest of judicial economy. Morganti respectfully requests that the Court take judicial notice of the motions to stay pursuant to Federal Rule of Evidence 902 and which are attached hereto as Exhibits A and B.

[3] The Debtors spend four (4) pages of their Objection chronicling Morganti's alleged misconduct and attaching multiple exhibits concerning the substance of the underlying construction dispute between the parties. The facts and circumstances of the construction dispute are wholly irrelevant to whether Morganti is entitled to relief from the automatic stay. The Debtors ultimately acknowledge that if Morganti's claim needs to be liquidated that such resolution will be had by arbitration. Therefore, Debtors' actions should be taken for what they are – a blatant attempt to cast Morganti in the worst light possible.

waiver of judicial remedies for the statutory rights at issue.'" *Id.* at 198; *see also In re Durango Georgia Paper Co.*, 309 B.R. 394 (2004)(debtor failed to satisfy its burden of showing that requiring it to arbitrate its claims in accordance with arbitration provision would conflict with any underlying purpose of the Bankruptcy Code).

As such, it is the *Debtors' burden to prove* that the Bankruptcy Code considerations outweigh the strong federal policy of arbitration. "In weighing this clash, the courts have focused first on whether the matter in question is a core or non-core bankruptcy proceeding." *In re Cardali*, 2010 WL 4791801, at * 7. "If the proceeding is non-core, the inquiry ends and the bankruptcy court lacks discretion to refuse arbitration." *Hagerstown*, 277 B.R. at 202 quoting *Cibro Petroleum Prods. Inc. v. City of Albany* (*In re Winimo Realty Corp.*), 270 B.R. 108 (S.D.N.Y. 2001). If, on the other hand, the court concludes that the proceeding is core, the bankruptcy court must then consider whether arbitration would jeopardize Bankruptcy Code policy. *Id.* Even with respect to "core" matters, "'the bankruptcy court must still carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing the arbitration clause' and the 'arbitration clause should be enforced unless doing so would seriously jeopardize the objectives of the Code.'" *In re MF Global Holdings, Ltd.*, 571 B.R. at 93. Where it is determined that a claim subject to arbitration is "core", some courts will then undertake the *Sonnax* 12-factor analysis to evaluate whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause. *In re Salander-O'Reilly Galleries, LLC*, 475 B.R. at 30-31 (bankruptcy court did not abuse its discretion is denying stay relief based on the *Sonnax* factors

which were applicable because the dispute was a core proceeding).  However, if the matter is

deemed "non-core", the *Sonnax* analysis is never reached.

The Objecting Parties have conceded that the pre-petition breach of contract

construction dispute is a non-core claim.  As such, the inquiry ends here and stay relief must

be granted in Morganti's favor and the parties ordered to proceed with the Arbitration now.

Finally, the fourth prong of the test is not applicable to the case at bar as it is undisputed that

all of the claims are arbitrable and there is no need to consider a stay of non-arbitrable claims

pending the conclusion of the Arbitration.  *Id.* at 89.

## III.    There Is No Support For The Objecting Parties' Assertion That The Bankruptcy Court Has Discretion As To When Arbitration Must Occur

There is no merit to the Objecting Parties' argument that the Bankruptcy Court has

discretion as to the timing of when a dispute should be sent to arbitration.  The Objecting

Parties concede that the Morganti dispute is subject to arbitration but that the arbitration does

not have to occur now.  They suggest that the Bankruptcy Court can conclude that a matter is

non-core and must be decided by an arbitrator but yet deny stay relief on the basis that the

arbitration would interfere with the bankruptcy proceedings. There is simply no authority for

this proposition.

In support of this argument, the Debtors cite to *In re Quigley Company, Inc.*, 361 B.R.

723 (2007).   The Debtors' reliance on *In re Quigley* is misplaced for several reasons.  First,

the Court fails to apply the four-part test endorsed by *Cardali* and *Hagerstown* described

above.  Second, the Court does not even discuss the core vs. non-core dichotomy and its

impact on the Court's discretion to compel arbitration.  Rather, the Court analyzed the

insurers' stay relief request through the lens of *In re Sonnax* and ultimately concluded that stay

relief was warranted notwithstanding the debtors' protestations that the arbitration would interfere with the debtors' ability to reorganize. *Id.* at 743-746.  After weighing the *Sonnax* factors, the Court concluded that permitting the insurers to proceed with arbitration right away was appropriate because: (1) it was more likely lead to complete resolution of the issues in one forum; (2) the arbitrators would have specialized knowledge of the intricacies of the complex agreement at issue in the arbitration; and (3) stay relief would not result in significant and needless costs. *Id.*  As such, the *Quigley* holding supports Morganti's position – not the Debtors.

Nor does the opinion in *In re Patriot Solar Group, LLC*, 569 B.R. 451 (Bankr. W.D.Mich. 2017) support Patriot's argument that the Court can, in its discretion, deny stay relief of a non-core matter that is subject to arbitration because it conflicts with the goals of the Bankruptcy Code.  While the Court in *In re Patriot Solar Group* denied the creditors' motion for relief from stay and refused to send the dispute to arbitration, it did so based (in part) upon its conclusion that the matter to be arbitrated was a "core" proceeding.   The Court acknowledged that if the dispute involved a "non-core" proceeding, that the court is "generally without discretion to preclude the enforcement of the arbitration provision and the inquiry ends." *Id.* at 457-58.  Implicit in that finding is that if the matter were non-core that the Court must send it immediately to arbitration.  Nowhere does the Court state that it can control the timing of when the arbitration can occur under those circumstances.  Given the Court's finding that the matter was core, it then analyzed whether enforcement of the arbitration provisions in the parties' agreements inherently conflicted with the underlying purposes of the Bankruptcy Code.  The Court concluded that the goals of the Bankruptcy Code would not be served by

enforcing the arbitration agreement because (1) the arbitration demand had been filed one month before the bankruptcy and was in its infancy; (2) it was unclear whether there was an arbitration provision in the purchase orders; and (3) the debtor had no money to fund the arbitration.  It is critical to note that the court only reached the balancing of factors because it concluded the matter was core.  Alternatively, had the court concluded that the matter was non-core it would have sent it immediately to arbitration.

## IV.    Even If The Court Were To Apply The *Sonnax* Factors, It Must Still Grant Morganti Relief From The Automatic Stay And Compel Arbitration

In the event that the Court were to apply the *Sonnax* factors to this matter, Morganti respectfully submits that it must still grant it relief from stay to proceed with Arbitration.  The Objecting Parties assert that factors 1, 2, 4, 5, 7, 10, 11 and 12 weigh in favor of a denial of the Motion for Relief.  A consideration of each of these factors below demonstrates quite clearly that arbitration of Morganti's claim and the Debtors' counterclaim will not "necessarily jeopardize" the objectives of the Bankruptcy Code sufficient to override the strong federal policy favoring arbitration.

### 1.  *Sonnax* Factor 1: Whether Relief Would Result In a Partial Or Complete Resolution of the Issues

While conceding that the Arbitration will resolve the dispute between Morganti and the Debtors, the Debtors argue that resolution of Morganti's claim is not even germane to the bankruptcy case at this time. (Debtors' Objection at 15).  And according to Patriot, "the most relevant issues to this bankruptcy case involve freeing up tax credits, obtaining a valuation of the Property, seeking a determination to the validity of the liens held by secured claimants, and confirmation of a Plan." (Patriot's Objection at 6).

In applying the *Sonnax* factors to determine "cause", "the court should look at what is just to the debtor, the estate and the parties involved in light of the circumstances of the case." *In re Montague Pipeline Technologies, Corp.*, 209 B.R. 295, 305 (Bankr. E.D.N.Y. 1997). Notwithstanding this requirement, the Objecting Parties ask the Court to look only at what is just in the eyes of the Debtors and Patriot – they completely ignore what is just from Morganti's standpoint.  While the Objecting Parties may believe that freeing up tax credits and obtaining a valuation of the Property to strip off Morganti's mechanics' lien are the most relevant issues to the case, Morganti believes that the liquidation of its claim is significant to all parties involved and critical to a plan of reorganization.

Moreover, the Objecting Parties misunderstand the inquiry under the first *Sonnax* factor.  The inquiry is whether "relief would result in partial or complete resolution of the issues."  *Id.* at 306.  This means whether resolution of the Arbitration will result in a complete resolution of the issues between the Debtors and Morganti.  And the answer is a simple yes. The inquiry is not whether there will be a resolution of all issues in the case.

Allowing the Arbitration to continue will fix the amount of Morganti's claim, will determine if the Debtors' have a valid counterclaim against Morganti for the benefit of the estate, and will facilitate the Debtors' Chapter 11 by allowing the Debtors to propose a realistic plan of reorganization.  *Id.*  Liquidation of Morganti's claim will also be necessary in any Section 506 proceedings to determine if Morganti is secured or unsecured – which is also a critical component of any Plan.

The Objecting Parties' argue that fixing the amount of Morganti's claim is irrelevant because it has an unsecured claim that will be paid its *pro rata* share of its claim along with all

other general unsecured creditors. The Objecting Parties' argument is premised upon its flawed assumption that Patriot Bank's $8.8 million claim is not fully secured and that the collateral is only worth about $8 million. While valuation of Morganti's mechanic's lien, and by necessity, Patriot Bank's lien, will almost certainly occur in these bankruptcy proceedings, there is no basis – at this juncture- to conclude one way or another whether Morganti's claim is secured or unsecured. Given that Patriot has: (i) a lien on $4 million worth of Tax Credits that are listed on Schedule B of WSTC and Master Landlord; (ii) a mortgage on the real property which has been valued at between $6.6 million and $11.7 million,[4]; and (iii) a lien on $1.3 million of personal property also disclosed on the Debtors' Schedules[5], it is quite likely that Patriot is oversecured by $3-$4 million[6]. Nor is there any basis to accept that the Property has a fair market value of $4.5 million as suggested by Suzanne Cahill, the Debtors' President. Ms. Cahill testified at the First Meeting of Creditors held on March 5, 2018, that she, and she alone, arrived at the fair market value of $4.5 million based on her view of what the Property was worth given its location and similar properties in the area. Ms. Cahill's estimate of the fair market value of the Property should be taken for what it is- pure speculation.

While it is neither appropriate nor necessary for the Court to establish a value of the collateral subject to Patriot's liens for purposes of this Motion for Relief, there is simply no

---

[4] According to an appraisal of the Property obtained by Mr. Farricker, the "as completed" market value of the Property as of October 8, 2013 was $7,000,000.00. Another appraisal obtained by Patriot Bank valued the Property "As-Complete" as of August 20, 2014 at $6,600,000.00. Finally, a third appraisal dated August 19, 2016 prepared for Patriot Bank indicates that the value upon completion of the Property would be $11,785,000.00 and notably included the tax credits in arriving at that value. Attached hereto as Exhibits C, D and E are copies of the three (3) appraisals.
[5] Attached hereto as Exhibit F and G are copies of Schedule B filed by WSTC and Master Landlords in their respective cases.
[6] Given that Patriot's Loan Agreement required the maximum loan amount to be no greater than 74% of the "as completed" fair market value of the Property, the value must have been at least $11.9 million at the time of the closing in December, 2016.

basis to readily assume that Patriot is undersecured and therefore, that Morganti is an unsecured creditor.   Given that the liquidation of Morganti's claim through Arbitration will result in a complete resolution of all issues between the parties save for a valuation dispute, *Sonnax* factor 1 weighs in favor of relief from stay.

### 2. *Sonnax* Factor 2: Lack Of Any Connection With Or Interference With The Bankruptcy Case

The second *Sonnax* factor relevant to this dispute is the Arbitration's lack of any connection with or interference with the bankruptcy case.   Although the size of Morganti's claim and whether it is a secured creditor will likely have a significant effect on the Debtors' reorganization efforts, the Arbitration itself is a proceeding independent of the Debtors' bankruptcy.  *See In re Montague*, 209 B.R. at 306.   Granting relief from stay to allow the Arbitration to continue will not interfere with the Debtors' bankruptcy case but will instead facilitate a speedy resolution of Morganti's claim which will be needed at the time of confirmation – irrespective of whether it is ultimately a secured or unsecured creditor.  *Id.*

The Objecting Parties assert that the Arbitration will interfere with the bankruptcy case because of the lack of funds necessary to pay legal fees in defending against Morganti's claims and prosecuting its own counterclaim.   Setting aside the issue of whether the Debtors will actually incur $300,000 in litigation costs as they suggest[7], the Debtors have filed multiple motions to pay: (i) $3,876 to Clinton Brown Company Architecture, P.C.; (ii) $10,000 per

---

[7] For the past year and up until their bankruptcy filing, the Debtors were represented by Hinckley, Allen & Snyder LLP in the Arbitration.  There is nothing to suggest that Hinckley is seeking to withdraw as counsel in the Arbitration or that it would be permitted to do so.  To the contrary, even though the Debtors have not yet filed a retention application to retain the Hinckley Allen law firm as special litigation counsel to handle this construction dispute, the Debtors' cash collateral budget has a line item for this firm, implying that it remains ready, willing and able to represent the Debtors in this Arbitration.  Any fees that would accrue post-petition to Hinckley Allen would be administrative expense claims that would be paid in full at the time of confirmation.

month to pay Lockwood & Mead; and (iii) $4,250 to Lyric-Hall all in a concerted effort to
obtain access to $1.8 million in Tax Credits that will be received in the next few weeks.  In
fact, Ms. Cahill testified at the First Meeting of Creditors on March 5, 2018, that once the
mural was obtained from Lyric-Hall and hung at the theater, that there was nothing else
standing in the way of the release of these Tax Credits.  At the continued Meeting of Creditors
held on March 26, 2018, Ms. Cahill testified that the mural had been obtained and hung in the
theater and that all necessary documentation had been submitted to the state such that the $1.8
million in Tax Credits would be released in the next month.  As such, it appears the Debtors
will have sufficient funds to pay the legal costs incurred in conjunction with any Arbitration.

The Objecting Parties further argue that even if the Debtors' receive the Tax Credits
that Patriot has conveniently refused to allow the Debtors to use its cash collateral to pay for
the Arbitration.  Whether Patriot Bank wants to permit the Debtor to use its cash collateral to
fund the Arbitration is a choice Patriot Bank must make.  Patriot has chosen to allow the
Debtors to pay Lockwood & Mead, Lyric Hall, Clinton Brown and a host of other expenses
that- in its view- are necessary to the success of these bankruptcy cases.  If it chooses not to
pay for the Debtors' litigation costs in the Arbitration then that issue will have to be addressed
between the Debtors and Patriot.  The Debtors should not be permitted to avoid their
obligation to proceed with Arbitration simply because a cash collateral dispute may arise
between the Debtors and Patriot.

Nor is there any reason to believe that the Arbitration would cost any more than
litigation of the construction dispute before this Court.  *Envisage Development Partners, LLC
v. Patch of Land Lending, LLC*, Case No. 17-cv-03971-CRB, 2017 WL 4551575, at *8 (N.D.

Cal. October 11, 2017)(rejecting debtor's claim that the estate and its creditors will be harmed

by increased litigation costs if the motion to compel arbitration were granted).  The Debtors

will incur legal costs to liquidate Morganti's claim whether in Arbitration or before this Court.

*See generally*, *In re Quigley Company, Inc.*, 361 B.R. 723 (granting relief from stay to

proceed with arbitration notwithstanding debtors' claims that stay relief will produce significant

and needless costs).

### 3. *Sonnax* Factor 4: Whether A Specialized Tribunal With The Necessary Expertise Has Been Established To Hear The Cause Of Action

The Objecting Parties concede as they must that the parties' agreed upon arbitrator,

who has over 30 years' experience in the construction industry is the appropriate person to

hear this dispute.  This *Sonnax* factor weighs heavily in favor of Morganti as the American

Arbitration Association is precisely the type of specialized tribunal with necessary expertise to

resolve these complex construction issues between the parties.  Notwithstanding this

acknowledgement, the Objecting Parties argue that this factor is neutral because adjudication of

Morganti's claim at this time is unnecessary.

As set forth above, neither the cost of the Arbitration nor a potential cash collateral

dispute justify postponing adjudication of the liquidation of Morganti's claim.  Additionally,

Morganti will be severely prejudiced if it is not permitted to proceed with Arbitration at this

time.  Many of Morganti's subcontractors on the Project have demanded payment from

Morganti and have threatened legal action due to non-payment.  Moreover, at least one

subcontractor has already sued Morganti for over $200,000 for nonpayment with respect to the

Project which case is pending at *Standard Demolition Services, Inc. v. Morganti,* FST-CV-17-

6033831-S in the Judicial District of Stamford.  Morganti should not be forced to defend itself

in multiple actions by sub-contractors who have not been paid while Morganti's own claim is stayed and permanently in limbo while the Debtors focus on what will benefit themselves and Patriot.

The fourth *Sonnax* factor also weighs heavily in favor of stay relief as there is a specialized tribunal with necessary construction expertise ready and willing to hear the Arbitration.

### 4. Sonnax Factor 5: Whether the Debtors' Insurer Has Assumed Full Responsibility For Defending It

The Objecting Parties assert that *Sonnax* Factor 5 weighs in their favor and against stay relief because there is no insurance to pay for the defense of the Arbitration and the Debtors must pay for same.  The Debtors rely on two cases in support of their argument both of which are distinguishable as they do not seek relief to proceed with arbitration.

In *In re Residential Capital*, a creditor sought relief from stay in order to proceed with certain pre-petition litigation that was pending in California state court.  No. 12–12020 (MG), 2012 WL 3249641 (Bankr.S.D.N.Y. Aug. 7, 2012). While Judge Glenn ultimately denied the requested stay relief after analyzing the 12-*Sonnax* factors, it is critical to note that the moving party was not seeking relief to proceed with arbitration.  Therefore, the Bankruptcy Court was not faced with the issue of whether bankruptcy considerations outweighed the strong federal policy favoring arbitration.  For this reason alone, *In re Residential Capital*, is not persuasive on this point.

Similarly, in *In re New York Medical Group, P.C.*, 265 B.R. 408 (Bankr.S.D.N.Y. 2001), a creditor with a medical malpractice claim moved for relief from stay in order to litigate her claims in state court.  The Court granted relief from stay in part on its finding that

the insurance company was already defending the individual doctors involved and would also

defend the debtor corporation.  This case, like *In re Residential Capital*, did not involve an

arbitration demand.

### 5. *Sonnax* Factor 7: Whether Litigation In Another Forum Would Prejudice The Interests Of Other Creditors

*Sonnax* factor 7 requires the Court to consider whether permitting litigation in another

forum would prejudice other creditors of the estate. The Objecting Parties make the same

argument with respect to factor 7 as they do with respect to factor 2; namely, that forcing the

Debtors to use Patriot's cash collateral to pay for legal fees will ultimately diminish the return

to unsecured creditors.  This argument is flawed, however, because it assumes a $300,000 loss

in legal fees in conjunction with the Arbitration and no potential recovery against Morganti.  If

the Debtors' claims against Morganti (which are extensively briefed at pages 9 to 12 of its

Objection and detail Morganti's alleged breaches under the Construction Contract and its

overbillings and defective work) can be proven at the Arbitration[8], then the Debtors either

stand to recover $1.3 million[9] or will be able to reduce Morganti's claim by $1.3 million.

Either way, the Debtors' successful prosecution of its counterclaims against Morganti in the

Arbitration has the potential to increase the pool of funds available to unsecured creditors by

$1.3 million.  As such, it seems to be in the best interest of the Debtors, Patriot and the

unsecured creditors to spend $300,000 in legal fees now in order to potentially recover $1.3

million against Morganti.   Moreover, WSTC discloses at Paragraph 11.1 of its Statement of

---

[8] Morganti strenuously opposes any claim that it beached the Construction Agreement, overbilled or provided work that was in any way deficient and intends to prove same at the Arbitration.
[9] At page 12 of their Objection, Debtors state that estimated cost to complete and correct Morganti's allegedly deficient work is estimated to exceed $1.3 million.

Financial Affairs that it paid Hinckley, Allen & Snyder, LLP $100,000 on August 23, 2017 as a "retainer for construction litigation".  At the Debtors' continued Meeting of Creditors held on March 26, 2017, Ms. Cahill testified that she did not know how much, if any, of the retainer remained as of the Petition Date.

Alternatively, if the Motion for Relief is denied and it is ultimately determined that Morganti holds a general unsecured claim, then all of the creditors will suffer delay until Morganti's claim is liquidated.  *See generally, In re New York Medical Group, P.C.*, 265 B.R. at 414.  This is because the Debtors will be forced to hold back from distribution funds sufficient to pay Morganti it's pro rata share of the claims pool.  *Id.*

For these reasons, Sonnax factor 7 weighs in favor of stay relief.

6. *Sonnax* **Factor 10: The Interests Of Judicial Economy And The Expeditious And Economical Resolution of Litigation**

According to the Objecting Parties, relief from stay will only create more litigation and increase expense.  Nothing could be further from the truth.  Arbitration will further the goals of the Bankruptcy Code by providing the parties with a quick and efficient resolution of Morganti's claim.  *See generally In re Northwestern Corp.*, 319 B.R. 68, 75 (D. Del. 2005).  The parties had already selected an arbitrator and were prepared to proceed with the arbitration before the Debtors filed these proceedings.  *Id.*  Both parties have incurred considerable expense and time toward the resolution of the claims and permitting the arbitrator, who is already familiar with the claims to complete the arbitration process will conserve judicial resources.  *Id.*

While it is undeniable that Morganti and the Debtors will both incur legal fees in conjunction with the Arbitration, these fees will need to be spent one way or another as the

liquidation of Morganti's claim and the Debtors' counterclaims are unavoidable.  Moreover, it

is in the best interests of the Debtors and their estates to prosecute their counterclaims against

Morganti as they believe there is the potential for a substantial recovery.  Should Patriot

determine in the exercise of its business judgment that it does not want to allow the Debtors to

use its cash collateral to pay for fees and potentially recover $1.3 million for the estates than

that is Patriot's choice.  That issue, however, is between the Debtors and Patriot and is not a

basis to deny Morganti relief from the automatic stay.

### 7. *Sonnax* Factor 11: Whether The Parties Are Ready For Trial In The Other Proceeding

*Sonnax* factor 11 weighs strongly in favor of stay relief.  Notwithstanding the Debtors'

assertions to the contrary, the parties are ready for trial.  The Arbitration has been pending for

11 months, the parties have selected an arbitrator, discovery is complete and the only matter

that remains are the actual arbitration hearings which are set to occur in April, 2018.  While it

is recognized that both sides will need to prepare for the actual arbitration hearings and

prosecute same- the real issue is whether the proceedings are "trial ready".  The Debtors

cannot, in good faith, contend that the proceedings are not trial ready.

Moreover, as set forth above, Debtors' statement that "they have no money to try the

case" is misleading.  The Debtors have assured the Court and the parties that they expect to

receive $1.8 million in Tax Credits in April.  The Debtors will have money to try the case.

Whether Patriot permits the use of its cash collateral is a separate issue and not one that should

stand in the way of the liquidation of Morganti's claim.  While it's been abundantly clear from

the first day of the Debtors' bankruptcy cases that the Debtors and Patriot are working in

unison to defeat Morganti's claims, there is no basis to elevate the rights of one creditor

(Patriot) over the rights of another creditor (Morganti).  Finally, from a purely equitable

standpoint, Patriot, who has financed this entire construction project, has had far greater access

to the Debtors' financials and has been in a far better position than Morganti to protect itself.

### 8.   *Sonnax* Factor 12: Impact Of The Stay On The Parties And The Balance Of Harms

The Objecting Parties assert that on balance greater harm will come to the Debtors if

stay relief is granted and they are compelled to proceed with Arbitration.   The Debtors further

state that "they have more pressing tasks at this early stage in the case" than to proceed with

the Arbitration.  Simply because the Debtors, in their view, have bigger fish to fry does not

entitle them to trample the rights of creditors who stand in their way.  At this stage there is

absolutely no guarantee that Patriot is undersecured and that hence Morganti is an unsecured

creditor.  That determination will ultimately be made through valuation proceedings.

However, in light of the Patriot appraisals reflecting a $7 million value upon completion, the

fact that Patriot poured over $8.8 million in construction costs into the Project and the fact that

Patriot allegedly holds a blanket security interest on $4 million in Tax Credits and $1.3 million

in personal property does not lead to the inevitable conclusion that Patriot is an undersecured

creditor.  While the Debtors may believe that Patriot is undersecured by approximately $1

million and that it will strip off Morganti's mechanics' lien does not make it so.

Moreover, the Debtors argue that if the value of Morganti's lien becomes relevant then

it will "gladly arbitrate those issues with Morganti." (Debtors' Objection at 20).  Query how

the Debtors lack the funds to arbitrate Morganti's claims now but will magically have the funds

to arbitrate at a later point.  Any monies that the Debtors receive from the Tax Credits will still

be subject to Patriot's alleged security interest so that there will be no unencumbered funds.

Irrespective of whether Patriot is fully secured, Morganti will be significantly harmed by a denial of its Motion for Relief.  In the absence of relief from stay, Morganti will be forced to contend with the claims and suits by subcontractors on the Project without any assurance that it's claim against the Debtors will be liquidated.

Notwithstanding the Objecting Parties' arguments to the contrary, *Sonnax* factors 1, 2, 4, 5, 7, 10, 11 and 12 weigh heavily in favor of granting Morganti relief from stay in order to proceed with its pre-petition Arbitration.

## <u>CONCLUSION</u>

For these reasons, and those set forth in Morganti's Motion for Relief, Morganti respectfully requests that this Court grant its motion for relief from stay to proceed with Arbitration and for such other and further relief as is necessary and just.

MOVANT,
THE MORGANTI GROUP, INC.

By:_____/s/ Kristin B. Mayhew_____
        Kristin B. Mayhew – ct20896
        McElroy, Deutsch, Mulvaney & Carpenter, LLP
        30 Jelliff Lane
        Southport, CT  06890-1436
        Tel.:   (203) 319-4022
        Fax:   (203) 259-0251
        Email  kmayhew@mdmc-law.com

## CERTIFICATE OF SERVICE

I, Kristin B. Mayhew, hereby certify that a copy of the foregoing The Morganti Group, Inc.'s Reply to the Objections filed by the Debtors and Patriot Bank, N.A. to its Motion for Relief from the Automatic Stay for Cause and to Enforce Arbitration Agreement Pursuant to Federal Arbitration Act was filed electronically with the Court on March 29, 2018.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the court's CM/ECF System.

_____
          /s/ Kristin B. Mayhew
          Kristin B. Mayhew