**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| WALL STREET THEATER COMPANY, INC. | : | Case No. 18-50132 (Lead) |
| WALL STREET MASTER LANDLORD, LLC | : | Case No. 18-50133 |
| WALL STREET MANAGING MEMBER, LLC | : | Case No. 18-50134 |
| | : | |
| Debtors | : | (Jointly Administered) |
| | : | |
| _____ | : | |
| | : | |
| WALL STREET THEATER COMPANY, INC., et al | : | |
| | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| PATRIOT BANK, N.A. | : | |
| | : | |
| Respondent | : | |

**THIRD INTERIM ORDER (1) AUTHORIZING CONTINUED USE OF CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION, AND (3) SCHEDULING HEARING ON FINAL USE OF CASH COLALTERAL**

Upon the *Motion for Preliminary and Final Orders Authorizing Debtors to Use Cash Collateral and Granting Adequate Protection* (ECF No. 4, the "Motion") filed by Wall Street Theater Company, Inc. ("WSTC"), Wall Street Master Landlord, LLC ("WSML"), and Wall Street Managing Member, LLC ("WSMM"), as debtors and debtors-in-possession (collectively, the "Debtors")[1] seeking, among other things, entry of this Preliminary Order authorizing Debtors to use cash collateral in accordance with the budget annexed thereto as <u>Exhibit A</u> (the "Budget") and granting adequate protection; and

---

[1] Non-debtor affiliates of Debtors are Wall Street Master Tenant, LLC ("WSMT") and Wall Street Manger, LLC ("WSM").

Debtors having requested in the Motion that (a) pending the final hearing on the Motion, a hearing be scheduled on an expedited basis (the "Preliminary Hearing") to consider entry of this preliminary order, (b) that a hearing (the "Continued Hearing") be scheduled on the Motion to consider entry of a final order authorizing and approving, on a final basis, Debtors' use of cash collateral; and

The Court having authority under 11 U.S.C. § 363 and Fed. R. Bankr. P. 4001 to authorize the Debtors to use cash collateral on an interim basis in accordance with the attached budget;

IT IS HEREBY FOUND:

A.  On February 4, 2018, Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). Pursuant to §§ 1107(a) and 1108 of the Code, Debtors continues to operate their businesses and manage their properties, affairs, and assets as debtors-in-possession.

B.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.  No trustee or committee has been appointed in these cases.

D.  The Preliminary Hearing on use of cash collateral was held on February 8, 2018. Following said Preliminary Hearing, and upon agreement of the parties appearing, the Court entered an order granting preliminary use of cash collateral (the "Preliminary Order"), but reserved for further consideration whether the Debtors should be permitted to pay a certain "developer's fee".

E. On February 14, 2018, the Court held a further cash collateral hearing concerning payment of the "developer's fee". On February 15, 2018, the Court approved Debtors' use of cash collateral to pay the "developer's fee."

F. A hearing to consider continued use of cash collateral ("Second Cash Collateral Order") was scheduled for February 27, 2018 at 12:00 noon. Said Second Cash Collateral Order was approved on March 2, 2018. ECF No. 73.

G. On March 12, 2018 and March 21, 2018 the Court approved requests for supplemental usage of cash collateral. ECF Nos. 107 and 131.

H. On April 30, 2018 a copy of this proposed order and Budget ("Third Cash Collateral Order") was filed on the docket and served on (a) secured creditors with an interest in cash collateral, including Patriot Bank, N.A. ("Patriot"), (b) the office of the U.S. Trustee, (c) Morganti Group, Inc., (d) the largest 20 unsecured creditors, and all parties with an appearance in the case (the "Notice Parties").

I. Unless Debtors can use collateral in the amounts and for the purposes specified herein, each estate will suffer immediate and irreparable harm. Without the use of cash collateral, Debtors will be forced to cease operations thereby resulting in loss to its going concern value to the detriment of Debtors, their creditors, and the bankruptcy estate. The Budget reflects the Debtors' business judgment with respect to the timing and amounts of payments and is otherwise reasonable and proper.

**NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1. Pursuant to 11 U.S.C. § 363(c)(2)(B), Debtors are hereby authorized from the date of this Order until June 1, 2018 (the "Cash Collateral Period") to use cash collateral to pay

actual, necessary ordinary course operating expenses as set forth in, and in accordance with, **Exhibit A** (the "Budget") appended hereto to avoid immediate and irreparable harm to the estate.

2. **A hearing to consider the further use of cash collateral shall be held on July 24, 2018 at 10:00 A.M. at the United States Bankruptcy Court, 915 Lafayette Boulevard, Bridgeport, Connecticut.**

    a. On or before July 10, 2018 the Debtors shall docket and serve on the Notice Parties a proposed order concerning further use of cash collateral and proposed budget.

    b. On or before July 17, 2018, any party-in-interest may file an objection concerning the further use of cash collateral.

3. Nothing contained herein shall in any way affect or impair the status of the validity, perfection, amount and extent of Patriot's or any other alleged secured creditor's respective security interests in any of its respective collateral, or Debtors' or any other party's right to object to the validity, perfection, amount and extent of such security interests. Nothing contained herein shall in any way affect or impair any right of setoff or recoupment that The Morganti Group, Inc. may hold against any Debtors.

4. Any party in interest that wishes to challenge the nature, extent, priority, or scope of Patriot's liens and/or secured status shall file an appropriate motion or adversary proceeding ("Challenge Action") on or before June 1, 2018 (the "Challenge Period"). Any Challenge Action shall state with particularity the aspects of Patriot's liens and/or secured status that are being challenged. Failure of any party-in-interest to file a Challenge Action during the Challenge Period shall constitute a waiver of any rights or ability to challenge the nature, extent, priority, or scope of Patriot's liens and/or Patriot's secured status. This provision shall be binding upon all successors to the Debtors, their Estates, or any Committee, including trustees

appointed under any chapter of the Bankruptcy Code.  For good cause shown, the Court will consider extending the Challenge Period if a party-in-interest, files a motion seeking an extension prior to 4:00 P.M. on June 1, 2018 ("Challenge Period Extension Motion").  Any Challenge Period Extension Motion shall set forth with particularity the specific reasons why an extension is necessary.

5.    In exchange for the continued use of cash collateral by Debtors, and as adequate protection for Patriot's interests therein, and in addition to the provisions of 11 U.S.C. § 552(b), Patriot is hereby granted, in accordance with §§ 361(2), 363(c), and 363(e), senior security interests (the "Replacement Liens") in, and liens upon, to attach to the same validity, extent, and priority that the Patriot possessed as to said liens on the Petition Date, but only to the extent the amount of their respective secured position erodes in value, all personal property and real estate now owned, or hereafter created or acquired or generated by Debtors, whether existing prior to the Petition Date or coming into being or in the possession of Debtors thereafter including, without limitation, all of Debtors' accounts, inventory, general intangibles, trademarks, licenses, contract rights, insurance proceeds or refunds, tax credits, tax refunds, chattel paper, documents, instruments and securities, machinery, equipment, and all proceeds, products, rents and profits of all of the foregoing, whether acquired through the use of cash collateral, or from the extension of post-petition financing ("DIP Assets").  Notwithstanding anything else in this Order to the contrary, nothing herein shall grant Patriot a Replacement Lien in claims and/or causes of action arising under Chapter 5 of Title 11, 11 U.S.C. § 501 *et seq*.

6.    As additional adequate protection, Debtors shall pay to Patriot monthly interest payments of $46,047.23 on the 1st of each month in accordance with the attached Budget.[2]

---

[2] Estimated amount at the present may vary from month to month.  Debtors shall pay actual amounts then due.

Furthermore, the Debtors shall maintain any and all insurance as required by the loan documents. The failure to timely pay said monthly payment to Patriot or maintain insurance shall be grounds for immediate termination of the continued use of cash collateral.

7. It is the purpose and intent of this Order to allow Debtors to use their accounts and accounts receivable and other collateral which constitute cash collateral of Patriot's on a revolving basis and to provide the Patriot with a lien upon post-petition assets so that Patriots' interests therein will not be diminished during the pendency of these Chapter 11 proceedings. The respective secured positions of Patriot that existed on the Petition Date may not improve by virtue of the granting of the replacement and/or substitute liens as set forth herein.

8. All liens and security interests, to the extent granted pursuant to this Order, shall be and hereby are (a) in addition to all security interests, liens and rights of setoff, rights of recoupment existing in favor of Patriot on the Petition Date; (b) deemed effective, valid and perfected as of the Petition Date, without the necessity of the filing or lodging by any person of any documents or other instruments otherwise required to be filed or lodged under applicable non-bankruptcy law for the perfection of security interests, with such security interests and liens, to the extent granted, validity and perfection being binding upon any successor entity or entities or subsequently appointed Trustee in any proceeding under any chapter of the Code and upon any and all other creditors of Debtors who have extended or who may hereafter extend credit to Debtors, or assert a claim of any nature or in any manner whatsoever in these cases or any superseding bankruptcy case of the Debtors, whether or not notice of the filing of this case has been filed in any state or county in which the Debtors' assets may ever be located; and (c) intended to be adequate protection for the Debtors' use of cash collateral. Patriot shall not be required to file any UCC-1 Financing Statement in any jurisdiction or take any other action (including possession of the

Collateral and/or DIP Assets, or any portion thereof) in order to further establish the security interests provided for hereunder. This Order shall be sufficient and conclusive evidence of the granting of Patriot's security interests and liens upon the DIP Assets.

9. Patriot may, in their discretion, file a certified copy of this Order in any filing or recording office in which the Debtor has any property or office. If Patriot, in its sole discretion, chooses to file such financing statements or other documents or otherwise confirm perfection of such security interests and liens, all such financing statements or similar documents shall be deemed to have been filed or recorded as of the Petition Date. Debtors shall execute and deliver to Patriot any agreement, financing statement, instruments or other documents as Patriot may reasonably request from time to time to effectuate, evidence, confirm, validate or perfect the security interests and liens provided for herein. Nothing in this Order shall in any way restrict the scope of the Patriot's pre-petition liens, security interests, rights of setoff or claims.

10. Notwithstanding any provision of this Order, nothing herein shall be deemed to be an adjudication or a declaration by the Court of rights with respect to the existence, validity, enforceability, subordination or priority of, or any causes of action relating to the liens or security interests granted by Debtors or possessed by Patriot prior to the Petition Date.

11. Nothing contained in this Order shall be deemed to be a finding by this Court or an admission by Patriot with respect to adequate protection (as such term is defined by 11 U.S.C. § 361) of the interests of Patriot.

12. Except to the extent expressly provided herein, nothing contained in this Order shall prejudice, impair or otherwise adversely affect, the rights of Patriot under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right, at any time, in their sole discretion, to demand adequate protection, to request relief from the automatic stay, to move to

convert this case to a case under Chapter 7 of the Bankruptcy Code, to object to any plan of reorganization or disclosure statement, to request the appointment of a trustee or examiner, or to seek the termination of, or object to the extension of, the period during which the Debtor enjoys the exclusive right to propose and/or seek to obtain confirmation of a plan of reorganization.

13. The liens of Patriot and any Replacement Liens, and any priority to which the Patriot may be entitled or become entitled under § 507(b) of the Bankruptcy Code, shall be forever subject to and subordinate in right and payment to (i) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Court; (ii) liens for taxes owed to governmental entities, including sales and withholding taxes to the extent such liens have priority over the liens and Replacement Liens of the Secured Creditors under applicable non-bankruptcy law; and (iii) the allowed administrative claims of attorneys and other professionals retained by the Debtors in these Chapter 11 cases pursuant to § 327 accrued during any cash collateral periods in the amounts of: $125,000 for Debtors' proposed counsel Green & Sklarz LLC (inclusive of its prepetition retainer) and $30,000 for Debtors' proposed financial advisor RJ Reuter, LLC (inclusive of its prepetition retainer) and $15,000 for Debtors' proposed special counsel, Hinckley Allen & Snyder LLP (inclusive of its remaining prepetition retainer) (collectively items (i) through (iii) are referred to as the "Carve Outs").

14. All notices required to or permitted to be given to Debtors under this Order shall be addressed as follows:

DEBTORS:
        WALL STREET THEATER COMPANY, INC.
        WALL STREET MASTER LANDLORD, LLC
        WALL STREET MANAGING MEMBER, LLC
        Attn: Suzanne Cahill
        P.O. Box 2387
        Milford, CT 06460

With a copy to:    Green & Sklarz, LLC

|||
|---|---|
| | Attn: Jeffrey M. Sklarz, Esq.<br>700 State Street, Suite 100<br>New Haven, CT 06511 |
| LENDER: | Patriot Bank, N.A.<br>900 Bedford Street<br>Stamford, CT 06901 |
| With a copy to: | Murtha Cullina LLP<br>Attn: Robert E. Kaelin, Esq.<br>185 Asylum Street<br>Hartford, CT 06103-3469 |

15. Debtors shall, on or before May 7, 2018, transmit copies of a notice of the entry of this Order to the Notice Parties, and to any party which has filed prior to such date a request for notices with this Court. Patriot's consent to the use of cash collateral pursuant to this Order shall in no way be interpreted as its consent or agreement to any future budget as may be proposed by the Debtors, and the Bank reserves any and all objections to confirmation of any proposed plan of reorganization and nothing herein shall otherwise be deemed an acceptance by the Patriot as to the amounts it shall otherwise be entitled to under a plan or in this bankruptcy proceeding.

16. Nothing herein shall be deemed to prevent Patriot from seeking to terminate the use of cash collateral for any breach by the Debtors of the terms hereof or to obtain relief from the automatic stay or to assert any other rights, claims, remedies or defenses available to Patriot.

Dated at Bridgeport, Connecticut this 8th day of May, 2018.

*Julie A. Manning*
Chief United States Bankruptcy Judge
District of Connecticut

# EXHIBIT A

# Budget

**WALL STREET THEATER COMPANY, INC. ET AL. (Consolidated Budget)**
**13 WK CASH BUDGET**
**(Period W/E May 11 2018 to Aug 03 2018)**

Updated 4-27-18

| Line | | Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Week Ended | BUDGET 5/11/2018 | BUDGET 5/18/2018 | BUDGET 5/25/2018 | BUDGET 6/1/2018 | BUDGET 6/8/2018 | BUDGET 6/15/2018 | BUDGET 6/22/2018 | BUDGET 6/29/2018 | BUDGET 7/6/2018 | BUDGET 7/13/2018 | BUDGET 7/20/2018 | BUDGET 7/27/2018 | BUDGET 8/3/2018 | |
| 4 | **Operating Cash Receipts** | | | | | | | | | | | | | | | |
| 5 | Ticket Revenue | | $ 17,500 | $ 17,500 | $ 17,500 | $ 16,000 | $ 16,000 | $ 16,000 | $ 16,000 | $ 16,000 | $ 18,750 | $ 18,750 | $ 18,750 | $ 18,750 | $ 15,000 | |
| 6 | Food and Beverage | | 5,889 | 5,889 | 5,889 | 6,764 | 6,764 | 6,764 | 6,764 | 6,764 | 5,639 | 5,639 | 5,639 | 5,639 | 5,139 | |
| 7 | Corporate Events/Rentals | | 3,250 | 3,250 | 3,250 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 4,000 | 4,000 | 4,000 | 4,000 | 1,500 | |
| 8 | Ticket Surcharge | | 5,063 | 5,063 | 5,063 | 5,625 | 5,625 | 5,625 | 5,625 | 5,625 | 5,344 | 5,344 | 5,344 | 5,344 | 4,500 | |
| 9 | **Total Operating Cash Receipts** | | 31,701 | 31,701 | 31,701 | 32,139 | 32,139 | 32,139 | 32,139 | 32,139 | 33,732 | 33,732 | 33,732 | 33,732 | 26,139 | |
| 10 | **Operating Cash Disbursements** | | | | | | | | | | | | | | | |
| 13 | Subtotal - Cost of Goods Sold | | 13,367 | 13,367 | 13,367 | 14,261 | 14,261 | 14,261 | 14,261 | 14,261 | 13,826 | 13,826 | 13,826 | 13,826 | 10,243 | |
| 15 | **OPERATING EXPENSES** | | | | | | | | | | | | | | | |
| 16 | **SUB-TOTAL SALARIES** | | 5,435 | 5,435 | 5,435 | 5,435 | 5,435 | 5,435 | 5,435 | 5,435 | 5,435 | 5,435 | 5,435 | 5,435 | 5,435 | |
| 17 | **OTHER COSTS** | | | | | | | | | | | | | | | |
| 18 | Real Estate Taxes | | - | - | - | | | | | - | | | | 18,250 | | |
| 19 | Insurance(s) | | | | | | | | | | | | | 2,829 | | |
| 20 | Admin costs | | 471 | 471 | 471 | | | | | 471 | | | | 471 | | |
| 21 | Outside Services | | 471 | 471 | 471 | | | | | 471 | | | | 471 | | |
| 22 | Utilities | | 4,714 | 4,714 | 4,714 | | | | | 4,714 | | | | 6,286 | | |
| 23 | Developer Fee (a) | | 10,010 | 10,010 | 10,010 | | | | | 10,010 | | | | 10,010 | | |
| 24 | General Repair | | 1,257 | 1,257 | 1,257 | | | | | 1,257 | | | | 1,257 | | |
| 25 | Other Misc. fixed costs | | 1,336 | 1,336 | 1,336 | | | | | 1,336 | | | | 1,336 | | |
| 26 | **OTHER COSTS** | | 18,260 | 18,260 | 18,260 | | | | | 18,260 | | | | 40,910 | | |
| 27 | **FUNDRAISING COSTS** | | | | | | | | | | | | | | | |
| 28 | Events | | 1,571 | 1,571 | 1,571 | | | | | 1,571 | | | | 3,143 | | |
| 29 | Other Mailings, Development | | 786 | 786 | 786 | | | | | 786 | | | | 7,071 | | |
| 30 | **MARKETING** | | | | | | | | | | | | | | | |
| 31 | Graphic Design | | 1,440 | 1,440 | 1,440 | | | | | 1,440 | | | | 1,440 | | |
| 32 | Advertising & Publicity | | 3,667 | 3,667 | 3,667 | | | | | 3,667 | | | | 2,095 | | |
| 33 | Subtotal - Fundraising & | | 5,107 | 5,107 | 5,107 | | | | | 5,107 | | | | 3,536 | | |
| 34 | OTHER CONTINGENCY | | 10,000 | 10,000 | 10,000 | | | | | 10,000 | | | | 10,000 | | |
| 35 | **Total Operating Cash Disb.** | | 5,435 | 5,435 | 41,159 | 5,435 | 5,435 | 5,435 | 5,435 | 41,159 | 5,435 | 5,435 | 5,435 | 70,094 | 5,435 | |
| 36 | **Net Operating Cash Flows** | | 7,932 | 7,932 | (27,792) | 8,827 | 8,827 | 8,827 | 8,827 | (26,897) | 8,391 | 8,391 | 8,391 | (56,269) | 4,809 | |
| 37 | **INTEREST & DEBT PAYMENTS** | | | | | | | | | | | | | | | |
| 38 | Interest/Adequate | | | 46,047 | | | 46,047 | | | | 46,047 | | | | 46,047 | |
| 40 | **Non-Operating Items** | | | | | | | | | | | | | | | |
| 42 | **Receipts:** | | | | | | | | | | | | | | | |
| 43 | Tax Credits | | - | 1,805,162 | | | | | | | | | | | | |
| 44 | **Total Non-Operating Receipts** | | - | 1,805,162 | - | - | - | - | - | - | - | - | - | - | - | |
| 46 | **Disbursements:** | | | | | | | | | | | | | | | |
| 47 | **BOARD EXPENSES** | | | | | | | | | | | | | | | |
| 48 | Board Admin and Comp | | | | | 2,823 | | | | | | | | | | |
| 49 | **REORGANIZATION EXPENSES** | | | | | | | | | | | | | | | |
| 50 | U.S. Trustee Fees | | | 1,950 | | | | | | | | | | 1,950 | | |
| 51 | Debtor's Bankruptcy | | | | | 25,000 | | | | | 25,000 | | | | 10,000 | |
| 52 | Debtor's Special Counsel | | | | | 10,000 | | | | | 5,000 | | | | | |
| 53 | Debtor's Financial advisor | | | | | 5,000 | | | | | 5,000 | | | | 5,000 | |
| 54 | Real Estate Appraiser | | | | | | | | | | - | | | | | |
| 55 | Subtotal - Reorg Expenses | | - | 1,950 | - | 40,000 | - | - | - | - | 35,000 | - | - | 1,950 | 15,000 | |
| 57 | **Total Non-Operating Disbursement** | | - | 47,997 | - | 42,823 | 46,047 | - | - | - | 81,047 | - | - | 1,950 | 61,047 | |
| 59 | **Net Cash Flow** | | 7,932 | 1,765,097 | (27,792) | (33,996) | (37,220) | 8,827 | 8,827 | (26,897) | (72,656) | 8,391 | 8,391 | (58,219) | (56,239) | |
| 61 | Beginning Cash Balance* | | 21,682 | 29,614 | 1,794,712 | 1,766,920 | 1,732,924 | 1,695,703 | 1,704,530 | 1,713,357 | 1,686,460 | 1,613,804 | 1,622,195 | 1,630,586 | 1,572,367 | |
| 63 | **Net Ending Cash** | | $ 29,614 | $ 1,794,712 | $ 1,766,920 | $ 1,732,924 | $ 1,695,703 | $ 1,704,530 | $ 1,713,357 | $ 1,686,460 | $ 1,613,804 | $ 1,622,195 | $ 1,630,586 | $ 1,572,367 | $ 1,516,129 | |

Cash balance is as of 4-13-18; actual at time of filed cash collateral not reconciled